Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff* NATHAN GERGETZ
and the Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TELENAV, INC., a Delaware corporation<br><br>Defendant. | Case No. 5:16-cv-4261<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1. Plaintiff Nathan Gergetz ("Gergetz" or "Plaintiff") brings this Class Action Complaint against Defendant Telenav, Inc. ("Telenav" or "Defendant") to stop Defendant's practice of making unsolicited text message calls to cellular telephones and to obtain redress for all persons injured by its conduct. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

2. Plaintiff is a natural person and domiciled in the State of Wisconsin.

3. Defendant Telenav, Inc. is a corporation incorporated and existing under the laws of the State of Delaware whose primary place of business and corporate headquarters is located at 4655 Great America Parkway, Suite 300 Santa Clara, California 95054. Telenav does business throughout the United States, including in the State of California and this District.

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), a federal statute.

5. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of California, regularly conducts business in the State of California and in this District, has its principal place of business in this District, its registered agent for service is located in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District.

**COMMON ALLEGATIONS OF FACT**

**A.    Bulk SMS Marketing**

6. In recent years, marketers who have felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk advertisements cheaply.

7. Bulk text messaging, or SMS marketing, has emerged as a direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

8. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are mobile and are

frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.     Defendant Transmits Text Messages to Consumers Who Do Not Want Them**

9.     Telenav is a mobile navigation company that purports to create products that (1) provide easily-accessed, relevant, and personalized information for discovery, traffic, local search, and navigation and (2) are available across multiple platforms and devices, including mobile phones, tablets, computers and cars.

10.    Telenav has created an app, commonly referred to as "Scout GPS," that Defendant describes as "Navigation gone social," [1] and "the only app that lets you chat, plan Meet Ups, share your ETA and get turn-by-turn GPS voice directions."[2] Scout GPS purports to allow consumers to coordinate plans with friends and provide real time GPS location updates to those friends.

11.    The Scout GPS app has the capacity to send transit time or estimated time of arrival updates via text message calls as well as their own promotional text messages to users who have not downloaded the app. Such text message calls can be sent to any cell phone number, regardless of whether the recipient is a user of the Scout GPS app.

12.    Defendant Telenav sends text messages from "short code" 72711. A short code is akin to a telephone number for text messages.

13.    In sending these text messages, Defendant took no steps to acquire the oral or written prior express consent from the Plaintiff or from Class Members who received the unsolicited text messages.

14.    Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

15.    In sending the text messages at issue in this Complaint, Defendant utilized an

---

[1] http://www.scoutgps.com/

[2] https://itunes.apple.com/us/app/scout-by-telenav/id467816643

CLASS ACTION COMPLAINT
-3-

automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

16. Defendant was and is aware that these above described text messages were and are being made without the prior express consent of the text message recipients.

### C. Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out

17. Worse yet, Defendant also sends unauthorized SMS text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages by responding "STOP" or with similar commands. Even if hypothetically Defendant had obtained some form of prior express consent (it did not), Defendant was still required to honor each STOP request as a termination of any prior consent. Accordingly, any SMS text message (other than a final, one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express STOP or similar request was sent without prior express consent in violation of the TCPA.

18. To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

19. The FCC has made clear that companies must provide an opt-out mechanism in their text messages and that—at most—a single text may be sent after the consumer exercises his/her right to opt out confirming the opt out. *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *see also*

CLASS ACTION COMPLAINT
-4-

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."); *see also* <u>Munro v. King Broad. Co.</u>, No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) ("[T]he weight of authority suggests that consent may be revoked under the TCPA and that if messages continue after consent is revoked, those messages violate the TCPA.") (unpublished decision) (collecting cases).

20. Indeed, the MMA's October 2012 U.S. Consumer Best Practices for Messaging echoes this standard by stating, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

21. CTIA[3] similarly advises that "[s]hortcode programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT . . . and, if the user is subscribed, by opting the user out of the program." Further, "[r]ecurring programs must promote opt-out instructions at regular intervals in content or service messages, at least once per month," and "[u]sers must be able to opt out at any time." *See* CTIA Compliance Assurance Solution Mobile Commerce Compliance Handbook, Version 1.2, effective August 1, 2013.

