TONIA OUELLETTE KLAUSNER, *admitted pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7706
Facsimile: (212) 999-5899
tklausner@wsgr.com

PETER C. HOLM, State Bar No. 299233
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1 Market Street
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
pholm@wsgr.com

Attorneys for Defendant
TELENAV, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>TELENAV, INC., a Delaware corporation<br><br>    Defendant. | CASE NO.:  5:16-cv-4261-BLF<br><br>**DEFENANT TELENAV, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STAY**<br><br>Date: March 2, 2017<br>Time: 9:00 AM<br>Dept.: 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................... 1

MEMORANDOM OF POINTS AND AUTHORITIES ....................................................... 2

I.      INTRODUCTION ..................................................................................................... 2

II      BACKGROUND ....................................................................................................... 3

     A.     The Telephone Consumer Protection Act ................................................... 3

     B.     The FCC's 2015 Order and D.C. Circuit Appeal ........................................ 5

     C.     This Action ................................................................................................... 7

III.    ARGUMENT ............................................................................................................ 9

     A.     The Complaint Fails to State a Claim Because It Contains No Factual
           Allegations Making It More Than Speculation That the Scout Notifications
           Were Sent Using an ATDS ........................................................................... 9

     B.     Alternatively, This Action Should be Stayed Pending the Appeal of the
           FCC's 2015 Order ..................................................................................... 13

IV.    CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-CV-203-RJC-DCK, 2016
U.S. Dist. LEXIS 1762 (W.D.N.C. Jan. 7, 2016), *report and
recommendation adopted*, 2016 U.S. Dist. LEXIS 14263 (W.D.N.C. Feb. 5,
2016)..................................................................................................................14

*ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed July 13, 2015) ..............................1, 3, 7

*Acton v. Intellectual Capital Mgmt.*, No. 15-CV-4004(JS)(ARL), 2015 U.S. Dist.
LEXIS 172149 (E.D.N.Y. Dec. 28, 2015) ...................................................17

*Anderson v. Blockbuster Inc.*, No. 2:10-cv-00158-MCE-GGH, 2010 U.S. Dist.
LEXIS 53854 (E.D. Cal. May 4, 2010) .......................................................10

*Arista Networks, Inc. v. Cisco Sys.*, No. 16-cv-00923-BLF, 2016 U.S. Dist. LEXIS
112494 (N.D. Cal. Aug. 23, 2016) ...............................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................9, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................9, 10

*Chattanond v. Discover Fin. Servs., LLC*, No. CV 15-08549-RSWL-JCx, 2016 U.S.
Dist. LEXIS 24700 (C.D. Cal. Feb. 26, 2016) ......................................14, 16

*Clinton v. Jones*, 520 U.S. 681 (1997) ..................................................................13

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ..............................................13

*Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS, 2016 U.S. Dist. LEXIS
118768 (M.D. Fla. Aug. 2, 2016)...........................................................14, 17

*Daniels v. ComUnity Lending, Inc.*, No. 13-cv-488-WQH-JMA, 2014 U.S. Dist.
LEXIS 1606 (S.D. Cal. Jan. 6, 2014) ...........................................................12

*Dominguez v. Yahoo, Inc.* 629 F. App'x 369 (3d Cir. 2015) ...............................*passim*

*Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 (E.D. Pa. 2014), *vacated*, 629 F.
App'x 369 (3d Cir. 2015)................................................................................5

*Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 U.S. Dist. LEXIS 39628
(N.D. Cal. Mar. 24, 2016) ......................................................................11, 12

*Edwards v. Oportun, Inc.*, No. 16-cv-00519-EDL, 2016 U.S. Dist. LEXIS 106610
(N.D. Cal. June 14, 2016)..............................................................................13

*Errington v. Time Warner Cable, Inc.*, No. 2:15-CV-02196 RSWL (DTB), 2016
U.S. Dist. LEXIS 66317 (C.D. Cal. May 18, 2016)...............................14, 16

*Fields v. Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 U.S. Dist.
    LEXIS 180227 (N.D. Cal. Dec. 23, 2013) ..................................................... 6

*Flores v. Adir Int'l LLC*, No. CV-15-00076-AB, 2015 U.S. Dist. LEXIS 92176
    (C.D. Cal. July 15, 2015) ...................................................................... 12

*Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWx), 2015 U.S. Dist.
    LEXIS 169580 (C.D. Cal. Dec. 17, 2015) ............................................. 14, 16

*Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 U.S. Dist. LEXIS 142303
    (E.D. Wis. Oct. 20, 2015)........................................................................ 14, 16

*Gibbs v. SolarCity Corp*, No. 4:16-cv-11010-TSH (D. Mass. June 1, 2016) ................. 10

*Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014) .......................... 5

*Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697 WMA, 2013 U.S. Dist. LEXIS
    132574 (N.D. Ala. Sept. 17, 2013)........................................................... 5

*Huricks v. Shopkick*, No. C-14-2464 MMC, 2014 U.S. Dist. LEXIS 101521 (N.D.
    Cal. July 24, 2014) ............................................................................... 10

*Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 U.S. Dist. LEXIS 91030
    (S.D. Cal. June 18, 2012) ...................................................................... 5

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008).......................................... 9

*In the Matter of Rules and Regulations Implementing TCPA of 1991*, 7 FCC Rcd.
    8752 (Oct. 6, 1992) ............................................................................... 5

*In the Matter of Rules and Regulations Implementing TCPA of 1991*, 10 FCC Rcd.
    12391 (Aug. 7, 1995) ............................................................................. 5

*In the Matter of Rules and Regulations Implementing TCPA of 1991*, 18 FCC Rcd.
    14014 (July 3, 2003)............................................................................. 11

*In the Matter of Rules and Regulations Implementing TCPA of 1991*, 27 FCC Rcd.
    1830 (Feb. 15, 2012) ............................................................................ 11

*In the Matter of Rules and Regulations Implementing TCPA of 1991*, 30 FCC Rcd.
    7961 (July 10, 2015)........................................................................... 6, 13

*IPtronics Inc. v. Avago Techs. U.S., Inc.,* No. 14-cv-05647-BLF, 2015 U.S. Dist.
    LEXIS 168456 (N.D. Cal. Dec. 15, 2015) ............................................. 17

*Johnson v. Yahoo!, Inc.*, Nos. 14-CV-2028, 14-CV-2753, 2014 U.S. Dist. LEXIS
    171325 (N.D. Ill. Dec. 11, 2014) ........................................................... 6

*Jones v. Ad Astra Recovery Servs.*, No. 16-1013-JTM-GEB, 2016 U.S. Dist. Lexis
    73561 (D. Kan. June 6, 2016) ................................................................ 13

