Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff* NATHAN GERGETZ
and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TELENAV, INC., a Delaware corporation <br><br> Defendant. | Case No. 5:16-cv-04261-BLF <br><br> **OPPOSITION TO DEFENDANT TELENAV, INC.'S MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE TO STAY THE CASE (DKT. 24)** <br><br> **JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND FACTS .........................................................................2

      A.     Telenav's Scout App is programmed to automatically send telemarketing
           messages to cellphone users and failed to honor STOP requests .....................3

      B.     Plaintiff Gergetz never signed up for Scout yet he received numerous
           telemarketing text messages urging him to download the Scout App—his
           STOP requests went ignored...........................................................................3

      C.     The 2015 TCPA Order and the ACA Appeal ................................................4

III.   ARGUMENT .........................................................................................7

      A.     Telenav's Motion to Dismiss Falls Apart—Gergetz Plainly Details How the
           Scout App Sends Automated Telemarketing Messages to Unsuspecting
           Cellphone Users .............................................................................................7

           1. Gergetz's Complaint contains sufficient facts that, if proven true, would
           show that Telenav's system is an ATDS under the TCPA ...............................8

           2. The Motion to Dismiss is further undermined by the Motion to Stay ........10

      B.     The Court Should Also Deny Telenav's Bid to Stay the Case: the ACA
           Appeal May Take Several Months Before Any Decision is Issued and it  Still
           Would Not Resolve the Entire Case Given the Scout App's Failure to Process
           "STOP" Requests ........................................................................................11

           1. No one actually knows when a decision on the ACA Appeal may be issued,
           and any delay simply harms Plaintiff ...........................................................12

           2. The D.C. Circuit decision—which is not binding on this Court—is unlikely
           to spell the end of this issue in any case .......................................................14

           3. This case should not be delayed for months, particularly where Telenav's
           system failed to honor "STOP" requests—a plain violation of the TCPA
           regardless of any issue raised in the ACA Appeal ........................................15

IV.    CONCLUSION ...................................................................................16

1

## **TABLE OF AUTHORITIES**

2

**UNITED STATES SUPREME COURT**

3

*Sibron v. New York*, 392 U.S. 40 (1968)......................................................................14

4

**UNITED STATES CIRCUIT COURT OF APPEALS**

5

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ......................................16

6

*Meyer v. Portfolio Recover Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012)................6

7

*Osario v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014)............................16

8

*Pagtalunan v. Galaza*, 291 F.3d 639 (9th Cir. 2002) ....................................................14

9

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)...................1 n.1, 10

10

**UNITED STATES DISTRICT COURT**

11

*Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744 (W.D. Tex. 2011) ...........16

12

*Beal v. Wyndham Vacation Resorts, Inc.*, 956 F.Supp.2d 962 (W.D. Wis. 2013)........16

13

14

*Caudill v. Wells Fargo Home Mortg., Inc.*,
    2016 U.S. Dist. LEXIS 89139 (E.D. Ky. July 11, 2016)........................................12

15

*Coniglio v. Iqual Corp.*, 2015 U.S. Dist. LEXIS 162334 (M.D. Fla. Dec. 3, 2015) ....13

16

*Daniels v. ComUnity Lending, Inc.*, 2014 WL 51275 (S.D. Cal. Jan. 6, 2014)............10

17

*Duguid v. Facebook, Inc.*, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016) .....................9

18

*Flores v. Adir Int'l, LLC*, 2015 WL 4340020 (C.D. Cal. July 15, 2015).......................10

19

*Gragg v. Orange Cab Co.*, 2013 WL 1788479 (W.D. Wash. Apr. 26, 2013) .................4

20

*Higgenbotham v. Diversified Consultants, Inc.*,
    2014 WL 1930885 (D. Kan. May 14, 2014).........................................................15 n.6

21

*Hurrle v. Real Time Resolutions, Inc.* 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) ..........15 n.6

22

*In re Jiffy Lube Int'l Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012)....................5

23

*Jones v. Ad Astra Recovery Servs.*, 2016 U.S. Dist. LEXIS 73561 (D. Kan. Jun. 6, 2016) ..........13

24

*Kafatos v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2526 (N.D. Cal. Jan. 8, 2016) ..................13

25

*Konopca v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 55274 (D.N.J. Apr. 26, 2016).....................13

26

*Lathrop v. Uber Techs, Inc.*, 2016 U.S. Dist. LEXIS 2490 (N.D. Cal. Jan. 8, 2016)...................13

27

*Legg v. Voice Media Grp., Inc.*, 2014 WL 29594 (S.D. Fla. Jan. 3, 2014) ...................16

28

*Mendoza v. UnitedHealth Grp., Inc.*, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014...................15 n.6

*Nussbaum v. Diversified Consultants, Inc.*,
   2015 U.S. Dist. LEXIS 129750 (D.N.J. Sept. 28, 2015) .......................................................13

*O'Hanlon v. 24 Hour Fitness USA, Inc*., 2016 WL 815357 (N.D. Cal. Mar. 2, 2016) ......... *passim*

*Passero v. Diversified Consultants, Inc.*, 2014 WL 2257185 (W.D.N.Y. May 28, 2014) ......15 n.6

*Pritchard v. Comenity Bank*, 2016 U.S. Dist. LEXIS 89123 (D.N.J. July 5, 2016)....................13

