RICHARD T. DRURY (SBN 163559)
richard@lozeaudrury.com
REBECCA DAVIS (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Attorneys for Plaintiff
[Additional attorneys listed on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>    v.<br><br>TELENAV, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO.:  5:16-cv-4261-BLF<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |

i

1

2                          **TABLE OF CONTENTS**

3   **TABLE OF AUTHORITIES**...................................................................................iii

4   **I.**      **Introduction** ..............................................................................................1

5   **II.**     **The TCPA** ..................................................................................................2

6   **III.**    **Summary of the Plaintiff's Claim, Litigation, and Settlement Process**........3

7            **A.**   **The Plaintiff's Claims and Litigation History** .................................4

8            **B.**   **The Mediation and Settlement History** ..........................................5

9   **IV.**    **Key Terms of the Settlement** .....................................................................6

10           **A.**   **Class Definition** ..............................................................................6

11           **B.**   **Monetary Relief** .............................................................................7

12           **C.**   **Release of Liability** .........................................................................7

13  **V.**     **The Proposed Settlement Class Should Be Certified** ..................................8

14           **A.**   **The Requirement of Numerosity is Satisfied** ..................................8

15           **B.**   **The Requirement of Commonality is Met as Well** ...........................9

16           **C.**   **The Requirement of Typicality is Also Satisfied** ...........................10

17           **D.**   **The Requirement of Adequate Representation is Satisfied**............11

18           **E.**   **The Proposed Settlement Meets the Requirements of Rule 23(b)(3)**..............12

19                  **1.**   **Common Questions of Law and Fact Predominate** ...........................13

20                  **2.**   **This Class Action is the Superior Method of Adjudication**.................13

21  **VI.**    **The Court Should Appoint Plaintiff's Counsel as Class Counsel** ...............14

22  **VII.**   **The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and**

23           **Thus Warrants Preliminary Approval**........................................................15

24  **VIII.**  **The Proposed Plan of Class Notice is the Best Practicable**
             **Under the Circumstances** .........................................................................18

25  **IX.**    **Conclusion**...............................................................................................20

26

27

28

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL             CASE NO. 5:16-cv-4261-BLF
OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................. *passim*

*Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC,
    2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ..................................................................... 18

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D. Cal. 2012)....................................................9

*Bee, Denning, Inc. v. Capital Alliance Group*, Case No. 13-cv-2654-BAS-WVG,
    2015 WL 5675798 (S.D. Cal. Sept. 24, 2015) ................................................................. 11

*Bellows v. NCO Financial Systems, Inc.*, No. 3:07-cv-01413-W-AJB,
    2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) ............................................................ 13, 18

*Burris v. Sherwin-Williams, Co.*, No. 4:15-cv-00343-DW
    (W.D. Mo. order filed Nov. 17, 2015) ............................................................................. 18

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010) ......................................................9

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016)................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................... *passim*

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................................... 11

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011)................................................................8

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988) ...............................................9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................ 16

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................... 16

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008)....................................................... 15, 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................... 15

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ............................................. 11

*Lane v. Facebook, Inc.*, No. 10-16380, 2012 WL 4125857 (9th Cir. Sept. 20, 2012)................ 16

*Mims v. Arrow Financial Svcs's, LLC*, 132 S. Ct. 740 (2012) .......................................................2

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ....................................................................9

*Pierce v. Cnty. of Orange*, 526 F.3d 1190 (9th Cir. 2008)........................................................... 12

*Rannis v. Recchia*, 380 Fed. Appx. 646 (9th Cir. 2010) ................................................................8

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ...........................................2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)....................................................... *passim*

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................ 11, 13

-iii-

1

2    **STATUTES, RULES, SECONDARY SOURCES**

3    Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* .............................................*passim*

4    Fed. R. Civ. P. 23 ...............................................................................................................*passim*

5    Manual for Complex Litigation §21.632 (4th ed. 2004) .......................................................... 8, 15

6    Conte & Newberg, 4 Newberg on Class Actions, §11.25, 3839 (4th ed. 2002) .............. 15, 16, 19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      Introduction

Plaintiff  Nathan Gergetz ("Plaintiff" or "Gergetz") seeks preliminary approval of a class action settlement that, if approved, will resolve claims alleging that Defendant Telenav, Inc. ("Telenav") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), by sending text messages to consumers' cellular telephones without prior express consent, and continuing to send text messages to consumer who attempted to opt out. The proposed settlement agreement (the "Settlement Agreement") offers Settlement Class Members a recovery that exceeds the recoveries available from settlements in cases alleging similar claims.

After motion practice and informal discovery, the Parties participated in a full-day mediation session overseen by John Bates of JAMS, San Francisco. While the mediation was successful in bringing the Parties together for a frank and open discussion regarding the respective claims and defenses in the case, the Parties did not settle that day. Rather, they proceeded to a hearing on Defendant's Motion to Dismiss and Motion to Stay. On the evening before the court hearing, and with continued help from Mr. Bates, the Parties were able to reach an agreement ("Settlement Agreement" or "Settlement," attached hereto as Exhibit A).

