Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.*
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com

*pro hac vice
Additional counsel appearing on signature page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated, | CASE NO.: 5:16-cv-4261-BLF |
| Plaintiff, | **MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND EXPENSES, AND INCENTIVE AWARD** |
| v. | |
| TELENAV, INC., a Delaware corporation | |
| Defendant. | |

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES.................................................................................................iii

3   I.      INTRODUCTION ...........................................................................................1

4   II.    FACTUAL BACKGROUND AND TERMS OF THE SETTLEMENT ......................2

5       A.   The TCPA and its Implementing Regulations.......................... 2

6       B.   Summary of the Litigation, Mediation, and Settlement ..................... 4

7            1.   The Plaintiff's Claims and The Litigation History ............................... 5

8            2.   The Mediation and Settlement History ................................ 6

9       C.   Terms of the Settlement Agreement and Provision for Reasonable Attorneys'
10             Fees and Incentive Awards................................................................7

11            1.   Class Definition ............................................................ 7

12            2.   Monetary Relief ........................................................... 8

13            3.   Release of Liability ....................................................... 8

14   III.   ARGUMENT ................................................................................... 9

15       A.   Class Counsel's Requested Fee Award Represents 33% of the Settlement
             Fund .......................................................................... 10

16            1.   Class Counsel Achieved Exceptional Results for Class Members ...... 11

17            2.   Class Counsel Faced Meaningful Risk in Taking the Case ................ 15

18            3.   The Benefits Extend Beyond the Settlement Fund............................. 15

19            4.   An Award of One-Third Falls Within the Market Rate..................... 16

20            5.   Class Counsel Advanced Costs and Were Unable to Take Other Cases
                While Prosecuting this Matter ................................ 17

21            6.   Class Counsel Prosecuted this Case on a Contingent Basis ................ 18

22       B.   The Requested Fee is Also Reasonable Under the Lodestar Method............ 19

23       C.   Class Counsel Also Incurred $9,539.28 in Expenses ......................... 22

24       D.   The Court Should Approve the Requested Incentive Award ...................... 22

25   IV.   CONCLUSION.................................................................................. 23

26

27

28

# TABLE OF AUTHORITIES

*Aboudi v. T-Mobile USA, Inc.*, No. 12cv2169 BTM (NLS),
 2015 WL 4923602 (S.D. Cal. Aug. 18, 2015) ........................................ 10, 11, 16

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)...................................... 21

*Bellinghausen v. Tractor Supply Co.*, No. 13-cv-02377,
 2015 WL 1289342 (N.D. Cal. Mar. 20, 2015) ........................................... 23

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................... 9

*Bridgeview Health Care Ctr., Ltd. v. Jerryclark*, No. 09 C 5601, 2015 WL 4498741
 (N.D. Ill. July 23, 2015) ...................................................................... 16

*Buccellato v. AT & T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. Jun. 30,
 2011)...................................................................................................... 21

*Cohorst v. BRE Props., Inc.*, Case No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923 (S.D. Cal.
 Nov. 14, 2011)....................................................................................... 14

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012 WL
 12540344 (N.D. Ga. Oct. 26, 2012) ....................................................... 17

*David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15,
 2010)...................................................................................................... 17

*Davis v. J.P. Morgan Chase & Co.*, 827 F.Supp.2d 172 (W.D.N.Y.2011) ................. 21

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) ............ 21

*Florida v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ......................................................... 9

*Fontes v. Heritage Operating, L.P.*, No. 14CV1413-MMA (NLS), 2016 WL 1465158 (S.D. Cal.
 Apr. 14, 2016) ....................................................................................... 20

*Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265 (3d Cir. 2013) ...................................... 3

*Gragg v. Orange Cab Co., Inc.*, C-12-0576, 2013 WL 1788479 (W.D. Wash. Apr. 26, 2013)..... 3

*Grant v. Capital Mgmt. Srvs., L.P.*, No. 11-56200, 2011 WL 3874877 (9th Cir. Sept. 2, 2011) ... 3

*Hageman v. AT&T Mobility LLC*, No. CV 13-50- BLG-RWA, 2015 WL 9855925 (D. Mont. Feb.
 11, 2015).............................................................................................. 16

*Hall v. Cole*, 412 U.S. 1 (1973)................................................................................ 15

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011)............................................. 23

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)...... 23

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989)................................. 9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............... 9, 10

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015)............. 13

*In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752 (S.D. Ohio 2007) ............................ 21

*In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732 (S.D.Tex.2008)............ 21

*In re Heritage Bond Litig.*, Case No. 02-ML-1475-DL, 2005 WL 1594389 (C.D. Cal. June 10, 2005)................................................................................................................................ 14

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................. 19

*In re Nuvelo, Inc. Securities Litig.*, No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011)................................................................................................................................ 17

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................ 13, 18

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015).................. 9, 10, 11

*In re Oracle Sec. Litig.*, 131 F.R.D. 688 (N.D. Cal. 1990) ............................................................ 9

*In re Rite Aid Sec. Litig.*, 362 F.Supp.2d 587 (E.D. Pa.2005).................................................... 21

*Jacob v. Pride Transp., Inc.*, No. 16-CV-06781-BLF, 2018 WL 1411136 (N.D. Cal. Mar. 21, 2018)................................................................................................................................ 23

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015).......................................................... 16

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, No. 15-2485, 2016 WL 611441 (3d Cir. Feb. 16, 2016)....................................................................................................................... 16

*Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015)............................................................................................................. 16

*Mims v. Arrow Financial Svcs's, LLC*, 132 S. Ct. 740 (2012)....................................................... 2

*Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003)........................................................ 16

*Nelson v. Greater Gadsden Hous. Auth.*, 802 F.2d 405 (11th Cir. 1986) ................................... 17

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560 (D.Mass. Aug. 3, 2009)...................................................................................... 21

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................................... 11

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................... 22

*Rose v. Bank of Am. Corp.*, Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................................................................................... 13

*Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) .............. 16

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ............................................ 2

*Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK (N.D. Cal.) ................................ 20

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..................................................................................................................21

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV- 00489, 2015 WL 9413143 (W.D. Ky. Dec. 22, 2015) ...............................................................................16

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..........................................................19

*Steiner v. Am. B'casting Co., Inc.*, 248 Fed.Appx. 780 (9th Cir.2007).......................21

*Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ...............................................................19

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014)...............16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...............................16, 19

*Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill. 2014) ..............20

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997)..........10

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .................................................................19

**STATUTES, RULES, SECONDARY SOURCES**

Conte & Newberg, *Newberg on Class Actions* (3d Ed. 1992) ......................................20

*In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.*, CG Docket No. 20–278 (Nov. 29, 2012) ..................................................................................3

