# EXHIBIT A

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso*
(ppeluso@woodrowpeluso.com)
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.*
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com

*pro hac vice
Additional counsel appearing on signature page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>  v.<br><br>TELENAV, INC., a Delaware corporation<br><br>    Defendant. | CASE NO.:  5:16-cv-4261-BLF<br><br>**DECLARATION OF STEVEN L. WOODROW IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND EXPENSES, AND INCENTIVE AWARD** |

I, Steven L. Woodrow, declare as follows:

1.      I am over the age of eighteen (18), and I am one of the attorneys for the plaintiff in this matter. I make this declaration in support of Plaintiff's Motion for Award of Reasonable Attorneys' Fees and Expenses, and Incentive Award in connection with the class action Settlement Agreement reached in the above captioned litigation.

2.      I am able to testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge and based on facts learned during the litigation of this case, including our pre-suit investigation, our pursuit of the claims, and our negotiating the Settlement Agreement through the mediation process.

***Class Counsel's Pre-Suit Investigation and Early Litigation***

3.      Prior to this lawsuit ever being filed, my firm, Woodrow & Peluso, LLC, conducted an extensive investigation into Telenav, Inc. and its text messaging activities. This included an examination of publicly-available information to determine the scope of Telenav's text messaging, its Scout App, and the applicable terms and conditions. Through this review my firm was able to gain a an understanding of Telenav's Scout App and the text messages sent through the Scout App. Based on this information, coupled with the Scout App's failure to process Stop requests, we had a good faith basis for concluding that Telenav used an automatic telephone dialing system ("ATDS") to make the calls at issue.

4.      During this phase of the case, lawyers on our team also interviewed named Plaintiff Nathan Gergetz regarding his receipt of text messages from a Telenav number and his attempts to opt-out of receiving future messages.

5.      Once this investigation had revealed sufficient evidence of a claim, and we were satisfied internally that Gergetz had received unlawful text messages (including messages after responding Stop), our team drafted the pleadings in the case and filed the lawsuit on behalf of Gergetz and a nationwide class of similarly-situated cellphone users.

6.      We thereafter obtained service and proceeded to litigate the case.

***The Parties Commence Early Settlement Discussions***

7.     Following the filing of the Complaint, Telenav retained attorney Joshua Masur of Turner Boyd LLP. Mr. Masur and I engaged in initial discussions regarding each side's respective viewpoints and discussed the possibility of an early resolution. To facilitate ongoing discussions the parties agreed that Mr. Masur would gather information regarding the size of the alleged class and the potential scope of the case. Information gathered has indicated that approximately 200,000 Settlement Class Members have claims similar to Gergetz's claims, 1,800 of whom also replied "STOP" and continued to receive text messages.

8.     In or around October 2016, Mr. Masur withdrew as Telenav's counsel and was replaced by Tonia Klausner and Peter Holm of Wilson Sonsini Goodrich PC—an experienced TCPA practitioner. Shortly thereafter, we engaged in frank discussions with Ms. Klausner and Mr. Holm regarding the size and scope of the litigation, including the size of the alleged classes and the technology utilized to place the text message calls. Additionally, we discussed Telenav's potential defenses, which included Telenav's assertions that: (a) it did not "make" the calls at issue in the case (*i.e.*, that it did not send the text messages—that app users supposedly sent them instead), (b) its system is not an ATDS and the D.C. Circuit is likely to adopt a definition of ATDS that excludes Telenav's software, and (c) additional defenses and arguments.

9.     Following this exchange of information, counsel for both parties agreed to engage in a mediation session to determine if an early settlement could be obtained. To that end, counsel for all parties—including lawyers for Plaintiff, Telenav, and Telenav's insurer—convened in San Francisco on July 7, 2017, for a full-day mediation session overseen by John Bates of JAMS, a well-respected mediator with substantial class action settlement experience, including specifically in cases litigated and settled under the TCPA.

10.     Throughout the mediation, both Parties continued to share updated information regarding the scope of the claims and the size of the class and additional information regarding their respective claims and defenses.

