# EXHIBIT B

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TELENAV, INC., a Delaware corporation<br><br>Defendant. | Case No. 5:16-cv-4261-BLF<br><br>**DECLARATION OF ATTORNEY STEVEN L. WOODROW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Steven L. Woodrow, declare as follows:

1. I am over the age of eighteen (18), and am one of the attorneys for the plaintiff in this matter. I make this declaration in support of Plaintiff's Motion for Final Approval of the class action Settlement Agreement reached in the above captioned litigation.

2. I am able to competently testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge and based on facts learned before and during the litigation of this case.

**Class Counsel's *Pre-Suit Investigation and Early Litigation***

3. As explained in prior briefing and statements, prior to this lawsuit ever being filed, my firm conducted an extensive investigation into Telenav, Inc. ("Telenav" or "Defendant") and

DECLARATION OF ATTORNEY                   -1-                   CASE NO.: 5:16-CV-4261-BLF
STEVEN L. WOODROW

its text messaging activities. This investigation included an examination of publicly-available information to determine the scope of text messaging activity attributable to Telenav's Scout App, a geolocation application for Smart Phones. This included a review of applicable terms and conditions related information regarding the app. Through this investigation Class Counsel were able to gain a clearer picture of Telenav's Scout App and the text messages sent through the application by App users. Based on this information, coupled with the Scout App's failure to process Stop requests, we had a good faith basis for concluding that Telenav used an automated system—that likely met the statutory definition of an automatic telephone dialing system ("ATDS")—to make the calls at issue.

4. Through this investigation, our team of lawyers also interviewed Plaintiff Nathan Gergetz regarding his receipt of text messages from a Telenav number and his attempts to make the messages stop. This included a review of his experience with Telenav and the Scout App more generally.

5. Once this investigation was complete and we were satisfied internally that Plaintiff had likely received unlawful text messages, we drafted the pleadings in the case and filed the lawsuit on behalf of Gergetz and a nationwide class of similarly-situated cellphone users.

6. We thereafter obtained service and prepared to litigate the case.

*The Parties Commence Early Settlement Discussions*

7. Following the filing of the Complaint, Class Counsel were contacted by Joshua Masur of Turner Boyd LLP. Specifically, Mr. Masur and I engaged in initial discussions regarding each side's respective viewpoints, and we discussed the potential for resolving the case without protracted litigation. To facilitate ongoing discussions the parties agreed that Mr. Masur would gather information regarding the size and scope of the Class (broken down by subgroupings between people who were text messaged and those who received messages after responding Stop or with a similar command) that would aid in negotiations.

DECLARATION OF ATTORNEY STEVEN L. WOODROW -2- CASE NO.: 5:16-CV-4261-BLF

8. In or around October 2016, Mr. Masur withdrew as Telenav's counsel, and he was replaced by Tonia Ouellette Klausner and Peter Holm of Wilson Sonsini Goodrich & Rosati PC. Shortly thereafter, we engaged in frank discussions with Ms. Klausner and Mr. Holm regarding the size and scope of the litigation, including the size of the alleged classes and the technology utilized to make the text message calls in this case. Additionally, we discussed Telenav's potential defenses. These included Telenav's defense that it did not "make" the calls at issue in the case. That is, Telenav was prepared to argue that individual app users made the calls by setting up their individual Scout App accounts to send text messages to specific people. Telenav also was prepared to argue that its dialing platform shouldn't be considered an ATDS under the TCPA.

9. Following this exchange of information and discussions, counsel for both parties agreed to engage in a formal mediation session to determine if an early settlement could be obtained. Counsel for the Parties exchanged several names but ultimately settled on using Mr. John Bates of JAMS in San Francisco. Mr. Bates has extensive experience mediating complex cases (indeed, he has mediated several thousand matters over the course of his distinguished career, including numerous TCPA class actions). The mediation was attended by Class Counsel as well as by lawyers for both Telenav and Telenav's insurer and convened in San Francisco on July 7, 2017.

10. Throughout the mediation, both Parties continued to share updated information regarding the scope of the claims and the size of the class and additional information regarding their respective claims and defenses. The Parties also discussed settlement frameworks. The negotiations were hard-fought, so much so that notwithstanding these extensive and productive talks, the mediation session ended with the Parties unable to come to an agreement regarding the terms of the relief to be made available to the Settlement Class. Instead of settling, both Parties agreed to proceed forward with the previously scheduled hearing on Telenav's previously-filed Motion to Dismiss or Stay but to also continue discussing settlement.

DECLARATION OF ATTORNEY STEVEN L. WOODROW  -3-  CASE NO.: 5:16-CV-4261-BLF

11. One issue was that Plaintiff's counsel needed to understand Telenav's insurance. The Court ordered that such information be disclosed, and Telenav sent Class Counsel its insurance information in September 2017.