22. Again, Defendant simply ignores the FCC ruling and these accepted industry guidelines. Instead, Defendant fails to honor requests by consumers to opt-out or unsubscribe to the SMS text messages.

23. Despite receiving an express stop request from Plaintiff and other cellular

---

[3] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

subscribers, Defendant Telenav continues to send automated text messages to these subscribers.

24.     Defendant knows, or acts in conscious disregard of the fact, that its SMS text messages to these cellular subscribers are unauthorized. Reply message STOP requests are, by design, sent to Telenav's short code, 72711, thereby directly informing Defendant that any subsequent messages are unauthorized. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

**D.     Plaintiff's Experience with Defendant**

25.     Starting on July 6, 2016, Plaintiff Gergetz received more than one dozen unsolicited text messages from 72711, Defendant Telenav's short code, to his personal cell phone, purporting to alert Plaintiff that someone using the Scout GPS app had arrived somewhere (the "Scout GPS Update Text Messages.")

26.     When Gergetz would receive the text message, his cell phone would ring, indicating that a text call was being received. The messages were text messages from 72711 and more than a dozen such text messages were sent stating:

"Susan – Hey, I have arrived at 72 Kensington Rd"



CLASS ACTION COMPLAINT
-6-

27. Interspersed with the Scout GPS Update Text Messages were commercial advertisements urging Plaintiff to download Defendant's Scout GPS app (the "Scout GPS Ad Text Messages"):

28. On July 13, 2016 at 5:54pm, Plaintiff replied to 72711, Defendant's short code, with an opt-out request saying "STOP," requiring Defendant to cease texting him.

29. Defendant's system accepted the opt-out request, and it responded back with a confirmation of the opt-out also at 5:54pm: "You are unsubscribed from ScoutLinkAlerts. No more messages will be sent. Help at 888-849-6231."



CLASS ACTION COMPLAINT
-7-

Now:
30. However, and despite Plaintiff's opt-out request, Plaintiff received additional text messages from Defendant starting the following day July 14, 2016.

31. Plaintiff received another promotional text message from Defendant on July 15, 2016 without ever initiating any contact with Defendant other than his opt-out request on July 13, 2016.



32. Plaintiff continued to receive notification alerts on July 15, 2016 and ongoing from Defendant despite his opt-request.



33. Plaintiff continued to receive multiple text messages on July 20, 2016 and July 21,

2016 despite his opt-out request. Among the texts, Plaintiff received a solicitation text to download the Scout app on July 21, 2016:

[screenshot of text messages: "Download Scout to send notifications to your loved ones when you arrive at or leave a location. http://scoutgps.com/dl" and "Susan - Hey, I have arrived at 72 Kensington Rd"]

34. Plaintiff received two additional text messages on July 22, 2016.

35. Plaintiff received another three text messages on July 25, 2016 one of which was the same solicitation to download the ScoutGPS.com app. Plaintiff received another three text messages on July 26, 2016.

36. At no time did Plaintiff Gergetz consent to the receipt of text message calls from Defendant, let alone provide prior oral or written express consent to Defendant to receive such messages in the first place.

37. By making unauthorized text message calls as alleged herein, Defendant has caused consumers actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages. Furthermore, the text messages interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

38. In the present case, a consumer could be subjected to many unsolicited text messages as Defendant does not provide instructions or a mechanism to opt out and fails to honor opt out requests even after it sends a confirmatory text indicating that no additional texts will be transmitted.

39. To redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

40. On behalf of the Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **No Consent Class:** All persons in the United States who (1) received a text message from Defendant, (2) on his or her cellular telephone, (3) from the last four years through present, (4) who have not created an online account through Telenav, (5) and who provided prior express consent in the same manner as Defendant claims that Plaintiff provided such prior express consent.

> **Replied Stop Class:** All persons in the United States who (1) from the last four years to the present, (2) received on their cellphone at least one text message from short code 72711, (3) replied to the text message with the words STOP, END, CANCEL or similar language, and (4) thereafter received at least one additional text message to their same cellphone number other than a message simply confirming their opt out.

42. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons;

CLASS ACTION COMPLAINT
-10-

and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following discovery regarding the size and scope of the alleged classes.