*Knutson v. Reply!, Inc.*, No. 10-cv-1267 BEN, 2011 U.S. Dist. LEXIS 7887 (S.D.
    Cal. Jan. 26, 2011)............................................................................... 10

*Kolloukian v. Uber Techs., Inc.*, No. cv 15-2856-PSG-JEM, 2015 U.S. Dist. LEXIS 174005 (C.D. Cal. Dec. 14, 2015)...................................................................................14

*Konopca v. Comcast Corp.*, No. 15-6044 (FLW)(DEA) 2016 U.S. Dist. LEXIS 55274 (D.N.J. Apr. 26, 2016)......................................................................................14

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)..........................................................................13

*Lathrop v. Uber Techs., Inc.,* No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 2490 (N.D. Cal. Jan. 8, 2016)..........................................................................................13

*Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2011)..........................................11

*Lee v. Dollar Thrifty Auto. Grp., Inc.*, No. 15-cv-04562-BLF, 2016 U.S. Dist. LEXIS 24835 (N.D. Cal. Feb. 26, 2016)................................................................17

*Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1374 (S.D. Fla. 2014)..........................6

*Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2015 U.S. Dist. LEXIS 73269 (N.D. Cal. June 5, 2015)...................................................................17

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)......................................................13

*Mackiewicz v. Nationstar Mortg. LLC.,* No. 6:15-cv-465-Or1-18GJK, 2015 U.S. Dist. LEXIS 180770 (M.D. Fla. Nov. 10, 2015)....................................................17

*Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1291 (S.D. Cal. 2014)........................5

*Martin v. Global Marketing Research Servs., Inc.* 6:14-cv-01290-GAP-KRS (M.D. Fla. Aug. 11, 2014).................................................................................................10

*MCI Telecomms. Corp. v. U.S. W. Communs.*, 204 F.3d 1262 (9th Cir. 2000)......................17

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)..............................4

*O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-cv-01821-BLF, 2016 U.S. Dist. LEXIS 27509 (N.D. Cal. Mar. 2, 2016)..........................................................15, 17

*Peck v. Cingular Wireless, LLC*, 535 F.3d 1053 (9th Cir. 2008).........................................17

*Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.),* 729 F.3d 1104 (9th Cir. 2013)......................................................................................9

*Rajput v. Synchrony Bank*, No. 3:15-CV-1079, 2016 U.S. Dist. LEXIS 150231 (M.D. Pa. Oct. 31, 2016)...........................................................................................14

*Ricks v. Allied Interstate, LLC*, No. 3:16-cv-00205-HES-PDB, 2016 U.S. Dist. LEXIS 118956 (M.D. Fla. July 11, 2016)..............................................14, 15, 16

*Rivera v. Exeter Fin. Corp.*, No. 15-cv-1057-PAB-MEH, 2016 U.S. Dist. LEXIS 11505 (D. Colo. Feb. 1, 2016)......................................................................14

*Robinson v. Nationstar Mortg., LLC*, No. 2:16-cv-83, 2016 U.S. Dist. LEXIS 147770 (S.D. Ga. Oct. 25, 2016)...........................................................................14, 16

*S.F. Tech., Inc. v. Glad Prods*. Co., No. 10-CV-00966 JF (PVT), 2010 U.S. Dist.
    LEXIS 83681 (N.D. Cal. July 19, 2010) .................................................................... 13

*Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009) ..................................... 3, 4, 5

*Sepehry-Fard v. MB Fin. Servs*., No. 13-cv-02784-BLF, 2014 U.S. Dist. LEXIS
    71568 (N.D. Cal. May 23, 2014) ...................................................................... 7, 9, 10

*Sterk v. Path, Inc.*, 46 F. Supp. 3d. 813 (N.D. Ill. 2014) ........................................................ 5, 6

*Stockwell v. Credit Mgmt. L.P.*, No. 30-2012-00596110-CU-NP-CXC, slip op.
    (Cal. Super. Ct. Oct. 3, 2013) ..................................................................................... 5

*Weisberg v. Stripe, Inc.,* No. 16-cv-00584-JST, 2016 U.S. Dist. LEXIS 96794
    (N.D. Cal. July 25, 2016) .......................................................................................... 12

*Williams v. TGI Friday's, Inc.*, No. 4:15-CV-1469 RWL, 2016 U.S. Dist. LEXIS
    48817 (E.D. Mo. Apr. 12, 2016) ........................................................................ 14, 15

**STATUTES**

28 U.S.C. § 2112 ..................................................................................................................... 17

47 U.S.C. § 227 ..................................................................................................................... 2, 4

47 U.S.C. § 227(a) ..................................................................................................................... 4

47 U.S.C. § 227(a)(1) ........................................................................................................... 2, 4

47 U.S.C. § 227(b)(1)(A) ...................................................................................................... 2. 4

**RULES**

Federal Rules of Civil Procedure 12(b)(6) ...................................................................... 1, 3, 9

**MISCELLANEOUS**

137 Cong. Rec. 35302 (Nov. 26, 1991) ..................................................................................... 5

H.R. Rep. No. 101-633 (1990) ................................................................................................... 5

H.R. Rep. No. 102-317 (1991) ................................................................................................... 5

S. Rep. No. 102-178 (1991) ....................................................................................................... 5

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 2, 2017, at 9:00 AM, before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, Courtroom 3, 280 South 1st Street, San Jose, California, Defendant Telenav, Inc. ("Telenav") will, and hereby does, move this Court pursuant to Federal Rules of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice, or in the alternative, for an order staying the case.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel, if any; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1.   Should the complaint be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)?

2.   Should the case be stayed pending the D.C. Circuit's ruling in *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed July 13, 2015)?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Telenav, Inc. ("Telenav") is a Santa Clara based technology company focused on connected car and location-based platform services. One of those services is a consumer navigation app called "Scout GPS," or the "Scout app," which anyone can download for free for use on Android or iOS mobile devices. One feature of the Scout app allows users to coordinate plans with friends and family and share real-time GPS location information with them. If they want to, Scout app users can set up their Scout app to transmit different types of notifications to one or more of their chosen smartphone contacts. This case is about one such notification—a "Notify when I arrive" notification—sent by a Scout app user to one of his/her contacts, advising the recipient that the Scout app user had arrived at a specified location and providing information about the app to the contact.