*Rajput v. Synchrony Bank*, 2016 WL 6433150 (M.D. Pa. Oct. 31, 2016).....................................7

*Robinson v. Nationstar Mortgage, LLC*, 2016 WL 6275192 (S.D. Ga. Oct. 25, 2016) .................4

*Schwyhart v. Amsher Coll. Servs.*, 2016 U.S. Dist. LEXIS 56065 (N.D. Ala. Apr. 22, 2016)......13

*Weisberg v. Stripe, Inc.,* 2016 WL3971296 (N.D. Cal. July 25, 2016) ...........................................9

**FEDERAL COMMUNICATIONS COMMISSION**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   CG Docket No. 20-278 (Nov. 29, 2012)....................................................................................16

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   WC Docket No. 07-135, FCC 15-72, 2015 WL 4387780 (July 10, 2015) ..................... *passim*

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
   73 Fed. Reg. 6041 (Feb. 1, 2008) .............................................................................................4

**STATUTES, RULES AND REGULATIONS**

Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*............................................. *passim*

**SECONDARY AUTHORITY**

Drinker, Biddle & Reath TCPA Blog, http://tcpablog.com/category/consolidated-appeal.....12 n.3

## I.    INTRODUCTION

Plaintiff Gergetz brings this alleged class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") to challenge text messages sent by Defendant Telenav, Inc. ("Telenav") through its "Scout App"—a smartphone application that sends text messages[1] to certain contacts whenever the app user leaves or arrives at a given location. For example, an app user could set up her account to send text messages to her significant other whenever she leaves the office (or courthouse) or arrives home from work.

Such location alerts are <u>not</u> the focus of this case.

Rather, separate and apart from the Scout App's location alerts, Telenav's Scout App sends additional telemarketing text messages that piggyback onto the location alerts. These messages, which are displayed separately, reveal nothing about the app user's location but instead urge recipients to:

> Download Scout to send notifications to your loved ones when you arrive at or leave a location. http://scoutgps.com/dl

(Dkt. 1, Compl., ¶ 27.) Critically, these telemarketing text messages are sent <u>automatically by the Scout App</u>, not due to any setting or configuration by the app user. As such, Telenav's argument-in-chief—that any claim that Telenav sent the messages "*en masse*, without human intervention," must be dismissed in light of allegations supposedly "show[ing] that the notifications are individualized messages sent to specific people selected by Scout app users from their existing contacts, and sent only based on the setting selected by those users" (Def. Mot. 2-3)—falls apart. The piggybacked telemarketing text messages are <u>not</u> "individualized messages . . . sent only based on the setting selected by those users"—they are additional messages sent automatically to every text message recipient by the Scout App itself encouraging the recipients to download the app. Put simply, discovery will show that the Scout App is designed to automatically send

---

[1] The TCPA applies with equal force to the making of text message calls as it does to the making of voice calls to cellular phones. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009).

OPP. TO MOT. TO DISMISS                                                    CASE NO. 5:16-cv-04261-BLF

telemarketing messages without human intervention. Under the meaning of the term ATDS as interpreted by numerous courts and the FCC, the Scout App thus plausibly acts as an ATDS.

Telenav, Inc.'s Motion to Dismiss is further undercut by its Motion to Stay the case pending the resolution of the *ACA Appeal* pending before the D.C. Circuit. This is because the *ACA Appeal* is only relevant to these proceedings if the Scout App is considered an ATDS under the FCC's 2015 TCPA Order. Indeed, Scout makes no argument that the D.C. Circuit might overturn the 2015 TCPA Order and, in doing so, the Scout App would *then* be considered an ATDS when it currently isn't one. Just the opposite is true. Otherwise no stay would be warranted because a decision upending the FCC rules wouldn't change the fact that the Scout App was not considered an ATDS under those rules in the first place.

The Court should deny Telenav's Motion to Stay as well. No one knows when the D.C. Circuit will issue its ruling, and the decision will not be binding on this Court in any case. Also, the Court should recall that TCPA defendants routinely moved (and obtained) stays when the petitions that lead to the 2015 TCPA Order were still pending before the Commission on the premise that clarity from the FCC could prove dispositive. Apparently that was only aspirational: following the 2015 TCPA Order, which was generally friendly to consumers, the defense bar simply continued the fight through the *ACA Appeal*. There is simply nothing to suggest that if they lose again they will return to defending these matters on their merits—rather, petitions for rehearing *en banc* or a writ of certiorari are probable. Hence, any decision from the D.C. Circuit is unlikely to put an end to the ongoing challenge to the 2015 TCPA Order.

Finally, the Scout App's system experienced a glitch which caused it to continue sending messages to people even after they asked for the messages to "STOP". That plainly violates the TCPA, regardless of the D.C. Circuit's decisions. As such, no stay should apply to those claims.

In short, the Court should deny Defendants' Motions to Dismiss or to Stay the case.

## II.    BACKGROUND FACTS

A review of the allegations and facts discovered to date demonstrate that Gergetz has sufficiently plead that the Scout App functions as an ATDS.

2

**A.      Telenav's Scout App is programmed to automatically send telemarketing messages to cellphone users and failed to honor STOP requests.**

Telenav is a mobile navigation company (Compl. ¶ 9.) Telenav has created an app, called "Scout GPS," that "lets you chat, plan Meet Ups, share your ETA and get turn-by-turn GPS voice directions." (Compl. ¶ 10.) Importantly:

> [T]he Scout GPS app has the capacity to send transit time or estimated time of arrival updates via text message calls as well as their own promotional text messages to users who have not downloaded the app. Such text message calls can be sent to any cell phone number, regardless of whether the recipient is a user of the Scout GPS app.