Pursuant to the Agreement, Telenav has agreed to create a three million five-hundred thousand dollars ($3,500,000 USD) non-reversionary Settlement Fund from which all valid claims will be paid, after payment of costs of notice and administration, a reasonable incentive award to Plaintiff, and any attorneys' fees and costs approved by the Court. Settlement Class Members who received stand-alone text messages encouraging them to download Telenav's "Scout" mobile application are eligible to receive one (1) Award Unit from the Settlement. Settlement Class members who replied STOP, QUIT, END, CANCEL, or UNSUBSCRIBE to any text message from a number used by Telenav for text messaging and yet continued to receive messages are eligible to receive five (5) Award Units. Members of both groups may receive six (6) Award Units. The value of the Award Units will be calculated by subtracting from the Settlement Fund all amounts for notice and administration, any incentive award to the Class Representative, and an award of reasonable attorneys' fees and costs, and then dividing by the total number of units. Award Units will all be of equal value and are capped at $1,500.

-1-

1  Finally, the Agreement provides Class Members with Notice of their rights to be excluded from,

2  comment upon, and object to the Settlement Agreement and procedures for redeeming their

3  award through the use of a Claim Form (attached to the Settlement Agreement as Exhibit 1),

4  which can be mailed to the Settlement Administrator or submitted electronically via the

5  Settlement Website. (*See* Settlement Agrmt. at 5.)

6          Given the facts of the case, including Telenav's position that it was not the sender of the

7  text messages, the results achieved by the Settlement—which exceed, on a per-claim basis,

8  settlements that have received final approval by courts in this and other districts—are well

9  beyond those required for preliminary approval. Plaintiff thus moves the Court to preliminarily

10  approve the instant Settlement Agreement, certify the proposed Settlement Class, appoint

11  Plaintiff Nathan Gergetz as Class Representative ("Class Representative"), and appoint Steven

12  Woodrow, Patrick Peluso, and Stefan Coleman as Class Counsel ("Class Counsel").

13          Accordingly, Plaintiff respectfully requests that the Court enter an Order (i) certifying the

14  proposed Settlement Class for settlement purposes; (ii) appointing Plaintiff Nathan Gergetz as

15  Class Representative; (iii) appointing Steven Woodrow, Patrick Peluso, and Stefan Coleman as

16  Class Counsel; (iv) granting preliminary approval to the Settlement; (v) approving the proposed

17  notice plan; and (vi) scheduling a final fairness hearing.

18  **II.     The TCPA**

19          A brief summary of the law that forms the basis of Plaintiff's claims helps put the

20  Settlement Agreement in context. Congress enacted the TCPA in 1991 as a response to

21  "[v]oluminous consumer complaints about abuses of telephone technology…." *Mims v. Arrow*

22  *Financial Svcs's, LLC*, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to

23  "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569

24  F.3d 946, 954 (9th Cir. 2009); *see also Mims*, 132 S. Ct. at 745. The TCPA applies with equal

25  force to the making of text message calls as it does to the making of voice calls to cellular phones.

26  *Satterfield,* 569 F.3d at 954.

27          The TCPA prohibits certain calls to wireless numbers made with equipment termed an

28  "automatic telephone dialing system" ("ATDS"), which Congress defines as "equipment which

-2-

1  has the capacity (A) to store or produce telephone numbers to be called, using a random or

2  sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). This definition

3  was interpreted by the FCC in a 2015 Order, which is the subject of a pending appeal before the

4  D.C. Circuit.  *ACA Int'l v. FCC,* No. 15-1211 (D.C. Cir.).

5        Plaintiff sued Telenav under the provision of the TCPA that makes it unlawful to call a

6  wireless number using an "automatic telephone dialing system" without the prior express consent

7  of the called party. 47 U.S.C. § 227(b)(1)(A) (iii).

8        The TCPA includes a private right of action and statutory damages in the amount of $500

9  per violation. *See* 47 U.S.C. § 227(b)(3). Having put Plaintiff's claims in legal perspective, a

10  review of the process leading up to the Settlement Agreement is demonstrative of the procedural

11  and substantive fairness of the agreement.

12  **III.    Summary of the Plaintiff's Claim, Litigation, and Settlement Process.**

13        This case involves two types of TCPA claims. First, Plaintiff Gergetz alleges that he

14  received text messages from a Telenav phone number (a short code or long code that Telenav

15  used in connection with text messaging functionality of various mobile software applications)

16  urging him to download Telenav's "Scout" mobile application onto his cellphone. These

17  messages are referred to in the Settlement Agreement as the "Download the Scout App Text

18  Messages." Gergetz alleges that these calls violated the TCPA because they were made without

19  first obtaining prior express consent from Gergetz to make the calls. Telenav denies that its

20  system is an ATDS and contends that users of the Scoutt App initiated the Download the Scout

21  App Text Messages. Approximately 200,000 Settlement Class Members received Download the

22  Scout App Text Messages.

23        The second type of claim involves Gergetz's allegation that he requested that the text

24  messages from Telenav numbers stop. That is, Gergetz alleges that he responded to the messages

25  he received from the Telenav phone numbers with "STOP" but that he continued to receive text

26  messages from Telenav numbers. Telenav's records reflect that there are approximately 1,800

27  Settlement Class Members who received at least one additional message other than a message

28

1   confirming an opt out request, after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE

2   to a text message received from a Telenav number.

3        Following initial discussions of counsel and an exchange of necessary information

4   regarding the nature of Telenav's messages and Telenav's system for processing opt out

5   requests, the Parties engaged in a mediation process with a respected third-party neutral, Mr.

6   John Bates of JAMS in San Francisco. The Parties did not reach an agreement at the mediation,

7   but with the help of the mediator continued negotiations for several months and ultimately

8   agreed upon the terms of the Settlement Agreement. The result of these efforts by Plaintiff's

9   counsel, Defendant's counsel, and the mediator is an undeniably favorable deal that reflects

10  meaningful relief for the Settlement Class.