Manual for Complex Litigation (4th ed. 2004) ............................................................9

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; American Association of Healthcare Administrative Management, Petition for Expedited Declaratory Ruling and Exemption; et al.*, CG Docket No. 20–278 (July 15, 2015)..................................................................................................3

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* .............................*passim*

I.      **INTRODUCTION**

This case presents claims for (allegedly) unlawful text messages under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). The Parties reached a class action Settlement Agreement that represents an outstanding result for the Settlement Class Members. Indeed, under the terms of the Settlement, Defendant Telenav, Inc. ("Defendant" or "Telenav") has created a Settlement Fund in the amount of three million five-hundred thousand dollars ($3,500,000.00 USD), from which Settlement Class Members may make claims for their share of the Settlement. Claimants in the No Consent Subgroup are set to receive one (1) Award Unit while claimants in the Stop Subgroup will receive at least five (5) Award Units (and claimants in both receive six (6) units). At present, each Award Unit is worth approximately $1,050.00 based on the number of claims that have been filed. The Settlement Agreement is thus poised to confer significant monetary benefits on the Settlement Class Members and well exceeds amounts typically awarded in TCPA class action settlements.

Such impressive results are the direct result of the meaningful time, effort, and energy that Settlement Class Counsel and Class Representative Nathan Gergetz ("Plaintiff" or "Gergetz") devoted to the litigation. Indeed, the Settlement Agreement was only made possible by Class Counsel's work and effort investigating and prosecuting the case, negotiating the terms of the deal during a formal, full-day mediation (followed by several months of subsequent talks), pursuing the instant Settlement, and communicating with Settlement Class Members throughout the approval process.

In recognition and compensation for this work, the Settlement Agreement provides for a Fee Award to Settlement Class Counsel of up to one-third of the Settlement Fund ($1,155,000.00 USD) to cover attorneys' fees and out of pocket expenses. The Settlement also calls for an incentive award of $5,000.00 to Gergetz for dutifully acting as the Class Representative. Such amounts are demonstrably reasonable and fall within the range of attorneys' fees and incentive payments typically awarded in the Ninth Circuit where a common fund is established. Further, the fee is reasonable under the lodestar method based on the amount of effort and time expended by Class Counsel to bring, prosecute, and settle this action. As set forth below, with respect to a

1  lodestar crosscheck, a multiplier of only 2.88 is required to substantiate the fee amount, which is

2  within the range typically seen in similar settlements in the Ninth Circuit.

3      The Court should approve the incentive award for Gergetz as well. The Settlement Class

4  Representative is seeking an incentive award in the amount of $5,000.00, which is reasonable

5  when viewed in light of his role in bringing and pursuing this lawsuit—without his participation

6  as the named Plaintiff no Settlement could have been reached in the first place.

7      For these reasons, and as discussed further below, Settlement Class Counsel and the

8  Settlement Class Representative respectfully request that the Court enter an Order granting the

9  instant Motion and approving a Fee Award of $1,155,000.00 for Class Counsel's fees and

10  expenses together with an Incentive Award of $5,000.00 for Nathan Gergetz, the Settlement

11  Class Representative.

12  **II.     FACTUAL BACKGROUND AND TERMS OF THE SETTLEMENT**

13      Prior to analyzing Class Counsel's fee request and the propriety of the requested

14  incentive award it is helpful to review the TCPA provisions at issue, the history of Gergetz's

15  experience with Telenav's text messages, and the litigation and process that culminated in the

16  instant Settlement Agreement.

17      **A.     The TCPA and its Implementing Regulations.**

18      A brief summary of the law that forms the basis of Plaintiff's claims helps put the request

19  for attorneys' fees in proper context. Congress enacted the TCPA in 1991 as a response to

20  "[v]oluminous consumer complaints about abuses of telephone technology…." *Mims v. Arrow*

21  *Financial Svcs's, LLC*, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress sought to

22  "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569

23  F.3d 946, 954 (9th Cir. 2009); *see also Mims,* 132 S. Ct. at 745. Courts have consistently held that

24  the TCPA applies with equal force to the making of text message calls as it does to the making of

25  voice calls to cellular phones. *Satterfield,* 569 F.3d at 954.

26      To prevail, a plaintiff must show that a person: (1) made text message calls, (2) using an

27

28

Automatic Telephone Dialing System (ATDS)[1], (3) to a telephone number assigned to a cellular telephone service. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Whether Plaintiff and others provided their prior express consent to receive such text messages is an affirmative defense. *See, e.g.*, *Grant v. Capital Mgmt. Srvs., L.P.*, No. 11-56200, 2011 WL 3874877, at *1 n.1 (9th Cir. Sept. 2, 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof.").

Of particular relevance to a subgroup of the Settlement Class (members who replied "Stop" or with a similar message but kept receiving more messages) here is that consumers retain the ability to revoke consent under the TCPA once it has been provided. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; American Association of Healthcare Administrative Management, Petition for Expedited Declaratory Ruling and Exemption; et al.*, CG Docket No. 20–278 (July 15, 2015) ("Omnibus TCPA Ruling" ¶ 47) ("[W]e clarify that a called party may revoke consent at any time and through any reasonable means"); *see also In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.,* CG Docket No. 20–278 (Nov. 29, 2012) ("*SoundBite Ruling* "); *see also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 272 (3d Cir. 2013) ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems."). Applied to the instant facts, Gergetz alleges that Telenav's text messaging platform continued to send him (and numerous others) text messages even after they had replied "STOP" to revoke any consent that may have been previously provided.

---

[1] An ATDS means "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC, in turn, has explained that equipment that dials or sends texts to a list of numbers is an ATDS, because "'the basic function of such dialing equipment' is the same— 'the capacity to dial numbers without human intervention.'" *Gragg v. Orange Cab Co., Inc.*, C-12-0576, 2013 WL 1788479, at *2 (W.D. Wash. Apr. 26, 2013) (*citing Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed.Reg. 6041, 6042 (Feb. 1, 2008)). Had the case failed to settle, a major issue in the litigation would have been whether Telenav's system qualifies as an ATDS.

1    The TCPA sets statutory damages in the amount of $500 per violation (trebled to $1,500

2    per text message if the violations are found to have been willful) and provides for injunctive

3    relief prohibiting the further transmission of such messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

4        Having put Plaintiff's claims in legal perspective, a review of the Plaintiff's claims and

5    the process leading to the Settlement helps illustrate the fairness of the Agreement.