11.     Notwithstanding these extensive and productive talks, the mediation session ended with the Parties unable to come to an agreement regarding the terms of the relief to be made available to the Settlement Class. Instead of settling, both Parties agreed following the mediation session to proceed forward with the previously scheduled hearing on Telenav's Motion to Dismiss or Stay.

12.     Counsel for the Parties also agreed, however, to continue to discuss a possible resolution in the lead up to the hearing.

13.     To facilitate these continued talks, the mediator, Mr. Bates, worked to keep the case on a settlement track by engaging the Parties and their counsel through a series of telephone negotiations.

14.     Ultimately, with the help of Mr. Bates, the Parties reached an agreement in principal on the eve of the hearing scheduled on Telenav's Motion to Dismiss or Stay. Only after reaching an agreement in principal did the Parties discuss an amount for reasonable attorneys' fees and an incentive award for Gergetz.

15.     As such, the Settlement Agreement was negotiated by a well-respected national mediator with substantial experience overseeing TCPA class action settlements who made certain that at all times the negotiations stayed professional and arm's-length. The result is a strong settlement that provides robust relief to the class members.

***The Parties Work to Obtain Preliminary Approval & Notice is Issued to the Class***

16.     Once the finer details of the Settlement Agreement and the notices were finalized and the agreement was executed, Class Counsel drafted the papers in support of Preliminary Approval and traveled to San Jose for the Preliminary Approval Hearing.

17.     During the hearing the Court indicated that the Settlement would receive preliminary approval. Thereafter, we worked with both Telenav's counsel and the Settlement Administrator to finalize all necessary papers, including the Settlement Website and the Class Notices and to mail and email them out to Settlement Class Members.

*Response to the Settlement to Date*

18.     Since notice was disseminated, Class Counsel's law firm has received several calls from Settlement Class Members seeking additional information about the nature of the claims and the relief made available under the settlement agreement. Many of the callers are surprised to learn that federal law includes such a claim and are pleased with the result achieved. One gentleman told me over the phone that "Christmas is back on" this year in his house because of this Settlement.

19.     To date, no Settlement Class Members have elected to opt-out nor have any objected, signaling overwhelming satisfaction with the results.

20.     The $3.5 million Settlement Fund will be used to pay all approved claims, Settlement Administration Expenses, any Incentive Award, and any Fee Award. Settlement Administration Expenses, any Incentive Award, and any Fee Award will be subtracted from the Settlement Fund. The amount that remains, the Net Settlement Fund, will then be divided by the total number of Award Units. Members of the No Consent Subclass are entitled to receive one (1) Award Unit, while members of the Stop Subclass are entitled to receive five (5) Award Units (members of both subclasses are entitled to receive a total of six (6) Award Units). Award Units will be of equal value.

21.     If the Court ultimately awards amounts from the Settlement as contemplated by the Agreement, each award unit would currently be worth $1,050.00.

*Class Counsel's Hours and Rates*

22.     After reviewing my firm's time keeping records and consulting with my co-counsel and local counsel, as of the filing of this Motion, Settlement Class Counsel have expended the following hours[1] pursuing the claims and crafting the settlement of this case:

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow (WP) | **Partner** | **$440** | 444.3 | **$195,492** |

---

[1] Class Counsel's time sheets are available upon request for the Court's review.

| | | | | |
|---|---|---|---|---|
| Patrick Peluso (WP) | **Partner** | **$340** | **394** | **$133,960** |
| Taylor Smith (WP) | **Associate** | **$225** | **26.2** | **$5,895** |
| Stefan Coleman | **Partner** | **$450** | **81.9** | **$36,855** |
| Richard Drury (LD) | **Partner** | **$850** | **0.2** | **$170** |
| Rebecca Davis (LD) | **Associate** | **$550** | **14.6** | **$8,030** |
| Law Clerks (WP) | **Law Clerks** | **$100** | **27** | **$2,700** |
| **LODESTAR** | | | **988.2** | **$383,102** |