12. Meanwhile, and also in furtherance of continued settlement negotiations, the mediator, Mr. Bates, worked to keep on the case on a settlement track by engaging the Parties through a series of telephone negotiations.

13. Ultimately, with the help of Mr. Bates, the Parties reached an agreement in principal on the eve of the hearing scheduled on Telenav's Motion to Dismiss or Stay. Only after reaching an agreement in principal did the Parties discuss an amount for reasonable attorneys' fees and an incentive award for Gergetz.

14. The Parties thereafter reported the existence of a settlement in principal to the Court at the commencement of the hearing on the Motion to Dismiss.

15. As such, the Settlement Agreement was negotiated by a well-respected national mediator with substantial experience overseeing TCPA class action settlements who made certain that at all times the negotiations stayed professional and arm's-length. The result is a strong settlement—and a result that is demonstrably fair, reasonable, and adequate—that provides robust relief to the class members.

*The Parties Work to Obtain Preliminary Approval & Notice Is Issued to the Class*

16. Following the disclosure of the settlement in principal to the Court the Parties exchanged drafts of the Settlement Agreement and notice documents. Once the finer details of the Settlement Agreement and the notices were finalized and the agreement was executed, Class Counsel drafted the papers in support of Preliminary Approval.

17. I then traveled to San Jose for the Preliminary Approval Hearing held April 27, 2018. Following counsel's presentation, the Court granted preliminary approval to the Settlement. (Dkt. 68).

DECLARATION OF ATTORNEY STEVEN L. WOODROW  -4-  CASE NO.: 5:16-CV-4261-BLF

18. Since the Court's grant of preliminary approval on April 30, 2018 (Dkt. 70), Class Counsel and Telenav's attorneys have worked in tandem to implement the Settlement, which has included working with the Settlement Administrator to edit, finalize, and approve the Settlement Website, including the Q&A sections, interactive voice recording (IVR) messaging, and other settlement and notice materials.

19. Class Counsel has also communicated regularly with the Settlement Administrator regarding mailings, opt outs, and re-mailings.

20. Additionally, Class Counsel have also assisted Settlement Class Members who have contacted their offices with questions regarding the Settlement's terms and process. This has included assisting individuals with the filing of their claims.

21. Furthermore, shortly following the date the short form Notice was mailed out to the Settlement Class Members, the Parties began receiving weekly reports from the Settlement Administrator detailing the number of claims filed and processed. To ensure Class Member participation, Settlement Class Counsel's law firm obtained the list of cellphone numbers from the Settlement Administrator and began calling Settlement Class Members to inform them of their legal rights under the agreement. The Settlement Class Members who we were able to reach were frankly excited by the prospect of being able to file a claim.

*Response to the Settlement*

22. Indeed, following the dissemination of the Class Notice to the Settlement Class, my law firm received numerous calls from Settlement Class Members seeking additional information about the nature of the claims and the relief made available under the settlement agreement.

23. To date, no Settlement Class Members have elected to opt-out nor have any objected, signaling overwhelming satisfaction with the results.

**Class Counsel's Experience and Opinion of the Settlemen*t***

DECLARATION OF ATTORNEY STEVEN L. WOODROW            -5-            CASE NO.: 5:16-CV-4261-BLF

24. Class Counsel have significant experience prosecuting nationwide class actions against businesses for TCPA violations. We devote much of our practice to TCPA class actions and have experience litigating claims where consumers tried, but were unable, to exclude themselves. Class Counsels' Firm Resumes can be found at Dkt. 73-1.

24. Class Counsel are respected in the legal community and are aware of the most recent developments in this area of the law. It is our opinion that the terms of the settlement are unquestionably strong when viewed against other TCPA settlements reached to date. Settlement Class Members are projected to receive several hundred dollars each, and in some cases several thousand dollars.

25. The strength of the Settlement is most evident when viewed in light of Telenav's potential alleged defenses. Even if Plaintiff were to overcome these defenses and certify the class in an adversarial setting, both certification and judgment would be subject to appeals, motions for re-hearing, and additional delays.

26. My firm, along with co-counsel Stefan Coleman of the Law Offices of Stefan Coleman, P.A., have extensive experience litigating TCPA class actions and have devoted substantial resources to the present litigation and will continue to do so throughout its pendency. We support this Settlement as being fair, reasonable, and adequate and in the best interest of the Settlement Class.

Further affiant sayeth not.

Signed this 23rd day of August, 2018 in Denver, Colorado.

/s/ Steven L. Woodrow
Steven L. Woodrow

DECLARATION OF ATTORNEY
STEVEN L. WOODROW                    -6-                    CASE NO.: 5:16-CV-4261-BLF