43. On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

44. There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

   a. whether Defendant's conduct constitutes a violation of the TCPA;
   b. whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Classes;
   c. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;
   d. whether Defendant obtained prior express written consent to contact any class members;
   e. whether members of the Replied Stop Class revoked their consent by responding STOP, END, CANCEL or with similar language; and
   f. to the extent Defendant's conduct does not constitute telemarketing, whether Defendant obtained prior express oral consent to contact any class members.

45. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the

1  Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful
2  conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members
3  of the Classes as all members of the Classes are similarly affected by Defendant's wrongful
4  conduct. Plaintiff, like other members of the Classes, received unsolicited spam text message calls
5  from Defendant. Plaintiff is advancing the same claims and legal theory on behalf of himself and
6  all absent members of the Classes.

7  46.  Plaintiff will fairly and adequately represent and protect the interests of the other
8  members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the
9  other members of the Classes. Plaintiff has no interests antagonistic to the interests of the other
10 members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained
11 counsel with substantial experience in prosecuting complex litigation and TCPA class actions.
12 Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the
13 members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel
14 has any interest adverse to those of the other members of the Classes.

15 47.  The suit may be maintained as a class action under Federal Rule of Civil Procedure
16 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable
17 to the Classes, thereby making appropriate final injunctive relief. As the messages continue to be
18 sent in spite of Plaintiff's and the Class Members' STOP requests, injunctive relief is necessary
19 and appropriate to require Defendant to discontinue sending unsolicited and unauthorized spam
20 text messages. Likewise, Defendant has acted and fails to act on grounds generally applicable to
21 the Plaintiff and the other members of the Classes in transmitting the wireless spam at issue,
22 requiring the Court's imposition of uniform relief to ensure compatible standards of conduct
23 toward the members of the Classes.

24 48.  In addition, this suit may be maintained as a class action under Federal Rule of
25 Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the
26 fair and efficient adjudication of this controversy. Absent a class action, most members of the

CLASS ACTION COMPLAINT
-12-

Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendant. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

49. Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the No Consent Class)**

50. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51. Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing

equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

52. These text calls were made *en masse* without human intervention and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

53. At no time did Defendant obtain prior express consent from the Plaintiff orally or in writing to receive autodialed calls. Also, at no time did Defendant obtain prior express consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive autodialed calls was not a condition of the purchase of any property or service.

54. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

55. In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Replied Stop Class)**

56. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

57. Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Replied Stop Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

58.     The telephone dialing equipment utilized by Defendant and/or their agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

59.     These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Replied Stop Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as "STOP," "REMOVE," "OPT OUT." or "CANCEL."

60.     The text messages to Plaintiff and the Replied Stop Class were made after any consent had been expressly revoked by responding with an opt-out request, such as STOP, END, CANCEL or similar. This alone violates the TCPA.

61.     Additionally, Defendant's supposed opt out mechanism is not cost free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data.

62.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

63.     Additionally, because the messages steadily continue despite multiple requests that they STOP, the violations are capable of repetition, even if Defendant was to temporarily place them on hold.

64.     As a result of such conduct, Plaintiff and the other members of the Replied Stop Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

65.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class. Defendant received the STOP requests and similar opt out instructions and therefore was on notice that its text messages were being transmitted in violation of the TCPA.

**WHEREFORE**, Plaintiff Gergetz, on behalf of himself and the class, prays for the

following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Gergetz as the representative of the Class and appointing his attorneys' as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited text messaging and to honor opt out requests, and otherwise protecting the interests of the Classes;

4. An award of reasonable attorneys' fees and costs;

5. A declaration that Defendant's conduct violated the TCPA;

6. A declaration that Defendant's dialing equipment constitutes an automatic telephone dialing system under the TCPA; and

7. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: July 28, 2016

NATHAN GERGETZ, individually, and on behalf of all others similarly situated,

By:  /s/  Rebecca L. Davis
One of Plaintiff's Attorneys

Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso

(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman
(Law@stefancoleman.com)*
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Tel: (877) 333-9427
Fax: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*

**pro hac vice* admission to be filed*

CLASS ACTION COMPLAINT
-17-