Plaintiff Nathan Gergetz, on behalf of himself and a putative class, brings this action for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and specifically the provision of the TCPA that makes it unlawful to call a wireless number using an "automatic telephone dialing system" without the prior express consent of the called party. *Id.* § 227(b)(1)(A). Plaintiff alleges he received the notifications at issue via SMS message on his cell phone, and that he did not consent to receiving them. However Plaintiff's complaint is fatally deficient because it is devoid of any factual allegations making it plausible that the notifications he complains of were sent using an automatic telephone dialing system ("ATDS"). Congress defined ATDS as "equipment which has the capacity—(A) to store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). The Complaint recites this statutory definition, and decorates it with other conclusory assertions about the app's supposed capacity to dial stored lists of phone numbers "*en masse,* without human intervention." But there is not a single *factual* allegation that supports these conclusions. To the contrary, the factual allegations about the messages themselves, the Scout app, and how Scout users can use the app, show that the notifications are individualized messages sent to specific people selected by Scout app users from their existing

1  contacts, and sent only based on the settings selected by those users—here when the Scout user

2  arrived at 72 Kensington Rd. Because the Complaint fails to plausibly allege that the text

3  messages at issue were sent using an ATDS, it fails to state a claim for violation of the TCPA

4  and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

5        In the alternative, given that Plaintiff must prove use of an ATDS in order to prevail on

6  his claim, and therefore that Congress's ATDS definition is central to this case, Telenav requests

7  that the Court stay the action pending decision in a fully briefed and argued D.C. Circuit appeal

8  that directly implicates the ATDS definition. In *ACA Int'l v. FCC,* No. 15-1211 (D.C. Cir)

9  (consolidated appeals), nine petitioners challenge a ruling from last year by the Federal

10  Communications Commission ("FCC"), the agency responsible for implementing the TCPA.

11  Specifically, the petitioner's challenge the FCC's interpretation of the word "capacity" in the

12  ATDS definition as including not just present ability at the time of the calls, but also potential

13  abilities with modification. The Circuit Court is set to rule on this issue, and its decision will

14  provide clarity on what is required for equipment to qualify as an ATDS. This will simplify

15  discovery and likely avoid disputes that would otherwise occur regarding whether the Scout app

16  has the capacity to function as an ATDS. Given the early status of this case, and the likelihood of

17  a ruling from the D.C. Circuit within a few months, a stay will not prejudice Plaintiff, and will

18  avoid inefficient use of the Court's and the parties' resources. For these reasons, and as

19  explained further below, should the Court find that the Complaint states a claim, Telenav

20  respectfully requests that the Court exercise its broad discretion and stay the case pending a

21  decision from the D.C. Circuit.

## II.    BACKGROUND

### A.  The Telephone Consumer Protection Act

24        The TCPA is a not a catch-all statute regulating text messaging or cell phone calls.

25  Rather, the provision Plaintiff seeks to enforce here governs only calls or texts[1] placed using an

---

[1] The Ninth Circuit has held that text messages sent to wireless numbers constitute "calls" for TCPA purposes. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). While Telenav disputes that all text messages qualify as calls under the TCPA, it assumes solely for purposes of this motion that the text messages at issue in this case are calls.

"automatic telephone dialing system."[2] 47 U.S.C. § 227(b)(1)(A). This provision narrowly regulates the use of a particular kind of automated calling technology that was typically used by telemarketers to make unsolicited phone calls to either random telephone numbers, or to large sequential blocks of telephone numbers at the time the statute was enacted. *See Dominguez v. Yahoo, Inc.* 629 F. App'x 369, 372 (3d Cir. 2015).

To that end, Congress defined ATDS to mean "equipment which has the capacity" both (A) "to store or produce telephone numbers to be called, using a random or sequential number generator" and (B) "to dial such numbers." 47 U.S.C. § 227(a). This limited definition serves the important purpose of ensuring that not every call or text to a cell phone comes with a potential $500.00 price tag. Instead, it confines TCPA claims brought under the provision to those involving calls to cell phones made using specialized dialing equipment capable of generating and dialing (either immediately or after storing them) random telephone numbers, or sequential blocks of telephone numbers, such as 111-1111, 111-1112, 111-1113. Congress was concerned that by using such equipment, intrusive telemarketing calls might reach unlisted phone numbers, hospitals, or emergency organizations. *See, e.g.*, 137 Cong. Rec. 35302 (Nov. 26, 1991); H.R. Rep. No. 101-633, at 3 (1990); H.R. Rep. No. 102-317, at 10 (1991); S. Rep. No. 102-178, at 2 (1991). Likewise, Congress was concerned that unscrupulous telemarketers might "dial numbers in sequence, thereby tying up all the lines of a business and preventing outgoing calls." S. Rep. No. 102-178, at 1-2. However, Congress explicitly intended to permit callers to make legitimate calls using other dialing equipment. 47 U.S.C. § 227 note (Congressional Findings, 9).

Accordingly, the statutory provision at issue here applies only to calls to cell phones made using automatic telephone dialing systems, as so defined. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("the clear language of the TCPA mandates that the focus must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator") (internal quotations omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system

---

[2] It also applies to "artificial or prerecorded voice" calls, which are not at issue in this case. *See* 47 U.S.C. § 227(b)(1)(A).

1   need not actually store, produce, or call randomly or sequentially generated telephone numbers,

2   it need only have the capacity to do it.").

3   **B.   The FCC's 2015 Order and D.C. Circuit Appeal**

4        Consistent with Congress's statutory definition and intent, the FCC "initially interpreted

5   the [TCPA] as specifically targeting equipment that placed a high volume of calls by randomly

6   or sequentially generating the numbers to be dialed." *Dominguez v. Yahoo, Inc.,* 629 F. App'x at

7   372.[3] For fifteen years, the definition of ATDS remained settled. However, starting in 2003, the

8   FCC issued several rulings that included statements about the scope of the ATDS definition

9   which were "hardly a model of clarity." *Id.* These statements led courts to apply different tests

10  for determining whether a calling or texting system qualified as an ATDS. Some courts properly

11  gave the ATDS definition its plain reading, and concluded that equipment which lacks a random

12  or sequential number generator, and therefore lacks the capacity to store or produce and dial

13  randomly or sequentially generated numbers using one, is not an ATDS.[4]   Other courts, however,

14  read statements in the FCC's rulings as eliminating the "using a random or sequential number

15  generator" clause of the ATDS definition, and focused instead on whether the equipment had the

16

17

───────────────

18  [3] In its first TCPA-related order, the FCC declared that equipment with "speed dialing," "call forwarding," and "delayed message" functions are not ATDSs, "because the numbers called are
19  not generated in a random or sequential fashion."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8776, ¶ 47
20  (Oct. 6, 1992).  It later explained that the TCPA's ATDS provisions do not apply to calls "directed to [a] specifically programmed contact number[]" rather than "to randomly or
21  sequentially generated telephone numbers."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12400, ¶ 19
22  (Aug. 7, 1995).