(Compl. ¶ 11.) Telenav sends text messages using "short code" 72711. (Compl. ¶ 12.) The messages are uniform and impersonal. (*See* Compl. ¶¶ 26, 27, 29, 31-33.) Further, Telenav took no steps to acquire the oral or written prior express consent from the Plaintiff or from Class Members who received the unsolicited text messages.

Central to Telenav's Motion to Dismiss is the fact that the promotional text messages are not sent individually by the App users. Rather, the system automatically sends "promotional text messages to users who have not downloaded the app." (Compl. ¶ 11.) This system has the capacity to store, produce and dial random or sequential numbers "in an automated fashion" (Compl. ¶ 15) and "includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention)."

**B.      Plaintiff Gergetz never signed up for Scout yet he received numerous telemarketing text messages urging him to download the Scout App—his STOP requests went ignored.**

Plaintiff Gergetz is just one of thousands of people who received Scout's telemarketing text messages despite never consenting to receive them. Starting on July 6, 2016, Plaintiff received more than one dozen unsolicited text messages from 72711, Defendant Telenav's short code, on his personal cell phone. (Compl. ¶ 25.) Interspersed with the geo-location messages were commercial advertisements urging Plaintiff to download Defendant's Scout GPS app. (Compl. ¶ 27.)

1   On July 13, 2016 at 5:54pm, Gergetz replied to 72711, Defendant's short code, with an

2   opt-out request saying "STOP," requiring Defendant to cease texting him. (Compl. ¶ 28.)

3   Tellingly, and similar to how automated texting systems work in general, "Defendant's system

4   accepted the opt-out request, and it responded back with a confirmation of the opt-out also at

5   5:54pm: 'You are unsubscribed from ScoutLinkAlerts. No more messages will be sent. Help at

6   888-849-6231'." (Compl. ¶ 29.)[2] Yet notwithstanding this promise that "no more messages will

7   be sent," Telenav continued to send geolocation alerts and telemarketing text messages to

8   Gergetz throughout the end of July 2016. (Compl. ¶¶ 30-36.) Telenav sent the same (or

9   substantially the same) text message calls *en masse* to thousands of cellular telephone numbers

10   throughout the United States. (Compl. 14.)

11   **C.      The 2015 TCPA Order and the ACA Appeal**

12   The legal issues raised by Telenav's Motion concern the TCPA's definition of an

13   automatic telephone dialing system or "ATDS". Under the TCPA, "an ATDS is any equipment

14   'which has the capacity (A) to store or produce telephone numbers to be called, using a random

15   or sequential number generator; and (B) to dial such numbers.'" *Robinson v. Nationstar*

16   *Mortgage, LLC*, 2016 WL 6275192 at *2 (S.D. Ga. Oct. 25, 2016) (quoting 47 U.S.C. §

17   227(a)(1)). The FCC has repeatedly clarified that equipment that dials or sends texts to a list of

18   numbers qualifies as an ATDS, because "'the basic function of such dialing equipment' is the

19   same—'the capacity to dial numbers without human intervention.'" *Gragg v. Orange Cab Co.,*

20   *Inc.*, C-12-0576, 2013 WL 1788479, at *2 (W.D. Wash. Apr. 26, 2013) (*citing Rules and*

21   *Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed.Reg. 6041,

22   6042 (Feb. 1, 2008)).

23   TCPA defendants in general, Telenav included, prefer a strict interpretation of the

24   statutory language so that only equipment that has the present capacity to store or produce

25   telephone numbers to be called, using a random or sequential number generator, may be

---

26
27   [2] As discovery will show, the failure to honor "STOP" requests was due to a glitch in the
     system's programming that affected a discrete set of cellphone users.

28
     OPP. TO MOT. TO DISMISS                                                    CASE NO. 5:16-cv-04261-BLF

considered an ATDS. The reason behind this isn't a mystery—since the TCPA was passed in 1991 autodialing technology has advanced to the point that machines can dial thousands of numbers simultaneously without technically using a random or sequential number generator. *See In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1261 (S.D. Cal. 2012) (citing U.S.D.J. Resp. to Mot. to Dismiss, No. 11-MD-2261-JM-JMA, Dkt. 46) ("As the government argues, 'Congress anticipated that advancements in technology would allow telemarketers to employ new and more sophisticated ways of auto-dialing large lists of numbers'.")). A strict, literal reading removes most modern dialing technology from the TCPA's scope.