11       **A.      The Plaintiff's Claims and The Litigation History**

12       Plaintiff contacted his counsel to inquire about his legal rights when he was unsuccessful

13  at getting the text messages to stop. (*See* Declaration of Steven L. Woodrow ("Woodrow Decl."),

14  attached hereto as Exhibit B, at ¶¶ 3-5.) Prior to the initiation of the Action, proposed Class

15  Counsel undertook an extensive investigation into Telenav and its text messaging platform to

16  determine the scope of any potential TCPA claims. (*Id.*) First, Class Counsel worked closely

17  with Plaintiff Gergetz to determine the extent of the text messages he received from Telenav

18  numbers. Class Counsel thereafter reviewed and analyzed sources of public information,

19  including internet message boards and other sources, to assess whether other consumers had

20  received similar text messages. (*Id.*) Following a thorough investigation, Class Counsel

21  determined that a good faith basis existed to pursue the case as an alleged class action on behalf

22  of Plaintiff Gergetz and all other cellphone users who received Download the Scout App Text

23  Messages from Telenav as well as on behalf of persons who continued receiving text messages

24  from Telenav numbers following their submission of a STOP or similar reply message. (*Id.*)

25       On July 28, 2016, Plaintiff Gergetz filed a class action complaint in the United States

26  District Court of the Northern District of California against Telenav alleging that Defendant

27  violated the Telephone Consumer Protection Act, 47 U.S.C. § 227. (*See* Dkt. 1.) Specifically, the

28  Complaint alleged that Telenav violated the TCPA by sending text messages using an automatic

-4-

1  telephone dialing system without Plaintiff's prior express written consent and after Plaintiff and

2  others had submitted at least one STOP request, and sought statutory damages on behalf of a

3  nationwide class. (*Id.*)

4       Following the filing of the initial Complaint the counsel for the parties engaged in

5  discussions regarding their respective views of the case. When the case was first filed, Telenav

6  retained attorney Joshua Masur of Turner Boyd LLP. Counsel for Plaintiff and Mr. Masur

7  engaged in meaningful discussions regarding the details of the case and the potential for an early

8  resolution. (Woodrow Decl. ¶ 7.) In or around October 2016, Mr. Masur withdrew as Telenav's

9  counsel and was replaced with Tonia Klausner and Peter Holm of Wilson Sonsini Goodrich PC,

10  experienced TCPA class action defense counsel. (*Id.* ¶ 8.) On November 21, 2016, Telenav filed

11  a motion to dismiss the Complaint, or in the alternative stay the action pending resolution of the

12  D.C. Circuit appeal from the FCC's 2015 Order. (Dkt. 24.) Telenav argued that the Complaint

13  should be dismissed for failure to plausibly allege use of an "automatic telephone dialing

14  system." In the alternative Telenav asked the Court to stay the action pending the D.C. Circuit's

15  decision in the appeal from the FCC's 2015 Order interpreting the statutory definition of

16  "automatic telephone dialing system." (*Id.*)

17       Counsel for the Parties thereafter agreed to exchange informal information regarding the

18  potential scope of the litigation—including key information regarding the size of the alleged

19  classes and the technological issues that may have prevented certain STOP requests from being

20  honored—from which Plaintiff could appropriately evaluate the likelihood of success and value

21  of the claims. (Woodrow Decl. ¶ 8.) This included a frank dialogue regarding Telenav's

22  defenses, including, inter alia, arguments that Telenav did not send the text messages, that its

23  system is not an ATDS, and that the D.C. Circuit was likely to adopt a definition of ATDS that

24  excludes Telenav's system. (*Id.*)

25      **B.**    **The Mediation and Settlement History**

26       Following the exchange of initial informal discovery related to the scope of the class,

27  counsel for the Parties agreed that the case should go to mediation and worked to schedule a

28  mediation. (*See* Woodrow Decl. ¶ 9.) On July 7, 2017, counsel for the Parties engaged in a full-

1  day mediation session in San Francisco, California conducted by John Bates of JAMS—a well

2  respected mediator with substantial class action and TCPA experience. Through the mediation

3  process, the Parties exchanged additional, updated information regarding the size and scope of

4  the proposed subclasses and Telenav's planned defenses. (*Id.* ¶¶ 9-10.)

5        Despite extensive discussions facilitated by Mr. Bates, counsel for the Parties were

6  unable to reach an agreement prior to the close of the mediation. (*Id.* ¶ 11.) Instead, the Parties

7  agreed to continue their settlement discussions with the help of the mediator. (*Id.* ¶¶ 12-13.)

8  They spent the next several months in telephone negotiations facilitated by the mediator. (*Id.* ¶

9  13.) When they still had not reached agreement in late fall, the Parties decided to proceed with a

10  hearing on Telenav's Motion to Dismiss or Stay. (*Id.*)

11        Notwithstanding their continued preparations for the hearing, Mr. Bates worked on a

12  parallel settlement track to continue the effort to achieve a settlement. (*Id.*) The result of this

13  back-and-forth effort was that the Parties reached a settlement in principal on the eve of the

14  hearing. (*Id.* ¶ 14.) Only after an agreement in principal was reached with respect to the

15  Settlement Class did the Parties discuss an amount for reasonable attorneys' fees for proposed

16  Class Counsel or an incentive award for Named Plaintiff Gergetz. (*Id.*)

17        The outcome of all of this work and effort is a particularly strong settlement that Plaintiff

18  Gergetz and proposed Class Counsel are proud to bring to the Court for preliminary approval. (*Id.*

19  ¶ 15.) As set forth below, the Parties' extensive efforts and arm's length negotiations have

20  produced settlement terms that clearly fall within the range of what this Court, or any court, would

21  ultimately adjudicate as fair, reasonable, and adequate on final approval.