6        **B.      Summary of the Litigation, Mediation, and Settlement.**

7        As explained in prior briefing, this case involves two types of TCPA violations. First,

8    Plaintiff Gergetz received text messages from a Telenav phone number (a short code or long

9    code that Telenav used to send the text messages) urging him to "Download the App." (*See*

10   Declaration of Steven L. Woodrow ("Woodrow Decl."), attached hereto as Exhibit A, ¶¶ 3-4.)

11   Gergetz claimed that these calls violated the TCPA because they were made without first

12   obtaining prior express consent from Gergetz to make the calls. (*Id.*) Approximately 200,000

13   Settlement Class Members have similar claims.[2] (*Id*. ¶ 7.)

14       The second type of claim involves Gergetz's request that the text messages "Stop."

15   Gergetz and others allegedly responded STOP to the messages they received from Telenav, but

16   the messages continued to be sent from Telenav's long and/or short codes. (Woodrow Decl. ¶¶ 3-

17   4.) There are approximately 1,800 similarly-situated Settlement Class Members. (*Id*. ¶ 7.)

18       Following initial discussions of counsel and an exchange of information regarding the

19   nature of the system Telenav used to send the messages and process opt-out requests, the Parties

20   engaged in a full-day mediation session with renowned mediator Mr. John Bates of JAMS, San

21   Francisco. (Woodrow Decl. ¶ 9.) The discussions were hard fought, and each side expressed a

22   willingness to walk away. Although a settlement wasn't reached at the mediation, the Parties

23   continued to negotiate with Mr. Bates's help, ultimately reaching the instant Agreement through

24   a mediator's proposal. (*Id*. ¶¶ 12-14.) The result of these efforts by Plaintiff's counsel,

25   Defendant's counsel, and the mediator is an undeniably favorable deal that reflects optimal relief

26   for the Settlement Class.

27

28   _____

[2] Telenav denies that any such persons would be entitled to relief absent the Settlement Agreement.

1.      **The Plaintiff's Claims and The Litigation History**

Plaintiff Nathan Gergetz received text messages on his cellphone from a Telenav short-code or long-code, even after he repeatedly texted "STOP" in response. Given his inability to get Telenav to stop sending him text messages, Plaintiff contacted his counsel about his legal rights.

Prior to the initiation of the instant Action, proposed Class Counsel undertook an extensive investigation into Telenav, the Scout geolocation application for smartphones, and the app's text messaging platform. (Woodrow Decl. ¶¶ 3-5.) Class Counsel worked closely with Plaintiff Gergetz to determine the extent of the intrusive text messages sent by Telenav to his cellphone. (*Id.* ¶ 4.) Class Counsel thereafter reviewed and analyzed sources of public information, including internet message boards and other sources, to assess whether other consumers had received similar text messages from Telenav. (*Id.* ¶ 3.) Class Counsel also reviewed available information the inner workings of geolocation apps to assess their functionality more generally under the TCPA. (*Id.*) Following this investigation, Class Counsel decided to pursue the case as an alleged class action on behalf of Plaintiff Gergetz and all other cellphone users who received similar text messages from Telenav as well as on behalf of persons who had received such text messages following their submission of a STOP text. (*Id.* ¶ 5.)

On July 28, 2016, Plaintiff Gergetz filed a class action complaint in the United States District Court of the Northern District of California against Telenav alleging that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (*See* Dkt. 1.) Specifically, the Complaint alleged that Telenav violated the TCPA by sending text messages through an automatic dialer without Plaintiff's prior express written consent—and after Plaintiff and others had submitted at least one STOP request—and sought statutory damages and injunctive relief on behalf of a nationwide class. (*Id.*)

Following the filing of the initial Complaint the counsel for the parties engaged in discussions regarding their respective views of the case. (Woodrow Decl. ¶ 7.) When the case was first filed, Telenav retained attorney Joshua Masur of Turner Boyd LLP. (*Id.*) Counsel for Plaintiff and Mr. Masur engaged in meaningful discussions regarding the details of the case and the potential for an early resolution. In or around March 2016, Mr. Masur withdrew as Telenav's

counsel and was replaced with Tonia Klausner and Peter Holm of Wilson Sonsini Goodrich PC, experienced and highly skilled TCPA class action defense counsel. (*Id.* ¶¶ 7-8.) Counsel for the Parties thereafter agreed to exchange informal information regarding the potential scope of the litigation—including top-level data regarding the size of the alleged classes and the technological issues affecting the Scout App's messaging platform (powered by Twilio, Inc.) that may have prevented certain STOP requests from being honored. (*Id.*) Using this information, Class Counsel were able to fairly assess their chances of winning the case on the merits and the value of the claims. (*Id.*) This included a frank dialogue regarding Telenav's defenses, including, *inter alia*, arguments that Telenav did not send the text messages, that its text messaging system does not qualify as an ATDS, and that the D.C. Circuit was likely to adopt a definition of ATDS that excludes the technology at the heart of Telenav's system. (*Id.*)

### 2.    The Mediation and Settlement History

Following the exchange of initial informal discovery related to the scope of the class, counsel for the Parties agreed that the case should go to mediation and worked to schedule a settlement conference. (Woodrow Decl. ¶ 9.) Telenav also filed a Motion to Dismiss or Stay, which the Parties briefed in full. On January 7, 2017, counsel for the Parties engaged in a full-day mediation session in San Francisco, California conducted by John Bates of JAMS—a well-respected mediator with substantial class action experience (including extensive experience settling complex TCPA class actions). (*Id.*) Through the mediation process, the Parties were able to exchange additional, updated information regarding the size and scope of the proposed class and Telenav's anticipated defenses. (*Id.* ¶ 10.)

Notwithstanding productive negotiations facilitated by Mr. Bates, counsel for the Parties did not reach an agreement in principle regarding the relief to be made available to the Class prior to the close of the mediation session. (Woodrow Decl. ¶ 11.) Rather, the Parties agreed to proceed with the hearing on Telenav's Motion to Dismiss or Stay that had been scheduled before the Parties had agreed to mediate, wherein Telenav had argued both that: (1) the case should be dismissed because, according to Telenav, it was not the "maker" of the calls, and (2) the case should be stayed pending the D.C. Circuit Court of Appeals' consideration of the FCC's

1    definition of an automatic telephone dialing system under the TCPA in *ACA International v.*

2    *FCC*, Appeal No. 15-1211. (*Id.*) The Parties agreed to proceed with the hearing on Telenav's

3    Motion with the understanding that they would work to continue their discussions to determine

4    whether a resolution could be reached. (*Id.* ¶ 12.)