23.     The time spent to date is reasonable. Meaningful work was performed before the case was ever filed to ensure that the claims were as well positioned as possible. Indeed, significant time was spent performing legal research to ensure that the Settlement Class put forward the legal theory with the best chances of success. This included legal research throughout the litigation and settlement phases to ensure the litigation matter proceeded in accordance with the current state of the law, including: the legal definition of an ATDS, principals of Article III standing post-*Spokeo*, the potential for pick-off attempts of the named plaintiff, the suitability of the case as a class action, settlement standards for national class actions in the Ninth Circuit and in sister circuits, TCPA class action settlements (including contemporary structures and dollar values), *cy pres* designees, approval red-flags, the ability to settle nationwide class actions, and other evolving legal issues. This is of course in addition to numerous communications with opposing counsel in the lead up to the mediation, the conducting of the mediation, and the negotiation and finalization of the settlement documents filed in the case. Class Counsel has also been responsive to the needs of Settlement Class Members and have returned all inquiries promptly.

24.     Class Counsel estimates that an additional $10,000-$15,000 in attorney time will be needed to finalize the Settlement, which includes reviewing and completing the confirmatory discovery process. And, of course, Class Counsel took on this case on a contingent fee basis.

25.     Additionally, it is worth noting that Settlement Class Counsel has prosecuted this matter on a contingency basis. (At the risk of receiving nothing in return, Class Counsel initiated and diligently prosecuted this case, investing substantial time and resources. Moreover, the significant work on this case prevented the attorneys at my firm from working on other matters.)

26.     Furthermore, Settlement Class Counsel's hourly rates are reasonable. Settlement Class Counsel's rates are comparable to those charged to private clients and have been approved by various courts. *See Couch v. Southwest Airlines Co*., 3:15-cv-00367-N (N.D. Tex. 2016) (*Couch* Dkt. 43) (approving Woodrow & Peluso's 2016 rates of $430 (for Woodrow) and $330 (for Peluso)); *see also Wigod v. Wells Fargo Bank, N.A*., Case No: 1:10-cv-2348 (N.D. Ill. 2014) (Bucklo, J.) (Wigod Dkt. 278) (approving hourly rate of $570 for attorney Woodrow in 2014); *see also Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK (N.D. Cal.) (*Schulken* Dkt. 223) (Koh J.) (approving attorney Woodrow's former hourly rate of $500 in 2012).

***Class Counsel's Out of Pocket Expenses***

27.     In addition to expending time on the case, Class Counsel incurred certain out-of-pocket expenses. These charges include our filing fees, service of process, the mediation, travel to San Francisco for the mediation and to San Jose for the motion to dismiss, preliminary approval, and final approval hearings, and related expenses. Class Counsel's expenses in this matter total $9,539.28.

28.     Having review the expenses, I attest that they are necessary and reasonable and were incurred as a result of the demands imposed by the litigation. None of the expenses are for lavish accommodations or for unnecessary items. Further, we expended monies for these items without any guarantee of payment. As such, the Court should approve the requested expenses of $9,539.28. (*See* Expense Report, attached hereto as Exhibit 1.)

*Proposed Class Counsel's Opinion of the Settlement Agreement*

29.     The terms of the Settlement Agreement are unquestionably strong when viewed against other TCPA settlements reached to date. The per-unit monetary amounts are projected to far exceed the amounts recovered in such settlements. My firm's research has revealed that typical TCPA settlement payouts vary considerably and depend on a multitude of factors, but that a range from $30 - $150 is typical.

30.     In this case, assuming projections hold, the per unit amount would be approximately $945.00, meaning No Consent Subclass members will receive $945.00 and Stop Subclass members will receive $4,725.00, with members of both Subclasses received $5,670.00. Even lower amounts would still represent meaningful relief to the Settlement Class Members.

31.     The strength of the Settlement is most evident when viewed in light of Telenav's potential alleged defenses.

32.     Even if Plaintiff were to overcome these defenses and certify the class in an adversarial setting, both certification and judgment would be subject to appeals, motions for re-hearing, and additional delays.