23  [4] *See, e.g.*, *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d  1288, 1291 (S.D. Cal. 2014); *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643 (E.D. Pa. 2014), *vacated*, 629 F. App'x 369
24  (3d Cir.  2015) (remanded for further proceedings in light of subsequent FCC ruling); *Gragg v. Orange Cab Co.*,  995 F. Supp. 2d 1189, 1193-94 (W.D. Wash. 2014); *Stockwell v. Credit Mgmt.*
25  *L.P.*, No. 30-2012-00596110-CU-NP-CXC, slip op. at 2 (Cal. Super. Ct. Oct. 3, 2013); *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697 WMA, 2013 U.S. Dist. LEXIS 132574, at *11 (N.D. Ala.
26  Sept. 17, 2013); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 U.S. Dist. LEXIS 91030, at *9 (S.D. Cal. June 18, 2012); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d
27  946, 951 (9th Cir. 2009) (remanding for determination of whether system had the capacity to "store, produce, or call randomly or sequentially generated telephone numbers").

28

1  capacity "to dial numbers without human intervention."[5] Against this backdrop, 21 parties asked

2  the FCC to clarify or its interpretation of the TCPA, and make clear that to qualify as an ATDS,

3  the equipment must have the present capacity to store or produce and dial random or sequential

4  telephone numbers generated using a random or sequential number generator. On July 10, 2015,

5  the FCC released an Omnibus Declaratory Ruling and Order addressing these and other requests.

6  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of*

7  *1991*, 30 FCC Rcd. 7961 (July 10, 2015) (the "2015 Order"). Paragraphs 10-24 of the 2015

8  Order address what equipment qualifies as an "automatic telephone dialing system" under the

9  TCPA. *Id.* 7971-78.

10         Rather than make the requested clarification, the 2015 Order only added to the

11  uncertainty. The ATDS definition refers to equipment which "has the capacity" to do certain

12  things. Despite Congress's use of the present tense, the FCC interpreted "has the capacity" to

13  include future, potential capabilities: "the capacity of an [ATDS] is not limited" to what the

14  equipment is capable of doing in its "current configuration[,] but also includes its potential

15  functionalities," 2015 Order at 7974-76, ¶¶ 15-19—that is, what it could do if modified, at least

16  if those possible modifications are not too "theoretical" or "attenuated." *Id.* at 7975, ¶ 18. But

17  the FCC declined to explain the distinction between a possible modification, and one that is only

18  theoretical, or to otherwise set forth the contours of the ATDS definition that would be

19  administrable industry-wide. *Id.* at 7974-75, ¶ 17. And while one Circuit Court has concluded

20  that the 2015 Order and prior FCC Orders held "that an autodialer must be able to store or

21  produce numbers that *themselves* are randomly or sequentially generated," *Dominguez v. Yahoo,*

22  629 F. App'x at 372, and rejected the argument that the FCC has "interpreted the autodialer

23  definition to read out the 'random or sequential number generator' requirement," *id.* at 373 n.2,

24  TCPA plaintiffs, including Plaintiff herein, continue to take the position that the FCC has

25  _____

26  [5] *See, e.g.*, *Johnson v. Yahoo!, Inc.*, Nos. 14-CV-2028, 14-CV-2753, 2014 U.S. Dist. LEXIS 171325, at *8-10 (N.D. Ill. Dec. 11, 2014); *Sterk v. Path, Inc.*, 46 F. Supp. 3d. 813, 818-21 (N.D. Ill. 2014); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1374 (S.D. Fla. 2014); *Fields v.*

27  *Mobile Messengers Am., Inc.*, No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 180227, at *10-11 (N.D. Cal. Dec. 23, 2013).

28

1  interpreted the ATDS definition to include any system that has the capacity to store lists of

2  telephone numbers and dial them in an automated fashion without human intervention. *See, e.g.,*

3  Compl. ¶ 15.

4      Nine parties that had participated in the FCC proceedings culminating in the 2015 Order

5  appealed it in multiple Circuit Courts. The appeals were consolidated in the D.C. Circuit. *ACA,*

6  *Int'l v. FCC,* No. 15-1211 (D.C. Cir). Several parties intervened in support of petitioners.[6]  And

7  numerous amici filed briefs supporting petitioners' request to set aside the FCC's ruling on the

8  meaning of "automatic telephone dialing system."[7]  The appeal was fully briefed in February of

9  this year (*Id*. ECF No. 1574077), and oral argument was held on October 19, 2016. *Id*. ECF Nos.

10  1641668, 1642856 (transcript).

11  **C.  This Action**

12      Plaintiff Nathan Gergetz has alleged that he is an individual from Wisconsin. Compl. ¶ 2.

13  He alleges TCPA violations against Telenav, a Santa Clara based company. *Id*. ¶¶ 3, 9. Telenav

14  creates products that (1) provide easily-accessed, relevant, and personalized information for

15  discovery, traffic, local search, and navigation and (2) are available across multiple platforms

16  and devices, including mobile phones, tablets, computers and cars. *Id*. ¶ 9. Among Telenav's

17  offerings is a mobile app known as "Scout GPS" which allows users to communicate their

18  location, route, and ETA to friends and family. *See id*. ¶ 10; http://www.scoutgps.com/;

19  https://itunes.apple.com/us/app/scout-by-telenav/id467816643.[8] These features allow users to

20

21  [6] Corrected Joint Intervener Brief for Petitioner Brief, *ACA Int'l v. FCC*, ECF No. 1586469.

22  [7] The amici supporting petitioners include the National Association of Chain Drug Stores,
American Gas Association, Edison Electric Institute, National Association of Water Companies
and National Rural Electric Cooperative Association, Internet Association, National Restaurant

23  Association, National Retail Federation and Retail Litigation Center, Inc., American Financial
Services Association, Consumer Mortgage Coalition, Mortgage Bankers Association,

24  Communication Innovators, and CTIA—The Wireless Association. *Id*. ECF Nos. 1586376,
1586383, 1586419, 1586446, 1586457, 1586464, 1586472.

25

26  [8] Because the Complaint relies upon the scoutgps.com and itunes.apple.com websites (Compl.
¶ 10), it is appropriate for the Court to consider them on this motion. *Sepehry-Fard v. MB Fin.*

27  *Servs*., No. 13-cv-02784-BLF, 2014 U.S. Dist. LEXIS 71568, at *6 n.1 (N.D. Cal. May 23, 2014)
(court may consider "documents incorporated by reference into the complaint" on a motion to
dismiss).