Yet the FCC has consistently rejected calls for such an interpretation in favor of a definition of ATDS that accounts for changes in technology. Indeed, in its Order of July 10, 2015 the FCC reiterated that the hallmark of an ATDS was not the capacity to generate or dial random numbers but rather <u>a lack of human intervention</u>:

> 17. Given the scope of the Petitioners' requests, we do not at this time address the exact contours of the "autodialer" definition or seek to determine comprehensively each type of equipment that falls within that definition that would be administrable industry-wide. Rather, we reiterate what the Commission has previously stated regarding the parameters of the definition of "autodialer." First, the Commission found in its original TCPA proceeding that the "prohibitions of [section] 227(b)(1) clearly do not apply to functions like 'speed dialing.'" Second, the Commission has also long held that the basic functions of an autodialer are to "dial numbers without human intervention" and to "dial thousands of numbers in a short period of time." How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination.
>
> 18. We do, however, acknowledge that there are outer limits to the capacity of equipment to be an autodialer. As is demonstrated by these precedents, the outer contours of the definition of "autodialer" do not extend to every piece of malleable and modifiable dialing equipment that conceivably could be considered to have some capacity, however small, to store and dial telephone numbers— otherwise, a handset with the mere addition of a speed dial button would be an autodialer.68 Further, although the Commission has found that a piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition,69 there must be more than a theoretical potential that the equipment could be modified to satisfy the "autodialer" definition. Thus, for

5

example, it might be theoretically possible to modify a rotary-dial phone to such an extreme that it would satisfy the definition of "autodialer," but such a possibility is too attenuated for us to find that a rotary-dial phone has the requisite "capacity" and therefore is an autodialer.

*See In re Rules and Regulations Implementing the TCPA of 1991,* Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780 (released July 10, 2015) (the "2015 TCPA Order").

The Ninth Circuit has generally agreed with the FCC and, even prior to the FCC's 2015 TCPA Order, endorsed the FCC's "human intervention" analysis. *See Meyer v. Portfolio Recover Associates, LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). As set forth in *Meyer*:

> The FCC further defined "automatic telephone dialing system" to include predictive dialers. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14091–93 (July 3, 2003). "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091. "As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the *capacity* to dial numbers **without human intervention**." *Id.* at 14092. PRA's predictive dialers fall squarely within the FCC's definition of "automatic telephone dialing system."

*Meyer*, 707 F.3d at 1043, *cert. denied*, 133 S. Ct. 2361 (2013). (Emphasis added.) Undeterred, however, TCPA defendants have appealed the FCC's 2015 TCPA Order and consolidated those cases before the D.C. Circuit. As this Court explained in *O'Hanlon*:

> On July 10, 2015, the FCC issued an omnibus Declaratory Ruling and Order ("FCC Omnibus Ruling") that clarified various provisions of the TCPA, including the definition of an ATDS and what constituted a "called party," as those terms pertain to the statute. *See* Request for Judicial Notice re: Motion to Stay Action filed by 24 Hour Fitness USA, Inc. ("RJN," ECF No. 43), Ex. A (July 10, 2015 FCC Declaratory Ruling and Order). The FCC Omnibus Ruling explained that the TCPA's use of the term "capacity" in the definition of an "automatic telephone dialing system," *see* 47 U.S.C. § 227(a)(1), did not exempt equipment that lacked the "present ability" to dial randomly– or sequentially-generated numbers. *Id.* ¶¶ 15, 16 ("In other words, the capacity of an autodialer is not limited to its current configuration *but also includes its potential functionalities*." (emphasis added)).
>
> ...
>
> Shortly thereafter, an appeal was filed in the D.C. Circuit challenging various aspects of the FCC Omnibus Ruling. *See* Amended Petition for Review filed by

6

ACA International ("Amended Petition"), *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. July 13, 2015), ECF No. 5. Ten additional appeals have been filed challenging the FCC's decision since that time,[1] including one originally filed in the Seventh Circuit.[2] *See* Notice Concerning Multidistrict Litigation Filed by FCC, No. 15-1211 (D.C. Cir. July 24, 2015), ECF No. 10. All have been consolidated with *ACA International*. *See* Clerk's Orders Consolidating Cases, *ACA Int'l v. FCC*, ECF Nos. 7, 12, 23, 33, 35, 37–39, 41, 93, 95. Among the issues on appeal include what constitutes an ATDS, and who can be considered "called parties," as those terms are understood in the TCPA. Amended Petition at 3–4.

*O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-CV-01821-BLF, 2016 WL 815357, at *3 (N.D. Cal. Mar. 2, 2016).; *see also Rajput v. Synchrony Bank,* No. 3:15-CV-1595, 2016 WL 6433150, at *7 (M.D. Pa. Oct. 31, 2016) ("In ACA International, the D.C. Circuit is reviewing consolidated challenges to the [Federal Communications Commission's ("FCC")] Order under the Hobbs Act, 28 U.S.C. § 2342.... [including] whether dialing equipment is an autodialer under the TCPA when it does not have the 'current capacity' or 'present ability' to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made.").

Seeking a stay, Telenav argues that we are closer to getting a ruling from the D.C. Circuit that may overturn the FCC's 2015 TCPA Order such that the Scout App wouldn't be considered an ATDS. As explained below, such arguments fail to warrant either a dismissal or a stay.

## III.   ARGUMENT

The Court should deny Telenav's Motion to Dismiss or to Stay. First, Gergetz pleads that Telenav used an ATDS because the telemarketing messages were sent without human intervention. Second, there is no telling when the D.C. Circuit might issue a ruling in the *ACA Appeal*, and ultimately such a decision is unlikely to have the final say in either the ongoing saga over the TCPA's definition of ATDS generally or over the facts and legal principles at issue in this litigation more specifically. Indeed, regardless of whatever the D.C. Circuit may decide, the Scout App failed to honor "STOP" requests, thus subjecting Telenav to liability under the TCPA in any case.

### A.   Telenav's Motion to Dismiss Falls Apart—Gergetz Plainly Details How the Scout App Sends Automated Telemarketing Messages to Unsuspecting Cellphone Users.