22  **IV.**    **Key Terms of the Settlement**

23        The precise terms of the Settlement are set forth in the attached Settlement Agreement

24  (Ex. A). A brief summary of the essential terms follows.

25        **A.**    **Class Definition**

26        The "Settlement Class" or "Class" is defined as any Person who falls within one or both

27  of the Subclasses below:

28

The "No Consent Subclass": All persons in the United States who during the Class Period received at least one Download the Scout App Text Message; and/or

The "Stop Subclass": All persons in the United States who during the Class Period received at least one additional message other than a message confirming an opt out request, after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE to any text message received from any Telenav Number.

Settlement Class Members may belong to both Subclasses.

**B.   Monetary Relief**

The Settlement provides Class Members who file with substantial monetary relief. Specifically, Defendant has agreed to a Settlement Fund of three million five hundred thousand dollars ($3,500,000) total ("Settlement Fund"). (*Id.* at 9.) The Settlement Fund will be used to pay all approved claims, Settlement Administration Expenses, any Incentive Award, and any Fee Award. Settlement Administration Expenses, any Incentive Award, and any Fee Award will be subtracted from the Settlement Fund. The amount that remains, the Net Settlement Fund, will then be divided by the total number of Award Units. Members of the No Consent Subclass are entitled to receive one (1) Award Unit, while members of the Stop Subclass are entitled to five (5) Award Units (members of both subclasses are entitled to a total of six (6) Award Units). Award Units will be of equal value. Award Units are capped at $1,500 each. That is, if the number of claims filed is such that the value of each Award Unit would exceed $1,500 (which would theoretically only occur if fewer than 1% of the Settlement Class submitted Valid Claim Forms—a result that neither Party believes is likely) then each Award Unit shall be equal to $1,500. Any monies remaining in the Settlement Fund would be donated to the Privacy Rights Clearinghouse, or another *Cy Pres* recipient approved by the Court.

**C.   Release of Liability**

In exchange for the relief described above, Telenav and its related and affiliated entities will receive a full release of any claims relating to: (a) the sending of the Download the Scout App Text Messages, or (b) to the sending of at least one additional text message other than a message confirming an opt out request to any person who had replied STOP, QUIT, END, CANCEL or UNSUBSCRIBE to any text message received from a Telenav Number, in either case during the Class Period (*i.e.* July 28, 2012 through March 5, 2018), including alleged

-7-

1  violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), and

2  similar state laws relating to sending of text messages without consent or after revoking consent.

3  (Settlement Agrmt. § 5.)

4        As explained below, such terms are decidedly favorable to the Class, and the Court

5  should grant preliminary approval to the instant Settlement.

6  **V.      The Proposed Settlement Class Should Be Certified.**

7        The first step for the Court in the process of granting preliminary approval of a proposed

8  class action settlement is to determine whether the proposed settlement class is appropriate for

9  certification. Manual for Complex Litigation §21.632 (4th ed. 2004); *see also Amchem Prods.*

10  *Inc. v. Windsor*, 521 U.S. 591, 620 (1997). This is only for settlement purposes and the standards

11  are relaxed somewhat. To certify a class for settlement purposes, the plaintiff must first

12  demonstrate that the proposed class and proposed class representatives meet four requirements:

13  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ.

14  P. 23(a)(1)-(4).

15        In addition, a plaintiff seeking class certification must also meet at least one of the

16  requirements of Rule 23(b). Fed. R. Civ. P. 23(b); *see also Wal-Mart Stores, Inc. v. Dukes*, 131

17  S. Ct. 2541, 2548 (2011). Because Plaintiff seeks monetary relief, Rule 23(b)(3) applies. It

18  requires that the plaintiff demonstrate that "questions of law or fact common to class members

19  predominate over any questions affecting only individual members, and that a class action is

20  superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

21  R. Civ. P. 23(b)(3); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011).

22  Courts generally do not place much emphasis on manageability or superiority when faced with a

23  settlement. *Amchem*, 521 U.S. at 623.

24        Here, as set forth below, Plaintiff meets each of the elements for class certification under

25  Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

26        **A.      The Requirement of Numerosity is Satisfied.**

27        The first prerequisite to class certification under Rule 23 is that the "class is so numerous

28  that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no minimum

-8-

number of potential class members necessary in order to satisfy the numerosity requirement, though courts have generally found classes of 40 members or more satisfactory. *See Rannis v. Recchia*, 380 Fed. Appx. 646, 650-61 (9th Cir. 2010) (finding a class of 20 satisfied the numerosity requirement); *see also Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 632 (S.D. Cal. 2010) (finding a class of 347 individuals satisfied the numerosity requirement); *see also Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (stating "classes of 40 or more are numerous enough"). Further, "impracticality does not mean impossibility" and the analysis should focus on the "difficulty or inconvenience of joining all members of class." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D. Cal. 2012).