5         Hence, notwithstanding their continued preparations for the hearing, Mr. Bates worked to

6    keep the case on a settlement track by engaging the Parties through series of telephone

7    negotiations. (Woodrow Decl. ¶ 13.) The instant Settlement is the result of this back-and-forth

8    diplomacy. (*Id.* ¶ 14.) On the eve of the hearing on the Motion to Dismiss, counsel reached an

9    agreement and informed the Court the next day. Only after an agreement in principal was reached

10   with respect to the Settlement Class did the Parties discuss an amount for reasonable attorneys'

11   fees for proposed Class Counsel or an incentive award for Named Plaintiff Gergetz. (*Id.*)

12        Following this agreement in principal, Class Counsel worked with defense counsel to

13   memorialize the Settlement and to draft and revise all pertinent Settlement documents. This

14   included drafting and editing the Agreement, the claim form, the long form, short form, and email

15   notices, as well as all proposed orders. Class Counsel also worked with the Settlement

16   Administrator on the Settlement Website, including the Q&A sections, interactive voice recording

17   (IVR) messaging, and other settlement materials.

18        The outcome is a particularly strong settlement that secures substantial monetary relief for

19   Settlement Class Members who elect to file claims. (Woodrow Decl. ¶ 15.) As set forth below, the

20   key terms of the Settlement follow.

21        **C.    Terms of the Settlement Agreement and Provision for Reasonable**
              **Attorneys' Fees and Incentive Awards.**
22
          The precise terms of the Settlement are attached hereto in the Settlement Agreement (Ex.
23
     B.) A brief summary of the essential terms follows.
24
                         **1.    Class Definition**
25
          The "Settlement Class" or "Class" is defined as any Person who falls within one or both
26
     of the Subclasses below:
27
              The "No Consent Subclass": All persons in the United States who during the
28            Class Period received at least one Download the Scout App Text Message; and/or

The "Stop Subclass": All persons in the United States who during the Class Period received at least one additional message other than a message confirming an opt out request, after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE to any text message received from any Telenav Number.

(Settlement Agreement, Ex. B, § II, ¶ 35.) Settlement Class Members may belong to both Subclasses.

## 2.    Monetary Relief

The Settlement provides Class Members who file claims with substantial monetary relief. Specifically, Defendant has agreed to establish a Settlement Fund of three million five-hundred thousand dollars ($3,500,000.00) total ("Settlement Fund"). The Settlement Fund will be used to pay all approved claims, Settlement Administration Expenses, any Incentive Award, and any Fee Award. Settlement Administration Expenses, any Incentive Award, and any Fee Award will be subtracted from the Settlement Fund. The amount that remains, the Net Settlement Fund, will then be divided by the total number of Award Units. Members of the No Consent Subclass are entitled to receive one (1) Award Unit, while members of the Stop Subclass are entitled to receive five (5) Award Units (members of both subclasses are entitled to receive a total of six (6) Award Units). Award Units will be of equal value and are capped at $1,500.00 each. That is, if the number of claims filed is such that the value of each Award Unit would exceed $1,500.00, then each Award Unit shall be equal to $1,500.00. Any monies remaining in the Settlement Fund would be donated to the *Cy Pres* designee. As indicated above, based on the current number of claims filed, award units equal approximately $1,050.00 at present. Thus, if the claims deadline were today, members of the no consent subgroup would receive $1,050.00, while members of the Stop Subclass would get $5,247.00 and members of both groups would receive $6,298.00—truly impressive results.[3]

## 3.    Release of Liability

In exchange for the relief described above, Telenav and its related and affiliated entities will receive a full release of any claims relating to text messages sent to Class Members,

---

[3] While additional claims are expected, the rate at which claims have been received suggests the individual award unit value will remain substantial.

1    including messages allegedly sent without prior express written consent and messages sent to

2    consumers after they had replied "Stop" or with a similar command. (Settlement Agrmt. § 5,

3    xx.).

4    **III.    ARGUMENT**

5           The Supreme Court has "consistently recognized that a litigant or lawyer who recovers a

6    fund for the benefit of persons other than himself or his client is entitled to a reasonable

7    attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

8    When a settlement creates a common fund that benefits the entire Class, the Court may use either

9    the lodestar method or the percentage-of-recovery method when determining reasonable

10   attorneys' fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

11   2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.

12   1990) ("[b]ecause the benefit to the class is easily quantified in common-fund settlements, we

13   have allowed courts to award attorneys a percentage of the common fund in lieu of the often

14   more time-consuming task of calculating the lodestar….")); *see also In re Online DVD-Rental*

15   *Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015).

16          While district "courts [ultimately] have discretion to employ either the lodestar method or

17   the percentage-of-recovery method[,]" when a settlement produces a common fund for the class,

18   courts in the Ninth Circuit most often employ a percentage-of-recovery method and award class

19   counsel a fee that constitutes a reasonable percentage of the fund. *See In re Activision Sec. Litig.*,

20   723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (holding that the percentage-of-recovery method is

21   preferable to the lodestar method because it encourages efficient resolution by providing an

22   incentive for early, yet reasonable settlement); *see also In re Oracle Sec. Litig.*, 131 F.R.D. 688,

23   689 (N.D. Cal. 1990); *see also Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (citing a

24   "groundswell of support for mandating a percentage-of-the-fund approach in common fund

25   cases"); *see also Manual for Complex Litigation* 4th Ed. 14.121 (2004) ("[I]n practice, the

26   lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, . . .

27   capable of manipulation . . . [and] creates inherent incentive to prolong the litigation.").

28

Though a percentage-of-the-fund method is preferred, the Ninth Circuit has also determined the "application of the 'lodestar method' may provide a useful 'cross-check' as to the reasonableness of a given percentage award. *Aboudi v. T-Mobile USA, Inc.*, No. 12cv2169 BTM (NLS), 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)). The lodestar method requires "multiplying the number of hours [Class Counsel] . . . reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Online-DVD-Rental Antitrust Litig.*, 779 F.3d at 949. Indeed, "to restrict Class Counsel to the hourly rates they customarily charge for non-contingent work – where payment is assured – would deprive them of any financial incentive to accept contingent-fee cases which may produce nothing." *Aboudi*, 2015 WL 4923602, at *7. Courts have decided that, "multipliers of 1 to 4 are … appropriate in common fund cases." *Id.*

As explained below, the requested attorneys' fees sought in this case are supported when evaluated both as a percentage of the Settlement Fund achieved in this case as well as when viewed in light of Class Counsel's lodestar. Settlement Class Counsel achieved an exceptional result for the Settlement Class Members, which required time, skill, and extraordinary effort. As such, the Court should have little difficulty awarding the requested and agreed-upon attorneys' fees.