33.     My firm, along with co-counsel Stefan Coleman of the Law Offices of Stefan Coleman, P.A., have extensive experience litigating TCPA class actions and have devoted substantial resources to the present litigation and will continue to do so throughout its pendency. (*See* Class Counsel's Firm Resumes, attached hereto as Exhibits 2 and 3.) Our local counsel was also instrumental. (*See* Local Counsel's Firm Resume, attached hereto as Exhibit 4.) As such, we support this Settlement as being fair, reasonable, and adequate and in the best interest of the Settlement Class.


Further affiant sayeth not.

Signed this 2nd day of August 2018 in Denver, Colorado.

/s/ Steven L. Woodrow
Steven L. Woodrow

# Exhibit 1

# Woodrow & Peluso LLC
## Expense Report Telenav

| Type of Expense | Amount | |
| --- | --- | --- |
| Pro Hac Vice Fee - Steven L. Woodrow | $ | 305.00 |
| Pro Hac Vice Fee - Patrick H. Peluso | $ | 305.00 |
| Pro Hac Vice Fee - Stefan Coleman | $ | 305.00 |
| Flights to/from SF for Mediation | $ | 1,193.88 |
| Hotel Costs in SF for Mediation | $ | 625.86 |
| Parking Costs at DIA | $ | 96.00 |
| Arbitration Costs | $ | 4,450.00 |
| Filing Fee | $ | 400.00 |
| Subpoena Fee US Cellular | $ | 695.00 |
| Delivery Fee to US Cellular Re: Subpoena | $ | 41.01 |
| Supplies to Compile Chamber's Copy Re: Prelim. Approval | $ | 11.86 |
| Shipping Costs for Chamber's Copy Re: Prelim. Approval | $ | 25.81 |
| Flights to/from San Jose for MTD Hearing | $ | 394.96 |
| Hotel Costs in San Jose for MTD Hearing | $ | 218.73 |
| Meals in San Jose for MTD Hearing | $ | 60.29 |
| Parking Costs at DIA - MTD Hearing | $ | 45.00 |
| Flights to/from San Jose for Prelim. Approval Hearing | $ | 256.96 |
| Parking Costs at DIA - Prelim. Approval | $ | 25.00 |
| Inflight Wifi - Prelim. Approval | $ | 10.00 |
| San Jose Taxi Services - Prelim. Approval | $ | 25.00 |
| Meals in San Jose for Prelim. Approval Hearing | $ | 48.92 |
| **Total** | $ | 9,539.28 |

# Exhibit 2

<u>WOODROW & PELUSO, LLC FIRM RESUME</u>

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

OUR PRACTICE AREAS

## 1.    CONSUMER CLASS ACTIONS

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

**TCPA Class Actions**

Woodrow & Peluso attorneys have successfully litigated and settled numerous class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including Rita's Italian Ice, Global Marketing Research Services, LKQ Corporation, J.B. Hunt, Altisource, Acurian, Price Self Storage, Local Lighthouse, Geekatoo, and the University of South Carolina, among others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice to residential landline phones, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

Notable TCPA cases and settlements include:

• *Wendell H. Stone & Co. v. LKQ Corporation*, 16-cv-07648 (N.D. Ill) (Kennelly, J.) (granting final approval to all-in, non-reversionary, settlement fund of $3,266,500) (final approval granted May 16, 2017).

• *Martin et al. v. Global Marketing Research Services, Inc.*, 6:14-cv-1290-ORL-31-KRS (M.D. FL) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in settlement creating $10 million fund for class of 688,500 cellphone users) (final approval

granted November 4, 2016);

• *Mendez v. Price Self Storage Management, Inc.*, 3:15-cv-02077-AJB-JLB (S.D. CA) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in TCPA settlement providing option of $750 cash or $1,100 in storage certificates) (final approval granted August 23, 2016);

• *Sherry Brown and Ericka Newby v. Rita's Water Ice Franchise Company, LLC*, 2:15-cv-03509-TJS (E.D. PA) ("all in" non-reversionary $3,000,000 settlement fund for text messages) (final approval granted March 20, 2017);

• *Morris et al v. SolarCity, Inc.* 3:15-cv-05107 (N.D. CA) (JPA with counsel on $15 million common fund TCPA settlement).