28

1   coordinate plans with their friends and family, share their real-time location, and notify the

2   people of their choosing when they arrive at particular locations. Compl. ¶¶ 10-11. One optional

3   Scout app notification is the "Notify when I arrive" notification, which informs the recipient

4   when the Scout app user has arrived at an address selected by the Scout app user. *See id.* ¶¶ 10-

5   11, 26. For example, a Scout app user can set up her app to notify her spouse (selected from her

6   mobile device's contact list) when she has arrived at work, or has arrived home after a commute

7   from the office. Scout users select the contact with whom they wish to communicate their

8   location using the app. *Id.*; http://www.scoutgps.com/; https://itunes.apple.com/us/app/scout-by-

9   telenav/id467816643. If the selected contact is a Scout app user, that contact will receive the

10  notification and the user's chosen message (if any) from within the Scout app. If the selected

11  contact is not a Scout app user, the requested message is transmitted via text message, and

12  provides information about the Scout app to allow the user to receive future notification within

13  the Scout app. Compl. ¶¶ 11, 27; http://www.scoutgps.com/;

14  https://itunes.apple.com/us/app/scout-by-telenav/id467816643.

15          According to the Complaint, between July 6, 2016 and July 25, 2016 Plaintiff received

16  text messages from a short code assigned to Telenav (collectively, the "Scout Notifications").

17  Compl. ¶¶ 25-35. These messages on their face were notifications from "Susan" indicating that

18  she had "arrived at 72 Kensington Rd," and providing information about the Scout app. *Id.*

19  ¶¶ 26-27. Based on his receipt of these targeted messages, Plaintiff contends that the Scout

20  Notifications were sent using an "automatic telephone dialing system."  However, as explained

21  below, there are no factual allegations making it plausible that the Scout app had the capacity to

22  store or produce and dial telephone numbers generated using a random or sequential number

23  generator. To support his legal contention, Plaintiff offers only barebones recitations about the

24  equipment allegedly used, Compl. ¶¶ 15, 51, 57, 58, and claims that Telenav "made, or had made

25  on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of

26  cellular telephone numbers throughout the United States." *Id.* ¶ 14. The Complaint contains no

27  factual allegations to support these conclusory assertions.

28

1

2

## III.   ARGUMENT

The Complaint should be dismissed for failure to state a claim because it does not allege facts making it plausible that Telenav's app is an ATDS. Alternatively, the Court should stay the case pending the outcome of the D.C. Circuit's ruling, which will clarify the scope of an ATDS, and thereby simplify discovery and the legal issues in this case.

### A. The Complaint Fails to State a Claim Because It Contains No Factual Allegations Making It More Than Speculation That the Scout Notifications Were Sent Using an ATDS

When addressing a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Likewise, courts are "not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Sepehry-Fard v. MB Fin. Servs.*, No. 13-cv-02784-BLF, 2014 U.S. Dist. LEXIS 71568, at *4 (N.D. Cal. May 23, 2014) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

Instead, a plaintiff must provide sufficient factual allegations to state a claim that is "plausible." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 556, 570. The facts alleged must do more than demonstrate a mere "possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (emphasis added). Where the factual allegations are equally consistent with a defendant's being liable and not liable, the plaintiff has not shown entitlement to relief. *Id.*; *accord Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Sec. Litig.),* 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation."). Here, the Complaint fails to meet the *Twombly*/*Iqbal* pleading standard because it fails to provide sufficient factual allegations to permit a reasonable inference that the text

1   messages Plaintiff complains of were sent using an "automatic telephone dialing system" as

2   defined by the TCPA.

3         The Complaint's allegations regarding the equipment used to send the Scout

4   Notifications to Plaintiff are as follows:

5         In sending the text messages at issue in this Complaint, Defendant utilized an automatic
6         telephone dialing system. Specifically, the hardware and software used by Defendant (or
          its agent) has the capacity to store, produce, and dial random or sequential numbers,
          and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*,
7         in an automated fashion without human intervention. Defendant's automated dialing
          equipment includes features substantially similar to a predictive dialer, inasmuch as it is
8         capable of making numerous text message calls simultaneously (all without human
          intervention).

9

10  Compl. ¶ 15, repeated verbatim at ¶¶ 51, 57-58. These allegations are mere conclusions devoid

11  of factual support, and indeed appear to have been copied nearly verbatim from other TCPA

12  complaints filed by Plaintiff's counsel.[9] To the extent they merely parrot the statute's language,

13  they must be disregarded. *Twombly*, 550 U.S. at 555, 570; *Anderson v. Blockbuster Inc.*, No.

14  2:10-cv-00158-MCE-GGH, 2010 U.S. Dist. LEXIS 53854, at *9 (E.D. Cal. May 4, 2010) (to

15  withstand a motion to dismiss, "[i]t is not enough to simply parrot the statutory language for each

16  purported claim."). In the context of a TCPA claim, unsupported assertions such as these are not

17  enough: "Courts in this district require more than a bare assertion of these elements, looking

18  instead to the plaintiff's factual allegations to determine whether a TCPA claim can be

19  sustained." *Sepehry-Fard*,  at *7 (finding insufficient plaintiff's "sparse factual allegations,"

20  which included no facts to plausibly suggest use of an ATDS); *see Knutson v. Reply!, Inc.*, No.

21  10-cv-1267 BEN (WMc), 2011 U.S. Dist. LEXIS 7887, at *5 (S.D. Cal. Jan. 26, 2011) (the

22  "naked assertion" that "messages were sent using equipment that…had the capacity to store or

23  produce telephone numbers to be called, using a random or sequential number generator" "need

24  not be taken as true" (internal citation & quotation marks omitted)); *Huricks v. Shopkick*, No. C-

25

26        [9] *See, e.g.*, Class Action Complaint and Demand for Jury Trial ¶ 14, *Martin v. Global
          Marketing Research Servs., Inc.* 6:14-cv-01290-GAP-KRS (M.D. Fla. Aug. 11, 2014), ECF No.
27        1; Class Action Complaint ¶ 19, *Gibbs v. SolarCity Corp.*, 4:16-cv-11010-TSH (D. Mass. June 1,
          2016) ECF No. 1.
28

1   14-2464 MMC, 2014 U.S. Dist. LEXIS 101521, at *5-7 (N.D. Cal. July 24, 2014) (allegations

2   that app "had the capacity to store or produce telephone numbers to be contacted using a random

3   or sequential number generator" and "to generate numbers and dial them without human

4   intervention"  insufficient). Setting aside Plaintiff's conclusory assertions, there are no

5   allegations that even suggest that the Scout Notifications were sent using an ATDS, let alone any

6   facts that would make it more than a mere "possibility that a defendant has acted unlawfully."

7   *Iqbal*, 556 U.S. at 678.