7

To state a claim, TCPA plaintiffs must allege that the defendant: (1) made text message calls; (2) using an ATDS; (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Telenav's Motion to Dismiss attacks the second element—the use of an ATDS. (Def. Mot. 9-12.) According to Telenav, the Complaint only contains a bare recital of the elements for an ATDS and, worse, that the allegations show the messages he received were part of "direct targeting" "triggered by user conduct," (Def. Mot. 12) not as the result of an automated system.

Telenav's Motion to Dismiss fails for at least two reasons. First, Gergetz pleads facts to show that the Scout App, at least when it sends its piggybacked telemarketing messages, plausibly functions as an ATDS. Second, the Motion to Dismiss is undercut by Telenav's own Motion to Stay. As such, the Court can deny the Motion to Dismiss.

### 1. Gergetz's Complaint contains sufficient facts that, if proven true, would show that Telenav's system is an ATDS under the TCPA.

First, and contrary to Telenav's assertions, the Complaint sufficiently alleges facts that, when viewed in a light most favorable to Gergetz, show that Telenav sent the text messages using an ATDS. As set forth above in Section II.C. *supra*, both the Ninth Circuit and the FCC have interpreted ATDS to include technology that has the capacity to dial numerous calls simultaneously, *en masse*, without human intervention. Gergetz alleges that the Scout App does just that by sending promotion telemarketing messages that encourage recipients to download the app. (Compl. ¶ 25.) Discovery will show that the App User has no control over when these promotion text messages are sent. That is because these messages are allegedly sent automatically by the system, not by the app user, and thus are not part of any "direct targeting" that is "triggered by user conduct." (Def. Mot. 12). Indeed, the system itself notified Gergetz, following his STOP request of July 13, 2016, that he would not receive any additional text messages—yet due to a glitch the app continued to send him both geo-location and promotional text messages.

OPP. TO MOT. TO DISMISS

CASE NO. 5:16-cv-04261-BLF

Put simply, Gergetz includes sufficient details to show that the Scout App had the capacity to send text messages *en masse* without human intervention, thus plausibly placing the app within the TCPA's definition of an ATDS.

To be sure, none of cases Scout cites (Def. Mot. 12) are on point. In *Duguid v. Facebook, Inc.*, Judge Tigar faced allegations that Facebook's "login alerts" violated the TCPA. In finding that the complaint failed to allege that Facebook used an ATDS the court explained that, "The[] allegations suggest that Facebook's login notification text messages are targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers." No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016). The court distinguished such facts from cases where an ATDS had been alleged, explaining that:

> For example, in *Kramer v. Autobytel*, the court found that the complaint, read as a whole, contained "sufficient facts to show that it is plausible" that the defendants used an ATDS where the plaintiff alleged that he received messages from a short code registered to one of the defendants, the messages were advertisements written in an impersonal manner, and the plaintiff had no other reason to be in contact with the defendants. 759 F. Supp. 2d at 1171. Similarly, in *Kazemi v. Payless Shoesource, Inc.*, the court concluded that "plaintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS...."

*Duguid*, 2016 WL 1169365, at *4. The instant facts mirror *Kramer* and *Kazemi* as *Duguid* describes them. Gergetz and the class members received text messages from the Scout App's short code, the messages are advertisements, and Gergetz had no other reason to be in contact with Telenav. Likewise, the telemarketing messages are impersonal and are allegedly sent en masse. As such, *Duguid* offers Telenav little help.

*Weisberg v. Stripe, Inc.*, which was also decided by Judge Tigar (and relies heavily upon Judge Tigar's own prior decision in *Duguid*) is also inapposite. In *Weisberg* "the allegations suggest that Stripe's text messages were sent to an individual user of its checkout service and in response to a direct communication from Plaintiff." No. 16-CV-00584-JST, 2016 WL 3971296, at *4 (N.D. Cal. July 25, 2016). That is not the case here. Gergetz alleges that Telenav's

9

1    promotional text messages are sent to all cellphone users who receive geo-location alerts who

2    haven't downloaded the Scout App. (Compl. ¶ 11.) Again, such impersonal marketing messages

3    sent via short code are sufficient for pleading the use of an ATDS.

4            Finally, neither *Daniels v. ComUnity Lending, Inc.*, No. 13CV488-WQH-JMA, 2014 WL

5    51275, at *5 (S.D. Cal. Jan. 6, 2014) nor *Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX,

6    2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015) saves Telenav from the TCPA. First, in

7    setting out the inquiry regarding "targeting" or "directness," those cases focus (too intently) on

8    whether the calls were "random". But calls under the TCPA need not be made at random—

9    randomness refers to the potential capacity of the technology used to make the calls, not whether

10   the dialing of the calls themselves was accomplished in a indiscriminate manner. *Satterfield v.*

11   *Simon & Schuster, Inc.,* 569 F.3d at 951 ("a system need not actually store, produce, or call

12   randomly or sequentially generated telephone numbers, it need only have the capacity to do it.")

13   Second, in *Flores* the messages were not impersonal—each message contained a specific

14   reference number unique to the plaintiff. *Flores,* 2015 WL 4340020, at *3.