Applied to the instant case, numerosity is readily satisfied. The proposed Class is comprised of approximately 200,000 Settlement Class Members. 200,000 received the Download the Scout App Text Messages and approximately 1,800 received additional text messages after responding STOP, QUIT, END, CANCEL or UNSUBSCRIBE (where the additional message went beyond merely confirming the consumer's opt out). (Settlement Agrmt. at 9.) Telenav has lists of phone numbers that will be provided to the Settlement Administrator from which Settlement Class Members can be identified. As such, the Class here is ascertainable and numerous as it consists of hundreds of thousands of persons—well in excess of the 40-member benchmark generally used to establish numerosity. *Ikonen*, 122 F.R.D. at 262.

### B.      The Requirement of Commonality is Met as Well.

Second, Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Dukes*, 131 S. Ct. at 2545, 2557 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Further, the

-9-

permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008). Whether the text messages at issue were sent by Telenav, and using an automatic telephone dialing system are both questions common to all Settlement Class Members' claims.

Here, the claims of every Class Member are nearly identical. That is, the Class Members share common statutory TCPA claims premised on the allegation that Telenav unlawfully sent "Download the Scout App Messages" to consumers like Gergetz and that Telenav unlawfully continued to send text messages to consumers even after the recipients had replied STOP, QUIT, END, CANCEL or UNSUBSCRIBE. Either Telenav or users of the Scout app are considered the "maker of the calls" and, therefore, are legally responsible for sending all of the Download the Scout App Text Messages. Telenav's system either qualifies as an ATDS with respect to every class member or with respect to none of them.

Hence, the transmission of these text messages leads to the following common factual and legal questions for the class:

• whether Telenav or users of the Scout app are the "makers of the calls" and therefore legally responsible under the TCPA for sending the Download the Scout App Text Messages.

• Likewise, because all of the text messages at issue were sent using the same equipment, whether that system qualifies as an ATDS under the TCPA presents common factual and legal question.

• Whether the act of replying "STOP," "QUIT," "END," "CANCEL," or "UNSUBSCRIBE" effectively revoked consent such that subsequent text messages violated the TCPA is another common question, as is whether any TCPA violation was willful.

As such, numerous issues are susceptible to a "class wide resolution" based on common evidence in satisfaction of Rule 23(a)(2). Thus, Plaintiff Gergetz meets the requirement of commonality for settlement purposes.

1

**C.     The Requirement of Typicality is Also Satisfied**

2     Rule 23 next requires that the class representative's claims be typical of those of the

3 putative class he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement

4 ensures that "the interests of the named representative align with the interests of the class." *Wolin*

5 *v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Like commonality,

6 typicality is measured under a permissive standard and does not require that the representative's

7 claims be substantially identical but only that they are "reasonably coextensive with [the claims]

8 of absent class members." *Hanlon*, 150 F.3d at 1020. Typicality is present when a defendant acts

9 uniformly toward the class members, where that uniform conduct results in injury to the class

10 members, and where the named plaintiffs suffer a similar injury to that of the class members as a

11 result. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

12     Here, there can be no doubt that Gergetz's claims are typical of those of the rest of the

13 Class Members. As with everyone else in the No Consent subclass, Gergetz received Download

14 the Scout App Text Messages. Likewise, and similar to the rest of the Replied Stop Subclass

15 members, Gergetz continued to receive text messages from Telenav numbers after he replied

16 "STOP." (Settlement Agrmt. at 6-7.) As such, the statutory injury asserted by Plaintiff Gergetz

17 essentially mirrors the injuries of the Class Members. (*See* Dkt. 1.)

18     Because the claims of the Plaintiff and proposed Class Members "arise from the same

19 conduct of the Defendant[s] – alleged violations of the TCPA – and are based on the same legal

20 theories" the typicality requirement is satisfied. *Bee, Denning, Inc. v. Capital Alliance Group*,

21 Case No. 13-cv-2654-BAS-WVG, 2015 WL 5675798 at *9, *10 (S.D. Cal. Sept. 24, 2015); *see*

22 *also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (holding the

23 typicality requirement satisfied where the named plaintiff and putative class members all

24 received unsolicited fax advertisements from defendant).

25

**D.     The Requirement of Adequate Representation is Satisfied**

26     Rule 23(a)(4), in turn, requires that the proposed class representative have and will

27 continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To

28 determine if representation is in fact adequate, the Court must ask "(1) do the named plaintiffs

and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Further, where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that interests of the class remain adequately protected. *See Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have typical claims).

Here, Plaintiff's interests are entirely representative of and consistent with the interests of all Class Members. Plaintiff is committed to the effective and diligent prosecution of this case and has no actual conflicts of interest that would negate such representation. In fact, there are no conflicts of record at all. Further, Mr. Gergetz has served admirably as a Named Plaintiff by staying abreast of the litigation and doing everything else required of him in order to investigate the claims, file the Complaint, and pursue the case on a class-wide basis.

Similarly, proposed Class Counsel have already undertaken significant steps to further the interests of proposed Class Members by ascertaining the Class, litigating the case, and by reaching this proposed Settlement Agreement through an arm's length negotiation overseen by a respected mediator. (Woodrow Decl. at ¶ 20.) Proposed Class Counsel will also continue to adequately protect the interest of the Settlement Class, as they have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits. Specifically, proposed Class Counsel have substantial experience litigating TCPA class action lawsuits that are similar in size, scope, and complexity to the present case. (*Id.*; *see also* Firm Resume of Woodrow & Peluso, LLC, a copy of which is attached to the Woodrow Decl. as Exhibit 1, and Firm Resume for the Law Office of Stefan Coleman P.A., a copy of which is attached to the Woodrow Decl. as Exhibit 2.) As such, the Plaintiff and proposed Class Counsel will adequately represent the interest of the members of the Settlement Class.