**A.    Class Counsel's Requested Fee Award Represents 33% of the Settlement Fund.**

Generally speaking, "the benefit to the Class is easily quantified in common-fund settlements . . . [and Courts may] . . .award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating lodestar." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942. The Ninth Circuit has determined that 25% of the Settlement Fund is a benchmark for an award of attorneys' fees, depending on the quality of the representation by counsel, the risks of continued litigation, and the results achieved for the class. *Id.* (citing *Six Mexican Workers,* 904 F.2d at 1311). The benchmark should be adjusted upward or downward

1   depending on the circumstances. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272

2   (9th Cir. 1989)[4]; *see also Aboudi*, 2015 WL 4923602, at *7.

3           Class Counsel's requested attorneys' fees of $1,155,000.00 from the $3,500,000.00

4   Settlement Fund represents 33%—a sum admittedly higher than the benchmark. Such an upward

5   departure is warranted here due to the over-whelming strength of the Settlement. At present,

6   assuming the number of claims holds steady, Settlement Class Members are projected to receive

7   between approximately $1,050.00 and $6,300.00—a terrific deal that in many cases exceeds the

8   amounts recoverable at trial, all without having to expend time and money preparing for such an

9   evidentiary hearing and fighting any appeals.

10          Courts consider a non-exhaustive list of factors when assessing a request for attorneys'

11  fees using the percentage method, including: "the extent to which class counsel achieved

12  exceptional results for the class, whether the case was risky for class counsel, whether counsel's

13  performance generated benefits beyond the cash settlement fund, the market rate for the

14  particular field of law, . . . the burdens class counsel experienced while litigating the case (*e.g.*,

15  cost, duration, foregoing other work), and whether the case was handled on a contingency basis."

16  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015) (*citing Vizcaino,* 290

17  F.3d at 1047–50). As explained below, each of these factors supports the requested fee award

18  here.

19                      **1.       Class Counsel Achieved Exceptional Results for Class Members.**

20          The first factor examines the benefits obtained for the Settlement Class Members. Given

21  the substantial monetary relief negotiated here—in addition to the prospective relief—this

22  consideration weighs heavily in favor of the fee award requested.

23          Class Counsel have secured a common fund of $3,500,000.00 for the benefit of the Class,

24  which provides Class Members with the ability to file claims worth hundreds or even thousands

25  of dollars for the text messages they received. (Settlement Agreement, Ex. B, § 3.1.) This is an

26

27  _____

    [4] The percentage benchmark should be measured against the full fund established by the

28  settlement and not the actual payout to the class. *Williams v. MGM-Pathe Communications Co.*,
    129 F.3d 1026, 1027 (9th Cir. 1997).

outstanding result, which far exceeds the amount per claim typically available in TCPA

settlements. For example, the following are typical:

| CASE NAME | AMOUNT PER CLAIMANT |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |

| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
|---|---|
| *Weinstein v. The Timberland Co., et al.*, 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

The instant Settlement, which confers thousands of dollars on individual claimants, is obviously strong by comparison. *See also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *see also Rose v. Bank of Am. Corp.*, Case No.: 5:11-CV-02390-EJD; 5:12-CV-04009-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant). Again, if fees and other costs are awarded as contemplated by the Agreement,[5] as of today each Award Unit would be worth approximately $1,050.00. This would result in payments to Stop Subgroup claimants of between $5,250.00 and $6,300.00 (where the claimant belongs to both subgroups). Even if these values are reduced by 10% due to additional claims being filed, the results are still outstanding, with the No Consent Subgroup claimants poised to receive $945.00 ($1,050.00 x .9) and the Stop Subclass group receiving between $4,725.00 and $5,670.00 ($5,250.00 x .9 and $6,300.00 x .9 respectively).

Again, such results weren't obtained by happenstance. Rather, litigating a nationwide class action requires "unique legal skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Although the skill required to successfully prosecute a class action is

---

[5] These calculations assume a Fee Award of 33%, an Incentive Award of $5,000.00, and projected notice and administrative costs of $230,000.00. (Woodrow Decl. ¶ 21.)

1    evident, the "single clearest factor reflecting the quality of class counsels' services to the class are

2    the results obtained." *In re Heritage Bond Litig.*, Case No. 02-ML-1475-DL, 2005 WL 1594389,

3    at *12 (C.D. Cal. June 10, 2005). Additionally, the quality and expertise of opposing counsel is

4    important to consider. *See Cohorst v. BRE Props., Inc.*, Case No. 3:10-CV-2666-JM-BGS, 2011

5    WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011). As discussed above, Class Counsel have

6    negotiated a settlement in this case after a full-day mediation session and several months-long

7    series of follow-up discussions that confers substantial cash relief to the Class. This result was

8    accomplished despite formidable opposition by seasoned TCPA defense counsel at Wilson Sonsini

9    Goodrich & Rosati, PC who were prepared to fight this matter through trial and all appeals.

10       And without belaboring the point, this litigation presented several novel and complex legal

11   and factual issues. First, from a factual standpoint, Class Counsel were required to research

12   Telenav's text messaging platform, including its use of Twilio and issues that may arise when text

13   messaging short codes or long codes are used to process STOP requests and similar responses.

14   Experts would have been needed regarding such technology had the case progressed. Likewise,

15   Class Counsel worked to assess whether Telenav's Scout application had the technological

16   underpinnings to potentially be considered an ATDS under the TCPA more generally. With

17   respect to legal issues, Class Counsel had to perform consistent legal research throughout the

18   litigation and settlement phases to ensure the matter proceeded in accordance with the current state

19   of the law, including: the legal definition of an ATDS, principals of Article III standing post-

20   *Spokeo*, the potential for pick-off attempts of the named plaintiff, the suitability of the case as a

21   class action, settlement standards for national class actions in the Ninth Circuit and in sister

22   circuits, TCPA class action settlements (including contemporary structures and dollar values), *cy*

23   *pres* designees, approval red-flags, the ability to settle nationwide class actions where state laws

24   being released are implicated, and other evolving legal issues. (Woodrow Decl. ¶ 23.)

25       Hence, the Settlement represents a substantial recovery for the Class and was made

26   possible through the skill employed by Class Counsel. Thus, attorneys' fees and expenses of one-

27   third of the $3,500,000.00 Settlement Fund, or $1,155,000.00, is reasonable.

28

1           **2.      Class Counsel Faced Meaningful Risk in Taking the Case.**

2           Though Plaintiff's claims are strong, this case involves complicated legal and factual

3    issues, and further litigation presented Plaintiff and counsel with the risk that the ultimate result to

4    the Class could be nothing at all.

5           Class Counsel have, to date, prosecuted this matter entirely on a contingency basis.

6    (Woodrow Decl. ¶ 25.) At the risk of receiving nothing in return, Class Counsel initiated and

7    diligently prosecuted this case, investing substantial time and resources. (*Id.*) Ultimately, after

8    balancing the strength of the claims with the hurdles ahead, Plaintiff and Class Counsel concluded

9    that the relief available through the Settlement was the best course of action for the Class. This is

10   particularly true given the strength of the relief made available. Under the TCPA, Class Members

11   would be entitled to $500 per violation, or $1,500 if willfulness were to be proven. *See* 47 U.S.C.