Further, while a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al.* (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

**FCRA Class Actions**

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, Freeman Webb, Inc., and others. This includes *Woodford v. World Emblem* 1:15-cv-02983-ELR, an FCRA settlement providing between $315 and $400 to claimants (final approval granted January 23, 2017).

**Banking and Financial Institutions Class Actions**

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

• *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A.* 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

### General Consumer Protection Class Actions

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1-718 *et seq*., which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets. The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates and are presently engaged in litigation against Southwest Airlines related to its "Companion Pass" program.

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated

"bitcoins." Woodrow & Peluso also brought the first class action in Colorado against cannabis growers for their use of unapproved and harmful pesticides.

## 2.    COMMERCIAL LITIGATION

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small to medium-sized businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfers. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial.

## 3.    APPEALS

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case was reversed on writ of certiorari to the United States Supreme Court (argued by different attorneys).

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq*.

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act,

6-1-701 *et seq*. does not allow for class actions. Case settled prior to the resolution of the appeal.

OUR ATTORNEYS

At present, our firm consists of 3 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a federal appeal upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators. The case and the Supreme Court decision that ultimately reversed it (and now the Ninth Circuit's decision to re-affirm its prior finding of Article III standing) present some of the most widely-litigated issues in class action practice today.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed lead settlement class counsel in other HELOC suspension litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc*.

Steven has also served as an Adjunct Professor of Law at the Illinois Institute of Technology Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, Steven was a partner at prominent class action technology firm in Chicago.

Before that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

**EDUCATION**
Chicago-Kent College of Law, J.D., High Honors, 2005

The University of Michigan-Ann Arbor, B.A, Political Science, with Distinction, 2002

**ADMISSIONS**
State of Illinois (2005)
State of Colorado (2011)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, Northern District of Illinois
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan
United States District Court, District of New Mexico

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force law-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and moxie to achieve excellent results for the people he represents. He has experience working with a broad range of consumer protection laws including the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and various state consumer protection and consumer fraud statutes.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of an academic journal. During law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal department of a publicly traded corporation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D. 2014
New York University, B.S.

**ADMISSIONS**
State of Colorado (2014)
United States District Court, District of Colorado
United States District Court, District of New Mexico
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois
United States District Court, Western District of Wisconsin

**TAYLOR TRUE SMITH** focuses his practice on consumer class actions.

Throughout his life and career, Taylor has developed a passion for consumer advocacy. By pursuing class actions on behalf of consumers, Taylor can give consumers not just a voice but also a seat at the bargaining table.

Taylor received his law degree from the Creighton University School of Law. During law school, he interned with the South Dakota Supreme Court. Prior to beginning law school, Taylor attended South Dakota State University where he earned a B.S. in Economics.

Taylor was raised in Fort Pierre, South Dakota and currently resides in Denver, Colorado.

Education
Creighton University School of Law, J.D. *Cum Laude* 2017
South Dakota State University, B.S. *Magna Cum Laude* 2013

Admissions
State of Colorado (2017)
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois

# Exhibit 3

LAW OFFICES OF

# STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

PHONE (877) 333-9427 | FAX (888) 498-8946
EMAIL: LAW@STEFANCOLEMAN.COM

NEW YORK | NEW JERSEY | FLORIDA
WEB: CLASSACTION.WS

The Law Firm Resume

**The Law Offices of Stefan Coleman** is a dynamic law firm that concentrates its practice on consumer law and technology. The core of the law firm is based on an in-depth knowledge of an ever-evolving technology and its impact on the law. Specifically, the firm has devoted much of its practice to protecting consumer's privacy rights as well as protecting consumer's from product defects and false advertisements. The firm also works on behalf of companies to alert them to the most recent changes and evolutions in the law as it applies to their industry as well as litigating class action cases. The firm has participated in a number of significant class actions on behalf of consumers.