8          The FCC has concluded that at least some predictive dialers are ATDSs, and the

9   Complaint asserts that the system used to send the Scout Notifications is "like a predictive

10  dialer." But a text messaging functionality within a mobile app is nothing like a predictive dialer.

11  As the FCC has explained, a predictive dialer is "a dialing system that automatically dials

12  consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer

13  the phone and a telemarketer will be available to take the call." *In the Matter of Rules and*

14  *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830,

15  1835 n.31 (Feb. 15, 2012) (quoting 18 FCC Rcd 14014, 14022, ¶ 8 n.31 (July 3, 2003)); *see also*

16  *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 n.16 (S.D. Tex. 2011) ("A predictive dialer is

17  dialing equipment that, through the use of complex formulae, attempts to predict when a person

18  will answer the telephone; a telemarketing call is then not transferred to a live operator until the

19  equipment predicts a person will have answered."). Predictive dialers are used for live operator

20  calls, not text messages. And there is nothing "predictive" about the Scout Notifications—they

21  appear to have been sent because a Scout app user set up her Scout app to send Plaintiff's

22  number (stored within her mobile device's contacts) a notification whenever she arrived at a

23  specified location.

24         It also is not enough for the Complaint to assert that the Scout app sent mass numbers of

25  the same or similar messages indiscriminately, particularly where the rest of the complaint

26  indicates otherwise. Where "a '[p]laintiff's own allegations suggest direct targeting that is

27  inconsistent with the sort of random or sequential number generation required for an ATDS',

28  courts conclude that the allegations are insufficient to state a claim for relief under the TCPA."

*Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 U.S. Dist. LEXIS 39628, at *13, *15 (N.D. Cal. Mar. 24, 2016) (allegations that Facebook automatically sent text messages using a standard format to large numbers of people insufficient to show ATDS usage where messages were "targeted to specific phone numbers" and were triggered by user conduct); *accord Weisberg v. Stripe, Inc.,* No. 16-cv-00584-JST, 2016 U.S. Dist. LEXIS 96794, at *5, *8 (N.D. Cal. July 25, 2016) (plaintiff's ATDS allegations insufficient where factual allegations reflected that texts were targeted to specific phone numbers provided by users and triggered by user conduct); *Flores v. Adir Int'l LLC*, No. CV-15-00076-AB (PLAx), 2015 U.S. Dist. LEXIS 92176, at *7-12 (C.D. Cal. July 15, 2015) (dismissing complaint for failure to plausibly allege use of ATDS where factual allegations reflected that text messages were targeted to a specific individual); *Daniels v. ComUnity Lending, Inc.*, No. 13-cv-488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, at *7 (S.D. Cal. Jan. 6, 2014) (same).

Here the facts Plaintiff does allege and the websites he relies upon suggest precisely such "direct targeting." *Duguid*, 2016 U.S. Dist. LEXIS 39628 at *13. The Scout app allows "*consumers* to coordinate plans with *friends* and provide real time GPS location updates to those *friends*." Compl. ¶ 10 (emphasis added).The Scout Notifications on their face were sent from a specific, identified person ("Susan"), and they referenced an arrival at a specific, identified location ("72 Kensington Rd"), reflecting that they were individualized messages targeted to a specific individual selected by the Scout app user, and were triggered by the user's conduct (i.e. setting up the notifications coupled with that user's arrival at an address selected by the user). Compl. ¶ 26; *see* http://www.scoutgps.com; https://itunes.apple.com/us/app/scout-by-telenav/id467816643 ("Instantly share your location, route and ETA with the friends from your contact list."). Based on these facts, the only plausible explanation is that a Scout user named Susan set up her Scout App to transmit Scout Notifications to a specific person in her contacts, as she desired to inform him she had reached the destination set forth in the Scout Notifications. Such direct targeting makes Plaintiff's conclusory ATDS allegations implausible. *See, e.g., Weisberg*, 2016 U.S. Dist. LEXIS 96794, at *10; *Duguid*,  2016 U.S. Dist. LEXIS 39628, at *13; *Flores*, 2015 U.S. Dist. LEXIS 92176, at *7-12; *Daniels*, 2014 U.S. Dist. LEXIS 1606. Because

1  the Complaint lacks the necessary factual allegations to plausibly suggest that the Scout

2  Notifications were sent using an "automatic telephone dialing system" it fails to state a claim,

3  and should be dismissed.

4  **B. Alternatively, This Action Should be Stayed Pending the Appeal of the FCC's 2015 Order**

5

6  In the event that the Court determines that the Complaint adequately alleges use of an

7  ATDS, Telenav respectfully requests that the Court exercise its discretion and stay the action

8  pending resolution of the pending D.C. Circuit appeal from the FCC's 2015 Order.

9  A Court has the inherent power to stay the proceedings before it in order to promote

10  judicial efficiency. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299

11  U.S. 248, 254, (1936)). In the exercise of that authority, "the Court must weigh 'the competing

12  interests which will be affected by the granting or refusal to grant a stay.'" *S.F. Tech., Inc. v.*

13  *Glad Prods.* Co., No. 10-CV-00966 JF (PVT), 2010 U.S. Dist. LEXIS 83681, at *5 (N.D. Cal.

14  July 19, 2010) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). "Among

15  these competing interests are the possible damage which may result from the granting of a stay,

16  the hardship or inequity which a party may suffer in being required to go forward, and the

17  orderly course of justice measured in terms of the simplifying or complicating of issues, proof,

18  and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300

19  F.2d 265, 268 (9th Cir. 1962); *S.F. Tech., Inc.*, 2010 U.S. Dist. LEXIS 83681, at *5 (same).

20  Here, each of these factors weighs in favor of granting a stay pending decision in the

21  appeal of the 2015 Order. Indeed, courts throughout the country have issued stays in similar

22  TCPA litigation based on the forthcoming decision from the D.C. Circuit. [10] *See, e.g., Rajput v.*

23

24  [10] While some courts have denied similar requests, many of those cases are distinguishable. *See, e.g., Lathrop v. Uber Techs., Inc.,* No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 2490, at

25  *12 (N.D. Cal. Jan. 8, 2016) (denying stay because, at the time, *ACA International* was not fully briefed and oral argument had not been scheduled, a stay would be "indeterminate" and cause prejudice to plaintiff); *Edwards v. Oportun, Inc.*, No. 16-cv-00519-EDL, 2016 U.S. Dist. LEXIS

26  106610, at *12-16 (N.D. Cal. June 14, 2016) (finding that, due to oral argument not being scheduled, delay could be "indefinite" and the case contained issues that would not turn on the

27  outcome of the D.C. Circuit's ruling); *Jones v. Ad Astra Recovery Servs.*, No. 16-1013-JTM-GEB, 2016 U.S. Dist. Lexis 73561, at *16 (D. Kan. June 6, 2016) (applying different, more

28  stringent, motion to stay standard and finding, under that standard, "no 'clear case of hardship or
                                                                                      (continued...)