15           Put simply, the allegations here, if taken true and in a light most favorable to Gergetz,

16   sufficiently demonstrate that the Scout App qualifies as an ATDS under the statute. As such,

17   Telenav's Motion to Dismiss should be denied.

18                    **2.        The Motion to Dismiss is further undermined by the Motion to Stay.**

19           As a final point here, it is worth pointing out that Telenav's Motion to Stay undercuts its

20   Motion to Dismiss. This is because in order to make the case that a decision by the D.C. Circuit

21   in the *ACA Appeal* will impact this proceeding, Telenav must concede that the FCC regulations

22   at issue in the *ACA Appeal* are currently unfavorable to its position. After all, if the Scout App is

23   not considered an ATDS under the present interpretation of the 2015 TCPA Order, then it makes

24   no difference to Telenav, Gergetz, or anyone else involved in this proceeding whether those FCC

25   rules are overturned. Again, Telenav does not argue that a decision overturning the 2015 TCPA

26   Order would result in its equipment being considered an ATDS—its basis for the stay is just the

27   opposite: supposedly, overturning the 2015 TCPA Order will show that its equipment is *not* an

28

OPP. TO MOT. TO DISMISS                                              CASE NO. 5:16-cv-04261-BLF

ATDS. Rather, by seeking a stay based on the *ACA Appeal*, Telenav must tacitly concede that the Scout App may plausibly be considered an ATDS under the 2015 TCPA Order.

**B.    The Court Should Also Deny Telenav's Bid to Stay the Case: the *ACA Appeal* May Take Several Months Before Any Decision is Issued and it Still Would Not Resolve the Entire Case Given the Scout App's Failure to Process "STOP" Requests.**

The Court should further deny Telenav's alternative Motion to Stay based on the D.C. Circuit's consideration of the *ACA Appeal*. This Court is no stranger to such motions. As this Court has previously explained:

> [G]rant[ing] a motion to stay requires the district court to weigh the competing interests affected by either granting or denying the motion. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). The court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Levya v. Certified Grocers of California, Ltd.,* 593 F.2d 863–64 (9th Cir. 1979)). "Among these competing interests are (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268.

*O'Hanlon*, 2016 WL 815357, at \*3. To hear Telenav tell it, however, if the defendants prevail before the D.C. Circuit then the FCC's definition of an ATDS (as technology that dials calls without human intervention) is likely to be curtailed or rolled back such that Telenav might be able to argue in this case that its Scout App no longer qualifies as an ATDS. Telenav also claims that Plaintiff will suffer no hardship from any stay. (Def. Mot. 15.)

The Court should reject such assertions. First, no one can predict when a decision from the D.C. Circuit might be issued, and any further delays will cause harm to Plaintiff and the alleged class. Second, even if a decision was forthcoming in the near future, it is unlikely to put an end to the debate: whichever side loses is likely to pursue additional appeals, including seeking a rehearing *en banc* or filing writ of certiorari to the United States Supreme Court. And finally, the *ACA Appeal* is unlikely to have much if any impact on the STOP texting claims, as it

is fairly plain that Telenav failed to honor STOP requests for a period of time and is liable to such consumers. In short, and as explained below, no stay should be issued.

> **1.    No one actually knows when a decision on the *ACA Appeal* may be issued, and any delay simply harms Plaintiff.**

This Court previously rejected a motion to stay based on the *ACA Appeal* in *O'Hanlon*. In doing so, this Court explained that: "A stay pending that litigation would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court." *O'Hanlon*, 2016 WL 815357, at *5. Given that several months have passed since *O'Hanlon*, Telenav asserts that Plaintiff will not suffer any harm due to "the likely timeline for a ruling from the D.C. Circuit," which it implies will be relatively short, going so far as to assert that the median time for a D.C. Circuit decision is three and a half months. (Def. Mot. 14.)

This timeline is unlikely to apply here. No one can actually predict when the D.C. Circuit may issue its decision. This is a complex matter that has been pending for almost a year. The oral argument itself lasted nearly three hours (it had been scheduled for 40 minutes).[3] And as explained in the next section, the decision may be appealed to either the full D.C. Circuit and/or to the United States Supreme Court. Hence, try as it may to show that with the passage of time a decision on the *ACA appeal* is forthcoming, the reality is that any stay here would be in place for an "indefinite period of time" and would hinder "Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court."

Telenav string cites to other courts that have granted stays pending the *ACA Appeal*. (Def. Mot. 14.) Of course, many courts have denied similar motions. *Caudill v. Wells Fargo Home*

---

[3] *See* Drinker, Biddle, & Reath TCPA Blog, *available at* http://tcpablog.com/category/consolidated-appeal/ ("The U.S. Court of Appeals for the D.C. Circuit heard oral argument in the consolidated appeal of the FCC's July 10, 2015 TCPA Declaratory Ruling and Order on Wednesday, October 19th. The panel was composed of Judges Sri Srinivasan, Cornelia T.L. Pillard and Harry T. Edwards. ***The argument was well attended and lasted nearly three hours – much longer than the forty minutes for which it had been scheduled***.") (last visited January 13, 2017).