**E.    The Proposed Settlement Meets the Requirements of Rule 23(b)(3)**

In addition to meeting the requirements of Rule 23(a), the record supports certification under Rule 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained where: (1) the

-12-

questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged, "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. Here, the common questions of (1) whether Telenav used an ATDS, (2) whether Telenav made the calls at issue, and (3) whether Telenav violated the TCPA by sending post-STOP text messages (that went beyond confirming the "STOP" request) predominate over any imagined individual issues, and this Settlement presents a superior and manageable way for resolving the controversy.

### 1.      Common Questions of Law and Fact Predominate

The predominance requirement focuses on whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. Common issues of law and fact have been found where claims brought under the TCPA of a class representative and class members are "identical." *Bellows v. NCO Financial Systems, Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 4155361 at *7 (S.D. Cal. Sept. 5, 2008).

In this case, the common factual and legal questions—whether the text messages at issue were sent using an ATDS, whether Telenav was the "maker" of the calls, and whether any given Settlement Class Member revoked their consent to receive text messages by responding "STOP," "QUIT," "END," "CANCEL," or "UNSUBSCRIBE"—"forms a common nucleus of facts and potential legal remedies" that dominates the litigation. (*See* Dkt. 1.) Indeed, the answers to these central questions strike at the very heart of the case and will be the same for everyone in the Settlement Class. As such, because the class-wide determination of these issues will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

## 2.     This Class Action is the Superior Method of Adjudication

As a final matter, certification of this suit as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the class. To meet the requirement of superiority, a plaintiff must show that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76. This final factor has far less application when the court is presented with a settlement class for review, as no trial of the case will be necessary. *Amchem*, 521 U.S. at 623.

Here, the class is comprised of approximately 200,000 cellphone owners who have claims that range from $500 to a few thousand dollars, depending on the number of text messages they received. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, the individual prosecution of their TCPA claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and potentially lead to inconsistent rulings. (Settlement Agrmt. at 7.) Indeed, because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial") (citation omitted).

Accordingly, the Court may certify the Settlement Class pursuant to Rule 23(b)(3) as well.

## VI.     The Court Should Appoint Plaintiff's Counsel as Class Counsel.

The next step when deciding whether to preliminarily approve a settlement is to appoint Settlement Class Counsel. Indeed, under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: (1) the proposed class counsel's work in identifying or investigating potential claims, (2) the proposed class counsel's experience in handling class actions or other complex litigation,

-14-

and the types of claims asserted in the case, (3) the proposed class counsel's knowledge of the applicable law, and (4) the proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Class Counsel have extensive experience in prosecuting similar TCPA class actions and other complex litigation. (*See* Woodrow & Peluso, LLC Firm Resume, attached as Ex. 1 to the Woodrow Decl., Stefan Coleman P.A. Firm Resume, attached as Ex. 2 to the Woodrow Decl.) This includes TCPA claims involving text messages sent without sufficient prior express consent as well as a defendant's alleged failure to honor and process STOP requests sent by recipients of the messages. Further, proposed Class Counsel have diligently investigated and prosecuted *this* matter by dedicating substantial resources to the investigation of the claims at issue in the Action and have successfully negotiated this Settlement with Telenav. (*See* Dkt. 1, at 4-5; Settlement Agrmt. at 2-3.) Accordingly, the Court should appoint Steven L. Woodrow and Patrick H. Peluso of Woodrow & Peluso, LLC, and Stefan Coleman of the Law Offices of Stefan Coleman, P.A. as Class Counsel.

**VII.  The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.**

Following class certification, a court must engage in a well-known two-step approval process. Fed. R. Civ. P. 23(e); *see also* Conte & Newberg, 4 Newberg on Class Actions, §11.25, 3839 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement falls "within the range of possible approval." Newberg, §11.25, at 3839 (quoting Manual for Complex Litigation §30.41 (3d ed. 1995)); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). This hearing is not a fairness hearing; rather, its purpose is to ascertain whether there is any reason to notify the putative class members of the proposed settlement and whether to proceed with a fairness hearing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Notice of a settlement should be sent where the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and

-15-

1  falls within the range of possible approval." *Id.*

2      The Manual for Complex Litigation characterizes the preliminary approval stage as an

3  "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of

4  written submissions and informal presentations from the settling parties. § 21.632 (4th ed. 2004).

5  "[W]hether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from

6  the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v.*

7  *Facebook, Inc.*, No. 10-16380, 2012 WL 4125857, at * 3 (9th Cir. Sept. 20, 2012). If a court

8  finds a settlement proposal "within the range of possible approval," it then proceeds to the

9  second step in the review process—the final approval hearing. Newberg, §11.25, at 3839.

10     As this Court is undoubtedly aware, strong judicial policy exists favoring the voluntary

11  conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101

12  (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While a district

13  court has discretion regarding the approval of a proposed settlement, it should give "proper

14  deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact,

15  when a settlement is negotiated at arm's length by experienced counsel, courts often find that

16  there exists a presumption that the end product is fair and reasonable. *See In re Pac. Enterprises*

17  *Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Though not dispositive, the presence of a neutral

18  mediator who assisted the settlement negotiations is further proof that the settlement was reached

19  fairly and provides adequate relief. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935,

20  948 (9th Cir. 2011).