12   227(c)(5). Under the Settlement, each Class Member will ultimately receive $945.00 to

13   $5,670.00.[6] (Settlement Agreement § 3.) Thus, proceeding to trial would only garner a marginal

14   benefit, if any.

15          And that assumes a victory. Telenav was prepared to argue that its customers (who

16   download and use the Scout App were the actual "makers" of the messages) and that its

17   equipment/technology doesn't qualify as an ATDS under the language of the TCPA (and as

18   interpreted by the FCC.) These merit-based defenses, if successful, would result in the Settlement

19   Class Members obtaining no relief at all. As such, Class Counsel faced genuine risks in litigating

20   this matter.

21          Accordingly, the significant risk that the Class may have recovered substantially less (or

22   perhaps nothing at all) were the case to proceed supports the reasonableness of Class Counsel's

23   requested fee award.

24          **3.      The Benefits Extend Beyond the Settlement Fund.**

25          Additionally, as a practical matter this litigation has prompted Telenav to pay closer

26   attention to its TCPA compliance program. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (common

27

28   ---
     [6] $945.00 = $1,050.00 less 10% due to the filing of additional claims. Likewise, $5,670.00 = $6,300.00 less 10% due to the projected filing of additional claims.

1   fund doctrine "must logically extend, not only to litigation that confers a monetary benefit on

2   others, but also to litigation which corrects or prevents an abuse which would be prejudicial to

3   the rights and interests of those others."). This factor, therefore, supports the requested fees as

4   well.

5              **4.      An Award of One-Third Falls Within the Market Rate.**

6          The requested attorneys' fees also fall within the market rate. As indicated above, the

7   Ninth Circuit has determined that 25% of the Settlement Fund is a benchmark for award of

8   attorneys' fees. *See Aboudi*, 2015 WL 4923602, at *7; *see also In Re Pacific Enterprises*

9   *Securities Litigation*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming 33 1/3% fee); *see also*

10  *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-50 (9th Cir. 2002) (affirming 28% fee).

11         A close examination of TCPA settlements, however, reveals that courts routinely award

12  higher percentages. *See Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) (affirming

13  33% fee); *see also Landsman & Funk, P.C. v. Skinder-Strauss Associates,* No. 15-2485, 2016

14  WL 611441, at *3 (3d Cir. Feb. 16, 2016) (unpublished decision) (affirming award of one-third

15  of reversionary settlement fund in TCPA class action settlement where requested fees were twice

16  the amount of class counsel's lodestar); *see also Bridgeview Health Care Ctr., Ltd. v. Jerryclark*,

17  No. 09 C 5601, 2015 WL 4498741, at *2 (N.D. Ill. July 23, 2015) (awarding one-third of

18  common fund in TCPA class action); *see also Hageman v. AT&T Mobility LLC*, No. CV 13-50-

19  BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15

20  million, or one-third of the common fund recovery" in TCPA class action settlement against

21  AT&T); *see also Saf–T–Gard Int'l, Inc. v. Seiko Corp. of Am*., No. 09 C 0776 (N.D. Ill. Jan. 14,

22  2011) (awarding 33% of common fund in multimillion dollar TCPA class action); *see also*

23  *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly,

24  the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of the $3.3

25  million settlement fund ceiling amount."); *see also Lees v. Anthem Ins. Companies Inc*., No.

26  4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (approving fees in

27  TCPA settlement representing "34% of the actual fund available to Class Members."); *see also*

28  *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 501 (N.D. Ill. 2015), appeal dismissed (Jan. 27, 2016),

1   appeal dismissed (Feb. 1, 2016), appeal dismissed (Feb. 3, 2016) (awarding 36% of common

2   fund in TCPA class action settlement); *see also Spine & Sports Chiropractic, Inc. v. ZirMed,*

3   *Inc.*, No. 3:13-CV- 00489, 2015 WL 9413143, at *1 (W.D. Ky. Dec. 22, 2015) (approving one

4   third of fund as attorney's fees).

5       Indeed, while 25% serves as a benchmark, courts often award greater percentages to

6   Class Counsel where the fund is under $10 million. *See In re Nuvelo, Inc. Securities Litig.*, No. C

7   07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (noting that the typical fee in

8   this Circuit is 30-33% of the fund); *see also In re Activison Sec. Litig.*, 723 F. Supp. 1373, 1377-

9   78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%").[7]

10      As such, 33% is within the market rate and should be found reasonable here.

11              **5.      Class Counsel Advanced Costs and Were Unable to Take Other Cases
                          While Prosecuting this Matter.**

12      This factor, which examines the burdens to Class Counsel, also supports granting the

13  requested attorneys' fees. Here, Class Counsel advanced all costs, including filing fees, mediation

14  costs (including travel to San Francisco), and travel to San Jose for the motion to dismiss,

15  preliminary approval, and final approval hearings. (Woodrow Decl. ¶ 27.) Had the case proceeded,

16  Class Counsel were prepared to retain experts to perform an analysis and review of Telenav's text

17  messaging platform to identify the root cause of the issue that lead it to send text messages to

18  people who had responded "STOP," as well as other potential technology and damages experts.

19

20

---

21  [7] *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2012
    WL 12540344, at *1 (N.D. Ga. Oct. 26, 2012); *see also Camden I Condominium Ass'n, Inc. v.*

22  *Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("The majority of common fund fee awards fall
    between 20% to 30% of the fund.") (citing Newberg, § 2.08 at 51); *see also Id.* at 775 ("We

23  agree with the Tenth Circuit that the [*Johnson* factors] continue to be appropriately used …
    Other pertinent factors are the time required to reach a settlement, whether there are any

24  substantial objections by class members or other parties to the settlement terms or the fees
    requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and

25  the economics involved in prosecuting a class action."); *see also David v. Am. Suzuki Motor
    Corp,* No. 08-CV-22278, 2010 WL 1628362, n.15 (S.D. Fla. Apr. 15, 2010) (20% to 50% of

26  common fund is "the customary fee in class actions that result in substantial benefits"); *see also
    Nelson v. Greater Gadsden Hous. Auth.,* 802 F.2d 405, 409 (11th Cir. 1986); *see also Carpenters*

27  *Health & Welfare Fund v. Coca-Cola Co.*, 587 F.Supp.2d 1266, 1269 (N.D. Ga. 2008) ("[A]s the
    size of the common fund grows, the percentage of the common fund awarded to the attorneys

28  should be reduced.").