Stefan Coleman, Esq. is a graduate of the University of Virginia and the University of Miami School of Law. He has practiced law for over ten years in which time he has participated in a number of significant class actions on behalf of consumers. The following is a brief list of some of the class actions that he has participated in.

*Love v. IdeaVillage Products Corp et al*, a consumer class action in which certain purchasers could recover a full refund for their purchase of an alleged defective product sold by the defendant. This case resulted in the defendant changing its business practice.

*Xexo v. iRenew Bio Energy Solutions et al*, a consumer class action in which purchasers of the iRenew bracelet recovered for the alleged false advertising by the defendant.

*In re Jiffy Lube*, a Telephone Consumer Protection Act case that resulted in a $35 million recovery for consumers for the unsolicited text message advertising. Several major issues of law were settled in this case resulting in a massive victory for consumers.

*Pimental v. Google Inc*., a Telephone Consumer Protection Act case that resulted in a $6 million settlement for consumers who received a text message from Google's Slide app.

*Woodman v. ADP Dealer Services, Inc*., et al., a Telephone Consumer Protection Act case that resulted in a $7.5 million settlement for consumers who received unsolicited text messages promoting car sales.

*Lanza v. Palm Beach Holdings*., et al., a Telephone Consumer Protection Act case that resulted in a $6.5 million settlement for consumers who received unsolicited text messages.

*Kolinek v Walgreen, Co*. a Telephone Consumer Protection Act case that resulted in an $11 million settlement for consumers who received unsolicited calls to their cell phone.

LAW OFFICES OF
STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28ᵗʰ Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

*Hopwood v. Nuance Communications., et al.*, a Telephone Consumer Protection Act case that resulted in a $9.24 million settlement for consumers who received unsolicited calls.

*Flanigan v. The Warranty Group, Inc. and American Protection Plans LLC d/b/a American Residential Warranty.*, a Telephone Consumer Protection Act case that resulted in a $16 million settlement for consumers who received unsolicited calls.

*Martin v. Global Marketing Research Services*, a Telephone Consumer Protection Act case that resulted in a $10 million fund for consumers who received unsolicited calls.

*Stone & Co., v. LKQ Corporation*, a Telephone Consumer Protection Act case that resulted in a $3.26 million fund for consumers who received a fax from the defendant.

# Exhibit 4



T  510.836.4200          410 12th Street, Suite 250          www.lozeaudrury.com
F  510.836.4205          Oakland, Ca 94607                  rebecca@lozeaudrury.com

### Lozeau Drury LLP Law Firm Resume

Lozeau Drury LLP ("Lozeau Drury" or "firm") is a plaintiff's environmental firm based in Oakland, California.  The firm represents non-profit environmental and recreational groups, labor organizations, neighborhood associations, and Indian tribes in their efforts to create and protect livable neighborhoods and cities, clean up air and water pollution, protect endangered species, protect open spaces, reduce exposures to toxic pollutants, and create clean, safe jobs.

Partners Richard Drury and Michael Lozeau have spent over two decades creating and implementing cutting edge strategies that have given their clients to the tools to effectively address some of California's most intractable pollution problems and go head-to-head with some of the state's most powerful adversaries, including oil refineries, timber companies, federal and state agencies, and big developers.

### Lozeau Drury Attorneys

**Michael Lozeau**

Michael Lozeau has been practicing environmental law in the San Francisco Bay area for over twenty years.  He graduated with honors from Rutgers Law School-Newark in 1989 where he helped establish the Rutgers Public Interest Law Foundation.  In 2003, the San Francisco Chronicle named Mr. Lozeau one of the Top 25 lawyers in the San Francisco Bay are.  He sits on the Board of Directors of the Golden Gate Audubon Society.