1    *Synchrony Bank*, No. 3:15-CV-1079, 2016 U.S. Dist. LEXIS 150231, at *20-21 (M.D. Pa. Oct.

2    31, 2016) (granting stay pending appeal of 2015 Order); *Robinson v. Nationstar Mortg., LLC*, No.

3    2:16-cv-83, 2016 U.S. Dist. LEXIS 147770, at *4-5 (S.D. Ga. Oct. 25, 2016) (same); *Errington v.*

4    *Time Warner Cable, Inc.*, No. 2:15-CV-02196 RSWL (DTB), 2016 U.S. Dist. LEXIS 66317, at

5    *10-11 (C.D. Cal. May 18, 2016) (same); *Chattanond v. Discover Fin. Servs., LLC*, No. CV 15-

6    08549-RSWL-JCx, 2016 U.S. Dist. LEXIS 24700, at *9-10 (C.D. Cal. Feb. 26, 2016) (same);

7    *Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWx), 2015 U.S. Dist. LEXIS 169580,

8    at *15-17 (C.D. Cal. Dec. 17, 2015) (minute order) (same); *Kolloukian v. Uber Techs., Inc.*, No.

9    cv 15-2856-PSG-JEM, 2015 U.S. Dist. LEXIS 174005, at *1 (C.D. Cal. Dec. 14, 2015) (same).[11]

10          First, a stay pending the outcome of the D.C. Circuit appeal will not result in any damage

11   to Plaintiff. Given the early posture of this case and the likely timeline for a ruling from the D.C.

12   Circuit, a stay would have little to no impact on the progression and management of this case.

13   Telenav is just filing its responsive pleading, and discovery has not yet commenced. The D.C.

14   Circuit heard oral argument in October of 2016, and the median time to decision from oral

15   argument in the D.C. Circuit is three and a half months. Administrative Office of the United

16   States Courts, U.S. Courts of Appeals—Median Times for Administrative Agency Cases

17   Terminated on the Merits—During the 12-Month Period Ending September 30, 2015,

18

19              (...continued from previous page)
     inequity' to Defendant in this case proceeding, at least with scheduling and discovery, despite the
     pending appeal"); *Konopca v. Comcast Corp.*, No. 15-6044 (FLW)(DEA) 2016 U.S. Dist.
20   LEXIS 55274, at *12 (D.N.J. Apr. 26, 2016) ("Defendant makes no showing that that there are
     specific disputes in this case that turn on the FCC's ruling."); *Rivera v. Exeter Fin. Corp.*, No.
21   15-cv-1057-PAB-MEH, 2016 U.S. Dist. LEXIS 11505, at *8 (D. Colo. Feb. 1, 2016) (denying
     motion for stay without prejudice and holding that "[i]n the event the appeal of the FCC Ruling
22   is still pending at the time the parties must proceed with merits, class and expert discovery,
     Defendant may renew its motion.").

23
     [11] *See also Coatney v. Synchrony Bank*, No. 6:16-cv-389-Orl-22TBS, 2016 U.S. Dist. LEXIS
24   118768, at *2-5 (M.D. Fla. Aug. 2, 2016) (same); *Ricks v. Allied Interstate, LLC*, No. 3:16-cv-
     00205-HES-PDB, 2016 U.S. Dist. LEXIS 118956, at *3-4 (M.D. Fla. July 11, 2016) (same);
25   *Williams v. TGI Friday's, Inc.*, No. 4:15-CV-1469 RWL, 2016 U.S. Dist. LEXIS 48817, at *8
     (E.D. Mo. Apr. 12, 2016) (same); *Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-CV-
26   203-RJC-DCK, 2016 U.S. Dist. LEXIS 1762, at *8 (W.D.N.C. Jan. 7, 2016) (recommending
     same) *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 14263, at *3 (W.D.N.C. Feb.
27   5, 2016); *Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 U.S. Dist. LEXIS 142303, at
     *5-7 (E.D. Wis. Oct. 20, 2015) (same).

28

http://www.uscourts.gov/statistics/table/b-4c/judicial-business/2015/09/30. The current status of this case and the D.C. Circuit appeal distinguish this case from *O'Hanlon v. 24 Hour Fitness USA, Inc*., No. 15-cv-01821-BLF, 2016 U.S. Dist. LEXIS 27509, at *14 (N.D. Cal. Mar. 2, 2016), where this Court denied a motion to stay. There, the case had already been pending for nearly a year, and the defendant had not indicated when arguments would be heard or when a decision might issue, so it was effectively asking for stay of "an indefinite period of time." *Id*. at *15. Here there is no similar potential for "substantial delay" that could harm Plaintiff. *Id*. Nor would a stay damage Plaintiff outside the context of litigation—Plaintiff complains of no text messages sent after July 2016 (Compl. ¶ 35), so there is no urgent need for relief. Indeed, other recent decisions granting stays pending the appeal of the FCC's Order have rejected the notion that any delay caused by a stay would lead to meaningful prejudice to plaintiffs or would outweigh the inefficiency and waste of resources that might result from pressing forward with TCPA litigation prior to the D.C. Circuit's decision. *See, e.g.*, *Ricks*, 2016 U.S. Dist. LEXIS 118956, at *4 (holding that "this case is in the early stages of litigation and granting a stay will not likely result in prejudice to [plaintiff]."); *Williams*, 2016 U.S. Dist. LEXIS 48817, at *7-8 (finding that delay of proceedings while awaiting ruling in FCC Appeal did not merit denial of the motion to stay).

Second, Telenav will suffer hardship if it has to proceed in this case with an uncertain definition of an ATDS. The question of whether Telenav used an ATDS lies at the core of the case, and both discovery efforts and litigation strategy will revolve around this core issue. While Telenav agrees with the Third Circuit that the 2015 Order and prior FCC Orders held "that an autodialer must be able to store or produce numbers that *themselves* are randomly or sequentially generated," and did not read out of the ATDS definition the "using a *random or sequential number generator*" limitation, *Dominguez*, 629 F. App'x at 372, based on the ATDS allegations in the Complaint, Telenav expects that Plaintiff will take a much more expansive view of what qualifies as an ATDS. That in turn will lead to overbroad discovery from Plaintiff, and likely discovery disputes that could be avoided by awaiting clarification from the D.C. Circuit. Moreover, even if this Court were to rule now that it also agrees with the Third Circuit's reading of the FCC's Orders,

1   the parties may still spend time on unnecessary ATDS-related discovery into the Scout app's

2   "capacity." If the D.C. Circuit reverses the FCC's broad interpretation of "capacity" and limits that

3   term to current capabilities, Plaintiff would only be permitted to take discovery into what the

4   Scout app was capable of doing at the time Plaintiff received the text messages at issue in the case.

5   Prior to such a ruling, Plaintiff is likely to seek much broader discovery concerning the potential

6   functionalities of the Scout app. As other courts granting stays pending the D.C. Circuit's ruling

7   have recognized, having to litigate in this uncertain landscape represents a hardship for defendants.