12

*Mortg., Inc.*, 2016 U.S. Dist. LEXIS 89136, *9 (E.D. Ky. July 11, 2016) (holding "[i]n the absence of a clear benefit of awaiting a decision in ACA International, the defendant's desire for a stay is outweighed by Caudill's interest in resolving this case, as well as the public's interest in efficient judicial proceedings."); *Coniglio v. Iqual Corp.*, 2015 U.S. Dist. LEXIS 162334 (M.D. Fla. Dec. 3, 2015); *Jones v. Ad Astra Recovery Servs.*, 2016 U.S. Dist. LEXIS 73561, *15 (D. Kan. June 6, 2016) ("...solely defending a suit, without setting forth additional prejudice, does not constitute a 'clear case of hardship or inequity' ..."); *Kafatos v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2526 (N.D. Cal. Jan. 8, 2016); *Konopca v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 55274 (D.N.J. Apr. 26, 2016); *Lathrop v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2490 (N.D. Cal. Jan. 8, 2016); *Nussbaum v. Diversified Consultants, Inc.*, 2015 U.S. Dist. LEXIS 129750, *5 (D.N.J. Sept. 28, 2015) (determining that "unnecessary discovery and motion practice" did not set forth a clear case for hardship); *Pritchard v. Comenity Bank*, 2016 U.S. Dist. LEXIS 89123, *2 (D.N.J. July 5, 2016) (finding that "a stay on the basis of ACA International is not appropriate because the length of the stay is indeterminate"); *Schwyhart v. Amsher Collection Servs.*, 2016 U.S. Dist. LEXIS 56065, *8 (N.D. Ala. Apr. 22, 2016) (denying motion to stay due to indefinite nature of ACA proceedings, noting "there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite-and perhaps lengthy-delay were a stay to be granted here."). As such, authorities are split with respect to whether stays should be granted.[4]

Furthermore, even assuming *arguendo* that waiting for a ruling only delayed the case by several months—that would penalize Plaintiff and the other class members by denying them (or seriously delaying) their day in Court, especially Class Member's (like those who replied STOP

---

[4] Any argument from Telenav that a stay is warranted due to "the early posture" of this case should also be rejected. (Def. Mot. 14.) Plaintiff granted the request of Telenav's prior counsel for additional time to answer or otherwise plead on the condition that such additional time would not be used against Plaintiff. Ignoring that condition (perhaps Telenav's prior lawyer did not communicate it to Telenav's present counsel) Telenav cites the fact that it "is just filing its responsive pleading, and discovery has not yet commenced," (Def. Mot. 14) as grounds for justifying the stay.

OPP. TO MOT. TO DISMISS                                                      CASE NO. 5:16-cv-04261-BLF

but kept getting texts), with claims that are unlikely to be impacted by any D.C. Circuit decision. Added to this is the fact that witness memories fade over time and that data—particularly the type of electronic information at issue in this case regarding the number of text messages transmitted to specific cellphone numbers during defined periods of time—becomes more difficult to adequately preserve, produce, or replicate in full. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.") (citing *Sibron v. New York,* 392 U.S. 40 (1968)).[5] The potential harm to Plaintiff simply outweighs any risk to Telenav with having to go forward regarding discovery, particularly where *some* amount of discovery will likely be needed regardless of the D.C. Circuit's eventual decision.

In short, any assertion that a decision from the D.C. Circuit is imminent or likely to be issued over the next several months amounts to little more than speculation. A stay would necessarily put this case on hold indefinitely to Plaintiff and the Class's disadvantage.

### 2. The D.C. Circuit decision—which is not binding on this Court—is unlikely to spell the end of this issue in any case.

It should also be recalled that the D.C. Circuit decision is, "of course, not binding on this Court." *O'Hanlon*, 2016 WL 815357, at *5. This alone is reason enough to deny the requested stay. Numerous appellate courts have considered similar issues in the past, and this Court wouldn't be able to function effectively if it stayed cases whenever a sister circuit had occasion to review the meaning of ATDS. *See id.* ("In addition, this is not the first instance in which a federal appellate court occasioned to interpret the terms, "called party" and "ATDS," as understood in the TCPA.")

---

[5] It should be noted that the case has already been delayed. The case was filed at the end of July 2016. Telenav's first lawyer contacted Plaintiff's counsel in mid-August 2016 and asked for an extension of time to answer or otherwise plead to November 7, 2016. After another extension Telenav finally filed its Motion to Dismiss and to Stay on November 21, 2016 and set it for hearing March 2, 2017--217 days from the date the case was first filed. Upon the denial of Defendant's Motions Plaintiff respectfully requests a schedule that gets this case moving.

And even if the D.C. Circuit's anticipated decision were treated on par with Ninth Circuit precedent, any such decision is unlikely to put the controversy to rest—the TCPA bar went through eerily similar motions to stay back when the FCC was considering these same issues, yet the 2015 TCPA Order failed to put an end of this ongoing debate. Indeed, in innumerable TCPA cases filed prior to the 2015 TCPA Order, numerous courts granted motions to stay on the premise that the FCC was set to rule on several critical matters, including the definition of an ATDS and the meaning of "capacity," and that such rulings would be dispositive of the issues presented in those lawsuits.[6] But that didn't happen. Rather, following the 2015 TCPA Order, instead of accepting the FCC's decisions TCPA defendants pursued the *ACA Appeal* before the D.C. Circuit, extending the period of time for when these issues are left open to question and debate.

History will likely repeat itself. That is, whichever side loses in the D.C. Circuit will almost certainly file a petition for rehearing *en banc* and/or a writ of certiorari (and motions to stay will likely be filed during the time such petitions and writs are being considered as well as during any period when the full D.C. Circuit or Supreme Court, assuming either accepts any such rehearing or appeal, is considering the underlying issues).