21     Additionally, a court is not required to calculate "a specific monetary value

22  corresponding to each of the plaintiff class's statutory claims and compare the value of those

23  claims to the proffered settlement award." *Lane*, 2012 WL 4125857, at * 7. A court need not

24  determine the potential recovery for each plaintiff's cause of action, even in those cases

25  involving statutory damages, given that questions of fact discernible only at trial would render

26  any finding "speculative and contingent." *Id.* (finding that a $9.5 million class recovery "would

27  be substantial under most circumstances"). Ultimately, the Court's role is to ensure that the

28  settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see also In*

-16-

*re Bluetooth*, 654 F.3d at 950.

There is little question that the proposed Settlement falls "within the range of possible approval"—or exceeds it. The Parties have undertaken extensive negotiations and reached an outcome that best serves the interests of both Parties and the Settlement Class. (Settlement Agrmt. at 2-3.) Moreover, John Bates of JAMS presided over the mediation and numerous subsequent phone calls, assisted the Parties in negotiating the Settlement Agreement, and ensured that there was no collusion. (*Id.*) The Settlement Agreement is the result of arm's length negotiations where both Parties contributed substantially and materially to the Agreement's preparation, and where no negotiation of the Class Representative's proposed incentive award or any amount for reasonable attorneys' fees and costs was negotiated until after the relief to the Class had been agreed upon. (*Id.* at 2-4.)

The terms of the Settlement Agreement build off of the foundational terms developed with the help of Mr. Bates. The amount is fair, considering the possible consequences to Telenav under the TCPA, which would range from $500 to $1,500 per text message. True, when multiplied by the total number of messages $3.5 million does not seem like an extensive sum of money when compared with the hundreds of millions or more in potential liability faced by Telenav. But such amounts could only have been received IF the Settlement Class achieved both adversarial class certification and judgment in their favor on all contested issues against Telenav in the amount of at least $500 per message. (*See* Dkt. 1.) Although Plaintiff and proposed Class Counsel are confident in the strength of their claims and that they would ultimately prevail at trial, they also recognize that litigation is inherently risky and that Telenav has asserted numerous defenses. When the merits of Plaintiff's claims are weighed against the legal and factual obstacles remaining, combined with the complexity of class action practice against experienced defense counsel, it is apparent that the proposed settlement is clearly in the best interest of the Settlement Class Members, as it immediately provides substantial monetary recovery. (Woodrow Decl. ¶¶ 18-19.) This is particularly true given the pending D.C. Circuit appeal of the FCC's 2015 TCPA Order in *ACA Int'l v. FCC,* No. 15-1211 (D.C. Cir.). If the D.C. Circuit were to adopt a narrow definition of ATDS that did not apply to Telenav's system (one of

the central questions being decided through the appeal) then Gergetz and the Settlement Class Members would likely end up receiving nothing at all from the case.

Finally, the Court need not rule on the fairness, reasonableness, and adequacy of the proposed Settlement Agreement in a vacuum. That is, class action settlements that stood to provide less of a benefit to the settlement class members have received final approval by federal courts nationwide. *See, e.g.*, *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) (finding a per-claim amount range of between $7 and $156 fair, reasonable, and adequate); *Bellows*, 2008 WL 4155361 at *9 (finding a per-claim amount of $70 satisfactory for preliminary approval); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (explaining that "[a] $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts."); *Burris v. Sherwin-Williams, Co.*, No. 4:15-cv-00343-DW (W.D. Mo. order filed Nov. 17, 2015) (granting preliminary approval of TCPA per-claim amount of approximately $307).

Indeed, projecting a claims rate of 5% (which is likely attainable here), administrative fees and costs of $200,000, a $5,000 Incentive Award, and assuming solely for the sake of this illustration that the Fee Award is ultimately 30% (the Settlement Agreement allows Class Counsel to seek up to 33% of the Settlement Fund as an award of reasonable attorneys' fees and expenses), then each Award Unit would equal approximately $225. That means that members of the No Consent Subclass would receive $210 while members of the Replied Stop Subclass would receive approximately $1,050. Settlement Class Members like Gergetz, who are members of both subclasses, would receive $1,260. Such amounts compare favorably with respect to typical TCPA class action settlements, including those focused on text messages.

As with these similar cases, this Settlement easily falls well "within the range of possible approval," is fair, reasonable, and adequate, and should thus be preliminarily approved so that notice may be sent to Settlement Class Members and the reaction of the Settlement Class (whether filing claims, opting out, objecting, or doing nothing) may be ascertained.

## VIII.   The Proposed Plan of Class Notice is the Best Practicable Under the Circumstances

A court reviewing any Class Action Settlement where certification is sought in

-18-

accordance with Rule 23(b)(3) must also provide the settlement class with notice that comports

with due process and the ability to opt out. Indeed, to satisfy the requirements of both Rule 23

and due process, Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3),

the court must direct to class members the best notice practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort." Fed.

R. Civ. P. 23(c)(2)(B); *Dukes*, 131 S. Ct. at 2558. Rule 23(e)(1) similarly states that "[t]he court

must direct notice in a reasonable manner to all class members who would be bound by a

proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).

Notice is "adequate if it may be understood by the average class member." Newberg, §

11:53 at 167. The substance of the notice to the settlement class must describe the nature of the

action, the definition of the class to be certified, the class claims and defenses at issue, as well as

explain that settlement class members may enter an appearance through counsel if so desired,

request to be excluded from the settlement class, and that the effect of a class judgment shall be

binding on all class members. *See* Fed. R. Civ. 23(c)(2)(B).