1  Class Counsel's work in this case also prevented the attorneys from working on other

2  matters. (Woodrow Decl. ¶ 25.) Class Counsel's firms are not large outfits and must be careful

3  regarding the cases they take. (*Id.* ¶ 33.) Investing the time into researching and prosecuting a

4  federal class action necessarily means that attention is diverted away from other cases, including

5  paying hourly clients whose matters do not carry any comparable risk of nonpayment. (*Id.* ¶ 25.) It

6  is not as if this case was settled with a handful of telephone calls that barely interrupted Class

7  Counsel's routine. (*Id.* ¶ 23.) Rather, Class Counsel spent meaningful attorneys' time investigating

8  the claims, preparing for and participating in the mediation, drafting all settlement documents, and

9  presenting the Settlement to the Court for preliminary approval. (*Id.*)

10  This factor, therefore, supports the requested fees as well.

11  ### 6.  Class Counsel Prosecuted this Case on a Contingent Basis.

12  The final consideration asks whether the case has been litigated on a contingent basis. Put

13  simply, the nature of Class Counsel's representation also supports the requested fee award.

14  Contingent fees allow competent counsel to accept cases and provide adequate representation in

15  class actions and provide a basis for awarding a larger fee than if the matter was billed on a flat

16  or hourly basis. *In re OmniVision*, 559 F. Supp. 2d. at 1047 (citing *In re Wash. Pub. Power*

17  *Supply Systems Securities Litigation,* 19 F.3d 1291, 1299-1300 (9th Cir. 1994)). "It is an

18  established practice in the private legal market to reward attorneys for taking the risk of non-

19  payment by paying them a premium over their normal hourly rates for winning contingency

20  cases…as a legitimate way of assuring competent representation for plaintiffs who could not

21  afford to pay on an hourly basis regardless whether they win or lose." *In re Washington Public*

22  *Power Supply Securities Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

23  At the time of filing this lawsuit on a contingent fee basis, Class Counsel knew they may

24  spend hundreds of hours of attorney time in contested litigation with no guarantee of recovery. To

25  date, they have, in fact, devoted hundreds of hours representing Plaintiff and the Class without

26  compensation and spent time on the issues that may have been spent on other cases or work

27  matters. (Woodrow Decl. ¶ 25.) And as explained further below, Class Counsel have also

28  advanced the costs of this suit without any reimbursement to date.

1      Thus, given the exceptional results achieved when compared with other TCPA class action

2  settlements, the skill and efficiency with which the case has been litigated, the awards in other

3  cases, and the contingent nature of the representation, a one-third fee award is justified here.

4        **B.      The Requested Fee is Also Reasonable Under the Lodestar Method.**

5      The requested fee award of $1,155,000.00 is also reasonable when applying the lodestar

6  method—either as a cross-check to the percentage-of-the-fund approach or as the primary

7  method of calculation.

8      The "lodestar method" calculates attorneys' fees by multiplying the number of hours that

9  class counsel reasonably expended on the litigation by an hourly rate that takes into

10 consideration the experience of the lawyers and their geographic location. *Staton v. Boeing Co.*,

11 327 F.3d 938, 965 (9th Cir. 2003). When performing a lodestar cross-check, mathematical

12 exactitude is not required. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176

13 (S.D. Cal. 2007) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005));

14 *see also Thieriot v. Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal.

15 Apr. 21, 2011); *see also Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at

16 *6 (N.D. Cal. Mar. 28, 2007) ("In contrast to the use of the lodestar method as a primary tool for

17 setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging

18 and review of counsel's hours."). Further, courts typically apply a multiplier to the lodestar to

19 account for class counsel taking on the litigation at a substantial risk of non-payment. *Vizcaino*,

20 290 F.3d at 1051.

21      In this case, and as reflected in the chart below, Class Counsel expended a total of 988.2

22 firm hours investigating, litigating, and settling this lawsuit for a total current lodestar of

23 $383,102.

24

25

26

27

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow (WP) | Partner | $440 | 444.3 | $195,492 |
| Patrick Peluso (WP) | Partner | $340 | 394 | $133,960 |

28

| Taylor Smith (WP) | Associate | $225 | 26.2 | $5,895 |
|---|---|---|---|---|
| Stefan Coleman | Partner | $450 | 81.9 | $36,855 |
| Richard Drury (LD) | Partner | $850 | 0.2 | $170 |
| Rebecca Davis (LD) | Associate | $550 | 14.6 | $8,030 |
| Law Clerks (WP) | Law Clerks | $100 | 27 | $2,700 |
| **LODESTAR** | | | **988.2** | **$383,102** |

(Woodrow Decl. ¶ 22.) On top of this, Class Counsel projects expending an additional $10,000 -

$15,000 in time seeing the Settlement through to final approval, which includes continuing to

call Settlement Class Members on the class list, assisting them with the filing of their claims, and

otherwise shepherding claimants through the process. (*Id.* ¶ 24.)

Plaintiff's counsel's hourly rates are somewhat below the market rate for comparable

attorneys in this District. *See Fontes v. Heritage Operating, L.P.*, No. 14CV1413-MMA (NLS),

2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving counsel's hourly rates ranging

from $495-$695 per hour). As set forth in their respective declarations, Class Counsel's rates are

comparable to those charged to private clients and have been approved by various courts. (*See*

Woodrow Decl. ¶ 26. (citing *Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. TX 2016)

(*Couch* Dkt. 43) (approving 2016's rates for Woodrow & Peluso of $430 and $330

respectively)); *see also Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill.

2014) (Bucklo, J.) (Wigod Dkt. 278) (approving hourly rate of $570 for attorney Woodrow in

2014); *see also Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK (N.D. Cal.)

(*Schulken* Dkt. 223) (Koh J.) (approving attorney Woodrow's former hourly rate of $500 back in

2012).[8] To be sure, each attorney's hourly rate is the same as those charged by hourly-paying

clients. (Woodrow Decl. ¶ 26), and Class Counsel have diligently attempted to avoid duplication

of effort and to delegate work efficiently. (*Id.* ¶ 23.)

---

[8] Mr. Woodrow joined with Mr. Peluso to start their own practice in 2015 and, in the process, Mr. Woodrow lowered his hourly rates out of recognition that smaller firms generally command lower billable rates.

1      While a lodestar amount is presumptively reasonable, it may be adjusted upward by a

2  multiplier typically ranging between 1 and 4 to account for the risk faced in taking the case. *See*

3  Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 14:03 (3d Ed. 1992) (recognizing

4  that multipliers of one to four are frequently awarded).[9] The Ninth Circuit has concluded that

5  lower courts may abuse their discretion where a multiplier is required but withheld. *See Fischel*

6  *v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of

7  discretion to fail to apply a risk multiplier, however, when (1) attorneys take a case with the

8  expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does

9  not reflect that risk, and (3) there is evidence that the case was risky.").