Mr. Lozeau has extensive experience representing public interest clients on matters involving the federal Clean Water Act.  He practices before federal and state courts as well as California's regional water quality control boards and the State Water Resources Control Board.  Mr. Lozeau also has handled cases involving numerous other statutes, including the federal Endangered Species Act, the California Endangered Species Act, CEQA, NEPA and the California Coastal Act.

From 1999 through the end of 2004, Mr. Lozeau was a staff attorney with the Earthjustice Environmental Law Clinic at Stanford and a Lecturer at Stanford Law School.  From 1994 to 1999, he served as the Executive Director of Waterkeepers Northern California and served as the San Francisco Baykeeper. Mr. Lozeau was a founding Board member of the Waterkeeper Alliance from 1997-2001 and served as the Alliance's Vice-President. Beginning in 1991, he maintained a solo practice in San Francisco, focusing on citizen enforcement cases and

served as San Francisco Baykeeper's legal counsel. His legal career began as an Associate Attorney with Earthjustice (then Sierra Club Legal Defense Fund) in their San Francisco office. Mr. Lozeau has a B.A. in Zoology from the University of New Hampshire.

Some of Mr. Lozeau's notable accomplishments include:

- Serving as lead counsel in precedent setting litigation to enforce the Department of Water Resources' duties under the California Endangered Species Act to protect listed fish in operating the State's massive Central Valley Project's Delta pumps.
- Representing the Committee To Save the Mokelumne in agency proceedings and state court that led to the clean-up of the New Penn mine by EBMUD and the Central Valley Regional Board;
- Serving as lead counsel on a precedent setting federal Clean Water Act case against the Pacific Lumber Company for discharging pollutants from its logging operations without a permit;
- While serving as the Executive Director of BayKeeper, developing and implementing a successful strategy to regulate water pollution from tens of thousands of Central Valley farms, including drafting legislation that terminated long-standing exemptions from California water quality law and advocacy for an effective regulatory program;
- Numerous actions enforcing the CWA's permitting and storm water pollution requirements;
- Representing several tribes and environmental organizations in federal court to help defeat a proposed low-level radioactive radioactive waste dump in Ward Valley, California.

**Richard Drury**

Richard Drury has been practicing environmental law in the San Francisco Bay area for over twenty years, and is one of the leading environmental lawyers in the State. He graduated with honors from the Yale Law School in 1990, and clerked for Chief Judge Thelton E. Henderson of the United States District Court for the Northern District of California.  Mr. Drury is one of the only attorneys ever named Attorney of the Year by the California Lawyer magazine three times, in 2002, 2009, and 2011.  In 2003, he received the prestigious Environmental Leadership Award from the Ecology Law Quarterly. He served on the Executive Committee of the Environmental Law Section of the California State Bar, and was co-chair of the State Bar's Environmental Law Conference in 2007, 2008, and 2009.

Mr. Drury has extensive experience representing non-profit organizations and labor unions in matters involving the California Environmental Quality Act (CEQA), the state and federal Clean Air Acts, Proposition 65, and many other environmental laws. He has litigated over fifty lawsuits in both state and federal court through trial, settlement, or other negotiated resolution. He has extensive experience in bringing labor unions and environmental organizations together to achieve common goals of securing clean, safe jobs and a better environment.

From 2003 through 2008, Mr. Drury was an attorney and then shareholder at Adams, Broadwell, Joseph & Cardozo. From 1993 through 2003, he was legal director of Communities for a Better Environment.  Prior to that time, he was an associate at the San Francisco environmental law firm of Shute, Mihaly & Weinberger.

Richard has published extensively on several environmental law topics, including notable articles on labor-environment collaborations. He published a chapter in the book, Common Law Remedies to Environmental Problems, and also authored a book on international law, Plowshares and Swords (Beacon Press).

Richard holds a B.S. degree in chemistry and a B.A. degree in philosophy from the University of Illinois, where he graduated Phi Beta Kappa, Magna Cum Laude. Mr. Drury has served as an adjunct professor of law at the University of California, Berkeley School of Law (Boalt Hall), Golden Gate University School of Law and New College Law School in San Francisco.  Mr. Drury has been voted by his peers to be a California "Super Lawyer" in 2008, 2009, 2010, and 2011, a designation limited to only the top 5% of lawyers in the State.