8   *Robinson*, 2016 U.S. Dist. LEXIS 147770, at *5-6 ("If the case is not stayed, Defendant must

9   conduct discovery and trial preparation without any certainty regarding the difference between

10   'potential' and 'theoretical' capacity under the definition of an ATDS."); *Ricks*, 2016 U.S. Dist.

11   LEXIS 118956, at *4 ("this Court agrees with [defendant] that denial of the Motion [to Stay]

12   could lead to unnecessary fees and expenses depending on the outcome in *ACA International*.");

13   *Errington*, 2016 U.S. Dist. LEXIS 66317, at *10 ("If the case is not stayed, Defendant may suffer

14   hardship in conducting discovery and trial preparation in light of the uncertain difference between

15   'potential' capacity and 'theoretical' capacity under the definition of an ATDS."); *Chattanond*,

16   2016 U.S. Dist. LEXIS 24700, at *10 (same).

17       Third, a stay will benefit the orderly course of justice by simplifying questions of proof

18   and questions of law. Whether the Scout app qualifies as an ATDS is a threshold issue in the

19   case. If the text messages were not sent using an ATDS, then they fall outside of the TCPA and

20   the case is over. But, in the absence of a ruling from the D.C. Circuit, what characteristics are

21   necessary for equipment to qualify as an ATDS is clouded in uncertainty. Accordingly, awaiting

22   a ruling from the D.C. Circuit will benefit the orderly course of justice. *See, e.g., Fontes,* 2015

23   U.S. Dist. LEXIS 169580, at *12 ("[I]n light of the close divide amongst the FCC commissioners

24   and the fact that at least one commissioner believes the FCC's [ATDS] ruling is 'flatly

25   inconsistent with the TCPA,' there is a legitimate possibility that the Court of Appeals may

26   overturn that ruling. Accordingly, the proper interpretation of the TCPA remains unclear.");

27   *Gensel*, 2015 U.S. Dist. LEXIS 142303, at *5 (agreeing with dissenting commissioner's that

28   majority's interpretation of ATDS definition "contradicts the plain language of the statute" and is

1   likely to be reversed on appeal). While this Court in *O'Hanlon* stated without discussion that the

2   ruling of the D.C. Circuit would not be binding on the Court, *O'Hanlon*, 2016 U.S. Dist. LEXIS

3   27509, at *15, Ninth Circuit precedent suggests otherwise. Where challenges to agency

4   regulations are consolidated from multiple circuit courts under 28 U.S.C. § 2112, the rulings of

5   the circuit court on the consolidated case are binding on other circuits. *Peck v. Cingular Wireless,*

6   *LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008) ("[T]he Eleventh Circuit's decision regarding the

7   validity of the [FCC's] *Second Report and Order* is binding outside of the Eleventh Circuit.");

8   *see also MCI Telecomms. Corp. v. U.S. W. Communs.*, 204 F.3d 1262, 1267 (9th Cir. 2000) (the

9   circuit court assigned consolidated challenges to FCC's rules "thereby became, and remains, the

10  sole forum for addressing…the validity of the FCC's rules.") (internal quotation marks omitted).

11  Accordingly, awaiting clarification from the D.C. Circuit will avoid this uncertainty, simplify the

12  issues in the case, and reduce the burdens on the Court and both parties. As such, a stay is

13  warranted. *See, e.g., Coatney*, 2016 U.S. Dist. LEXIS 118768, at *5 ("[G]ranting a stay 'will

14  reduce the burden of litigation on the parties and the Court by allowing the Court to avoid

15  issuing a dispositive Order in the midst of an uncertain legal environment.'") (quoting

16  *Mackiewicz v. Nationstar Mortg. LLC.,* No. 6:15-cv-465-Or1-18GJK, 2015 U.S. Dist. LEXIS

17  180770, at *3 (M.D. Fla. Nov. 10, 2015)); *Acton v. Intellectual Capital Mgmt.*, No. 15-CV-

18  4004(JS)(ARL), 2015 U.S. Dist. LEXIS 172149, at *7 (E.D.N.Y. Dec. 28, 2015) (holding that

19  "[t]he resolution of the D.C. Circuit Court of Appeals will more precisely define terms set forth

20  in the TCPA.").[12]

---

23   [12] *See also IPtronics Inc. v. Avago Techs. U.S., Inc.,* No. 14-cv-05647-BLF, 2015 U.S. Dist.
LEXIS 168456, at *5-9 (N.D. Cal. Dec. 15, 2015) (granting 6 month stay in antitrust case
pending outcome of parties' separate intellectual property litigation); *Arista Networks, Inc. v.
Cisco Sys.*, No. 16-cv-00923-BLF,  2016 U.S. Dist. LEXIS 112494, at *4-7 (N.D. Cal. Aug. 23,
2016) (granting 4 month stay in antitrust case pending outcome of parties' separate intellectual
property litigation); *Lee v. Dollar Thrifty Auto. Grp., Inc.*, No. 15-cv-04562-BLF, 2016 U.S.
Dist. LEXIS 24835, at *4-8 (N.D. Cal. Feb. 26, 2016) (granting stay of several months pending
Supreme Court ruling); *Leonhart v. Nature's Path Foods, Inc.*, No. 13-cv-00492-BLF, 2015 U.S.
Dist. LEXIS 73269, at *9-12 (N.D. Cal. June 5, 2015) (granting stay pending outcome of 9th
Circuit rulings on cases with similar claims).

1

### IV.   CONCLUSION

2      For the reasons stated above, Telenav respectfully requests that the Court grant its motion

3 and dismiss the Complaint for failure to state a claim, or, in the alternative, stay the case pending

4 the D.C. Circuit's decision in *ACA International*.

5

6 Dated: November 21, 2016                  Respectfully submitted,

7                                           WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
8

9                                           By:  */s/ Tonia Ouellette Klausner*
                                                  TONIA OUELLETTE KLAUSNER
10

11                                          Attorneys for Defendant
                                            TELENAV, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28