In short, Telenav's assertion that, "[h]ere there is no...potential for substantial delay that could harm Plaintiff," (Def. Mot. 15) is simply unsupported. It is far more likely that the battle continues long after the D.C. Circuit issues any opinion.

> **3.** **This case should not be delayed for months, particularly where Telenav's system failed to honor "STOP" requests—a plain violation of the TCPA regardless of any issue raised in the *ACA Appeal*.**

---

[6] *See, e.g., Mendoza v. UnitedHealth Grp. Inc.*, 13-1553 PJH, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014) (Hon. Phyllis J. Hamilton); *Hurrle v. Real Time Resolutions, Inc.*, Case No. C13-5765, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014); *Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 WL 1930885 (D. Kan. May 14, 2014); *Passero v. Diversified Consultants, Inc.*, 2014 WL 2257185, at *3 (W.D.N.Y. May 28, 2014).

Finally, the Court should refuse to stay this case because no matter what the D.C. Circuit decides, the fact remains that Telenav's Scout App failed to honor STOP requests. The FCC has made clear that companies must provide a cost-free opt-out mechanism in their text messages and that—at most—a single text may be sent after the consumer exercises his/her right to opt out confirming the opt out.[7] *See In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014) (called parties may revoke their consent orally."); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones...."); *Legg v. Voice Media Grp., Inc.,* 13–62044–CIV, 2014 WL 29594, *3 (S.D. Fla. Jan. 3, 2014) (denying motion to dismiss because Plaintiff sufficiently pled that he revoked his consent to receive text messages from Defendant); *Beal v. Wyndham Vacation Resorts, Inc.,* 956 F.Supp.2d 962, 977 (W.D.Wis. 2013) ("consumers can revoke their consent to receive autodialer calls under the Telephone Consumer Protection Act and may do so orally"); *Adamcik v. Credit Control Servs., Inc.,* 832 F.Su pp.2d 744, 749 (W.D. Tex. 2011) (consumers may revoke consent to receive calls under the TCPA and that they may do so orally or in writing).  Here, Gergetz replied, "STOP", and even received a text message from the Scout App confirming his request. Yet despite this Gergetz continued to receive additional text messages from the Scout App as if he had never opted out. Telenav fails to show that the *ACA Appeal* will impact such claims. This is probably because regardless of any issues under consideration by the D.C. Circuit the Scout App should have recognized and honored each STOP request. The fact that it failed to do violated the TCPA.

## IV.   CONCLUSION

---

[7] Indeed, it appears that Telenav's system sent such a confirmatory text to Plaintiff's cellphone following one of his STOP requests as allowed by the statute. The problem for Telenav is that this confirmation was dishonored by its own repeated sending of subsequent text messages.

1    The Court should refuse to dismiss or stay this case. Gergetz has pleaded sufficient facts

2    to show that Telenav's Scout App can plausibly be considered an ATDS under the TCPA.

3    Further, any stay would be for an indefinite period of time since there is no telling when the D.C.

4    Circuit—the decisions of which are non-binding on this Court—may issue its ruling nor any

5    guarantee that its decision will fully and finally resolve the debate as to what constitutes an

6    ATDS. Further, a stay would put Gergetz at a disadvantage, especially his claims that he

7    continued to receive messages after Telenav's system confirmed his STOP request, by delaying

8    his ability to gather evidence and testimony.

9         WHEREFORE the Plaintiff, Nathan Gergetz, respectfully requests that the Court deny

10   Telenav's Motion to Dismiss and Motion to Stay and award such additional relief as the Court

11   deems necessary and just.

12   Dated: January 13, 2017                 **NATHAN GERGETZ**, individually, and on behalf
                                             of all others similarly situated,
13

14                                           By:    /s/  Steven L. Woodrow
                                             One of Plaintiff's Attorneys
15

16                                           Richard T. Drury (SBN 163559)
                                             richard@lozeaudrury.com
17                                           Rebecca Davis (SBN 271662)
                                             rebecca@lozeaudrury.com
18                                           **LOZEAU DRURY LLP**
                                             410 12th Street, Suite 250
19                                           Oakland, CA 94607
                                             Telephone: (510) 836-4200
20                                           Facsimile: (510) 836-4205

21
                                             Steven L. Woodrow
22                                           (swoodrow@woodrowpeluso.com)*
                                             Patrick H. Peluso
23                                           (ppeluso@woodrowpeluso.com)*
                                             Woodrow & Peluso, LLC
24                                           3900 East Mexico Ave., Suite 300
                                             Denver, Colorado 80210
25                                           Telephone: (720) 213-0675
                                             Facsimile: (303) 927-0809
26

27
                                         17
28

Stefan Coleman (Law@stefancoleman.com)*
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Tel: (877) 333-9427
Fax: (888) 498-8946

*Counsel for Plaintiff and the Putative Class*
*pro hac vice*

OPP. TO MOT. TO DISMISS                                                      CASE NO. 5:16-cv-04261-BLF

1

2

3

4

**CERTIFICATE OF SERVICE**

5

     I, Steven L. Woodrow, an attorney, hereby certify that I served the foregoing papers by

6 causing true and accurate copies of such papers to be transmitted to all counsel of record through

7 the Court's electronic filing system on January 13, 2017.

8

9                           /s/ Steven L. Woodrow

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP. TO MOT. TO DISMISS                                    CASE NO. 5:16-cv-04261-BLF