As evidenced by the proposed notices appended to the Settlement Agreement itself, the

Notice plan developed by both Parties is the best practice under the circumstances. The Parties

have selected Epiq Systems, a nationally respected third-party settlement administrator with

extensive experience administering TCPA class action settlements, to serve as Settlement

Administrator. Within 14 days of Preliminary Approval, the Settlement Administrator will be

provided with the Telenav Lists, which the Settlement Agreement defines as the lists of phone

numbers that Telenav has that contain the cellular telephone numbers of approximately 200,000

Settlement Class Members. (Settlement Agrmt. at 13.) Using the Telenav Lists, Epiq will

perform reverse address look-ups to obtain physical mailing addresses and, where available,

email addresses. The Settlement Administrator will also reasonably attempt to update such

addresses through utilization of the national change of address registry and other appropriate

methods. (*Id.*) The Settlement Administrator will then send each Class Member, via first class

mail, a copy of the Short Form (postcard) Notice (attached as Exhibit 4 to the Settlement

Agreement). Wherever an email address is located a copy of the Short Form (email) Notice will

1  be sent to the Settlement Class Member as well (the result being that many members of the

2  Settlement Class will receive both mailed and emailed notice of the Settlement Agreement). The

3  Settlement Agreement also calls for the Settlement Administrator to create and implement a

4  targeted programmatic digital media campaign for publication Internet Notice, as needed to

5  accomplish sufficient reach to comport with due process.

6        Epiq is also responsible for establishing and maintaining a Settlement Website

7  (Settlement Agrmt. at 21) that will host a traditional "Long Form" notice. At the Settlement

8  Website Settlement Class Members can learn information about the Settlement Agreement, be

9  advised of key dates and deadlines, and review important settlement documents such as the

10  Settlement Agreement, notices, and motions for preliminary and final approval, and Class

11  Counsel's application for a Fee Award. Settlement Class Members will also be able to use the

12  Settlement Website to download claim forms for mailing and to submit such claim forms

13  electronically.

14        The Notice Plan will provide information to Class Members of their inclusion in the

15  Settlement Class because they either were sent Download the App Text Messages, or they were

16  sent additional text messages from a Telenav Number other than a message merely confirming

17  an opt-out request, after having replied "STOP", "QUIT," "END," "CANCEL," or

18  "UNSUBSCRIBE"—all allegedly in violation of the TCPA. (*See* Settlement Agrmt., Group Ex.

19  2.) The Notice Plain will explain the terms and provisions of the proposed settlement, including

20  the amount of the settlement fund and how it will be distributed. (*Id.*) The Notice Plain will

21  advise the Settlement Class of their rights, including the right to be excluded from, comment

22  upon, and object to the Agreement and the procedures for taking such actions. (*Id.*) The Notice

23  Plan will also refer the Settlement Class to the Settlement Website explain the procedures for

24  submitting a claim form. (*Id.*) The Notice Plan will also clearly inform the Settlement Class of

25  the date, time, and place of the Final Approval Hearing and advise the Settlement Class of their

26  right to attend, to opt out, and to object. (*Id.*)

27        In anticipation of the preliminary approval hearing the Parties sent to Epiq copies of their

28  draft notices and claim form. The draft notices attached to the Settlement Agreement include

-20-

1   Epiq's edits and suggestions. As such, the draft notices are in near final form, pending any

2   additions or edits required by the Court.

3   **IX.    Conclusion**

4           Proposed Class Representative Gergetz and Proposed Class Counsel are particularly

5   proud of the strength of the Settlement they present to the Court for preliminary approval. The

6   Settlement Agreement provides Class Members with relief on a per claim basis that well exceeds

7   the claim amounts typically witnessed in class action settlements under the TCPA. Indeed,

8   whereas the typical TCPA settlement payout ranges from $30 to $145, here, assuming

9   projections hold, the per claimant amounts will equal $210 for consumers who fall within the

10  definition of the No Consent Subclass and $1,050 for consumers who are members of the

11  Replied Stop Subclass.

12          As a consequence, the Court should find that the Agreement confers substantial benefits

13  on the Settlement Class, compares favorably with other TCPA class action settlements, and falls

14  well within the range of Final Approval such that notice should be sent to the Class Members.

15          For the foregoing reasons, Plaintiff respectfully ask that the Court preliminarily certify

16  the Settlement Class, appoint Nathan Gergetz as the Class Representative, appoint Steven L.

17  Woodrow, Patrick H. Peluso, and Stefan Coleman as Class Counsel, grant preliminary approval

18  of the proposed Settlement Agreement, approve the form and manner of notice described above,

19  schedule a Final Fairness hearing, and grant such further relief the Court deems reasonable and

20  just.

21  Dated: March 5, 2018                              Respectfully Submitted,

22                                                    Nathan Gergetz, individually and on behalf
                                                      of a class of similarly situated persons,
23

24                                                    /s/ Steven L. Woodrow
                                                      One of Plaintiff's Attorneys
25

26                                                    Richard T. Drury
                                                      richard@lozeaudrury.com
27                                                    Rebecca Davis
                                                      rebecca@lozeaudrury.com
28                                                    LOZEAU DRURY LLP

-21-

410 12ᵗʰ Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.*
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com


*pro hac vice

UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

CASE NO. 5:16-cv-4261-BLF

**CERTIFICATE OF SERVICE**

I, Steven L. Woodrow, an attorney, hereby certify that I served the foregoing papers by causing true and accurate copies of such papers to be transmitted to all counsel of record through the Court's electronic filing system on March 5, 2018.

/s/ Steven L. Woodrow