10      Here, lass Counsel took the matter on a contingent basis with the expectation of a

11  multiplier, and there is ample evidence that the case was risky. Further, a fee award of one-third

12  requires a multiplier of only 2.88 of Counsel's lodestar to justify. This is calculated by taking the

13  fee request and subtracting out of pocket expenses ($1,155,000.00 - $9,539.28 = $1,145,460.72).

14  The current lodestar ($383,102.00) plus the $15,000.00 in additional anticipated time are then

15  divided by the fee request (again, $1,145,460.72 after subtracting expenses), which equals 2.88.

16  The result is that a multiplier of only 2.88 to Class Counsel's lodestar is required to justify the

17  requested attorneys' fees, which falls within the 1 to 4 range for typical lodestar multipliers.[10]

18

---

[9] Around the Country, "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (*citing Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052–54 (9th Cir.2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times)); *see also Sewell v. Bovis Lend Lease, Inc*., No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts routinely award lodestar multipliers between two to six."); *see also Steiner v. Am. B'casting Co., Inc.,* 248 Fed.Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *see also Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (awarding multiplier of 5.3 in wage and hour class action); *see also Buccellato v. AT & T Operations, Inc.,* No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.,* No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *see also In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six); *see also In re Rite Aid Sec. Litig.,* 362 F.Supp.2d 587 (E.D. Pa. 2005) (awarding multiplier of seven).
[10] Taking only the current lodestar would result in a multiplier of 2.99, which is plainly still within the range.

1    A multiplier is warranted here. Class Counsel expended time and effort researching the

2   law, drafting and editing briefs, motions, and mediation documents, and attending a full-day

3   mediation session—all without guarantee of payment. (Woodrow Decl. ¶ 25.) Indeed, the risks

4   present in a nationwide class action are manifest—issues abound that can doom a case, including

5   legal issues affecting the class, problems with the named plaintiff, discovery pitfalls, appeals, and

6   other risks. Yet the effort and skill employed by Class Counsel paid off: the Settlement Agreement

7   makes substantial relief available to Settlement Class Members.

8    Considering the rates Class Counsel typically bills in their normal practice fall below those

9   charged in the relevant market and do not account for the risks posed by the case, Class Counsel

10   would have been hard pressed to have agreed to prosecute this matter absent the prospect of a

11   multiplier. (Woodrow Decl. ¶ 26.) As such, a multiplier is warranted, and here it is currently only

12   2.88.

13    Application of the lodestar analysis thus confirms that the requested fee is reasonable and

14   should be approved. Class Counsel's firms expended 988.2 hours for a lodestar of $383,102.00,

15   which only results in a 2.88 multiplier. Thus the fees are reasonable under both methods of review.

16    **C.    Class Counsel Also Incurred $9,539.28 in Expenses.**

17    As indicated, Class Counsel incurred costs of $9,539.28 fighting and settling the case.

18   (Woodrow Decl. ¶ 27.) These costs were all tailored to the case. This included travel for the

19   mediation, the hearing on the Motion to Dismiss, and the hearing on the Motion for Preliminary

20   Approval. Additional costs will be incurred for travel associated with the final approval hearing.

21   None of the costs are excessive (no lavish meals or first-class flights were purchased); rather, each

22   expense item was needed to advance the litigation or Settlement through the mediation. (*Id.* ¶ 28.)

23   Hence, the expenses should be approved as a result.

24    **D.    The Court Should Approve the Requested Incentive Award.**

25    Finally, to compensate class representatives for the work they do on behalf of absent

26   class members, courts typically grant requests for incentive awards. *Rodriguez v. West Publ'g

27   Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Incentive awards are commonplace in class actions

28   and are intended to "compensate class representatives for work done on behalf of the class, to

1  make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to

2  recognize their willingness to action as a private attorney general." *Hartless v. Clorox Co.*, 273

3  F.R.D. 630, 646 (S.D. Cal. 2011).

4          Here, Plaintiff seeks an incentive award of $5,000.00, which is reasonable considering his

5  involvement was essential to the ultimate success of the settlement and his continued willingness

6  to assume the responsibilities expected of class representatives, including protecting the interests

7  of the Class instead of simply furthering his own interests. (Woodrow Decl. ¶¶ 3-6.) Such an

8  award is comparable to awards issued in this Circuit. *See Bellinghausen v. Tractor Supply Co.*,

9  No. 13-cv-02377, 2015 WL 1289342, at *16 (N.D. Cal. Mar. 20, 2015) (finding that incentive

10  awards "typically range from $2,000 to $10,000."); *see also Hopson v. Hanesbrands Inc.*, No.

11  CV-08-0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving incentive award of

12  $5,000 in $408,420 settlement). Indeed, as this Court has explained, "[a] service award of

13  $10,000 falls at the high end of the range." *Jacob v. Pride Transp., Inc.*, No. 16-CV-06781-BLF,

14  2018 WL 1411136, at *6 (N.D. Cal. Mar. 21, 2018) (approving $10,000 incentive awards and

15  explaining that "Where there is a 'very large differential in the amount of damage awards

16  between the named and unnamed class members,' such differential must be supported by the

17  record."). The $5,000.00 to Gergetz would be just half of what the representative received in

18  *Jacob.* This is reasonable in light of the fact that certain Settlement Class Members are poised to

19  receive between $945.00 and $6,300.00, demonstrating that the incentive award doesn't present a

20  very large differential.

21          Accordingly, an incentive award of $5,000.00 is reasonable and should also be approved

22  by the Court.

23  **IV.     CONCLUSION**

24          For the foregoing reasons, Plaintiff Gergetz respectfully requests the Court enter an Order

25  awarding attorneys' fees and expenses in the amount of $1,155,000.00 and an incentive award in

26  the amount of $5,000.00 to the Settlement Class Representative, and provide such other and

27  further relief as the Court deems reasonable and just.

28

Dated: August 2, 2018

Respectfully Submitted,

**Nathan Gergetz**, individually and on behalf of the Settlement Class

/s/ Steven L. Woodrow
One of Plaintiff's Attorneys

Richard T. Drury
richard@lozeaudrury.com
Rebecca Davis
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.*
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com

*pro hac vice

1

**CERTIFICATE OF SERVICE**

2      I, Steven L. Woodrow, an attorney, hereby certify that I served the foregoing papers by

3  causing true and accurate copies of such papers to be transmitted to all counsel of record through

4  the Court's electronic filing system on August 2, 2018.

5

6                                                                  /s/ Steven L. Woodrow

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28