Some of Mr. Drury's notable accomplishments include:

- Successfully representing Communities for a Better Environment, the Southern California Pipe Trades District Council 16 and Local 250 in a lawsuit to require environmental review for a diesel project constructed at the ConocoPhillips refinery in Wilmington. The litigation resulted in a landmark Supreme Court decision that defined the CEQA environmental "baseline."
- Representing the California State Pipe Trades Council, the Sierra Club and other environmental organizations in a successful lawsuit to require environmental review prior to the approval of a new form of plastic pipe that posed a risk of leaching chemicals into drinking water;
- Representing Southern California Pipe Trades District Council 16 and Local 250, in collaboration with Communities for a Better Environment in a lawsuit to require environmental review for a diesel project constructed at the ConocoPhillips refinery in Wilmington;
- Representing Plumbers and Steamfitters Local 342, International Brotherhood of Electrical Workers Local 302, Boilermakers Local 549, other labor organizations, and environmental groups in an administrative action requiring ConocoPhillips to install advanced pollution control equipment at its Bay Area refinery;
- Representing Communities for a Better Environment in a successful lawsuit against over a dozen of the worlds' largest oil companies, including Chevron, Texaco, Shell, Unocal, ExxonMobil, and many others, that required those companies to clean up over 1000 contaminated sites throughout California;
- Representing Communities for a Better Environment in a lawsuit to require Unocal to clean up a massive underground oil spill in the town of Avila Beach, California at a cost estimated to exceed $100 million;

- Representing various environmental organizations in successful federal court lawsuits to require several Southern California oil companies including Chevron to use equipment to capture hazardous vapors released during oil tanker loading;
- Representing several labor unions in a successful campaign to require the Bay Area Air Quality Management District to adopt rules requiring oil companies to monitor and reduce "flaring" at their refineries.

**Douglas Chermak**

Douglas Chermak has practiced environmental law since 2007, with a focus on water quality and the Clean Water Act.  Prior to joining Lozeau Drury, Mr. Chermak practiced plaintiff's side civil rights and employment litigation with the Law Offices of Michael S. Sorgen.  Prior to that, he worked on capital cases at the Contra Costa Public Defender's office, volunteered as an attorney at the East Bay Community Law Center and consulted with the Center for Genetics and Society.  During law school, Mr. Chermak won the Ecology Law Quarterly Summer Fellowship and served as an intern at Communities for a Better Environment and the California Attorney General's Office.

From 2004 through 2012, Mr. Chermak also served as the Law Program Director for the Center for Contemplative Mind in Society, working to integrate meditation and contemplative practices with the legal profession.  In October 2010, he organized "The Mindful Lawyer" conference at UC Berkeley School of Law, the first national conference on the subject of law and meditation.

**Rebecca Davis**

Rebecca Davis has over eight years of experience working in environmental and energy law.  She has extensive experience representing clients involving the California Environmental Quality Act (CEQA), Proposition 65, and the Clean Water Act.  He has litigated dozens of lawsuits through trial, settlement, or other negotiated resolution.

Prior to joining Lozeau Drury, Ms. Davis practiced environmental law as an associate attorney at Paladin Law Group LLP where she focused on RCRA and CERCLA litigation.  She also worked as a Smart Grid Program Manager and Policy Analyst at the Clean Coalition, a non-profit organization working to accelerate the transition to renewable energy.

During law school, Ms. Davis served as a law clerk for Earthjustice and the Chicago Environmental Law Clinic.  Additionally, she helped protect consumers' rights in many national class action cases as a clerk for Edelson, LLC.

Ms. Davis graduated magna cum laude from Chicago-Kent College of Law in 2010 with a Certificate in Environmental and Energy Law, and received her undergraduate degree in Environmental Studies from the University of Oregon.