# EXHIBIT D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATHAN GERGETZ, individually and on behalf of all others similarly situated, | CASE NO.: 5:16-cv-4261-BLF |
| Plaintiffs, | |
| v. | |
| TELENAV, INC., a Delaware corporation, | |
| Defendant. | |

## DECLARATION OF CAMERON R. AZARI, ESQ. ON IMPLEMENTATION AND ADEQUACY OF SETTLEMENT NOTICE PLAN

I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq.  I am over the age of twenty-one and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3.      I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq's Class Action & Claims Solutions, Inc. ("Epiq").

4.      Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  With experience in more than 400 cases, including more than 35 MDLs, notices prepared by Hilsoft have appeared in 53 languages with distribution in

almost every country, territory and dependency in the world.  Judges, including in published decisions, have recognized and approved numerous notice plans developed by Hilsoft, which decisions have always withstood collateral reviews by other courts and appellate challenges.

## EXPERIENCE RELEVANT TO THIS CASE

5.     I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many of the largest and most significant cases, including: *In re: Takata Airbag Products Liability Litigation (Settlements with – BMW, Mazda, Subaru, Toyota, Honda and Nissan)*, MDL No. 2599 (S.D. Fla.) ($1.2 billion in settlements regarding Takata airbags.  The monumental Notice Plans included individual mailed notice to more than 51.5 million potential Class Members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media.  Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle an average of 4.0 times each); *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.) (Comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email.  A targeted internet campaign further enhanced the notice effort); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.) (One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill.  Hilsoft designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and internet

notice effort that reached in excess of 90% of adults aged 18+ in the 26 identified DMAs[1] covering the Gulf Coast Areas an average of 5.5 times each); *Rose v. Bank of Am. Corp.*, Case No. 11-cv-02390-EJD (N.D. Cal.) (TCPA settlement with email and postcard notice to over 6.9 million Class Members and publication notice in *Parade Magazine* and other consumer publications); *In re: Energy Future Holdings Corp., et. al. (Asbestos Claims Bar Date Notice),* Case No. 14-10979 (CSS) (Bankr. D. Del.) (Large asbestos bar date notice effort, which included individual notice, national consumer publications and newspapers, hundreds of local newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience); *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) ($7.2 billion settlement reached with Visa and MasterCard.  The intensive notice program involved over 19.8 million direct mail notices together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications, as well as online banner notices, which generated more than 770 million adult impressions and a case website in eight languages); *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.) (Dual landmark settlement notice programs to separate "Economic and Property Damages" and "Medical Benefits" settlement classes.  Notice effort included over 7,900 television spots, over 5,200 radio spots, and over 5,400 print insertions and reached over 95% of Gulf Coast residents); *In Re American Express Anti-Steering Rules Antitrust Litigation (II)* ("Italian Colors"), MDL No. 2221 (E.D.N.Y.) (Momentous injunctive settlement regarding

---

[1] DMA or Designated Market Area is a "term used by Nielsen Media Research to identify an exclusive geographic area of counties in which the home market television stations hold a dominance of total hours viewed.  There are 210 DMA's in the US. Nielsen Media Research, Glossary of Media Terms, http://www.nielsenmedia.com/glossary/.

merchant payment card processing.  Notice program provided individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspaper in each of the U.S. territories and possessions); *In Re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.) (Multiple bank settlements between 2010-2017 involving direct mail and email to millions of class members and publication in relevant local newspapers.  Representative banks include, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, Community Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, Bancorp, Whitney Bank, Associated Bank, and Susquehanna Bank); *In re Residential Schools Class Action Litigation*, (Canada) (Five phase notice program for the landmark settlement between the Canadian government and Aboriginal former students.  Phase V of the notice program was implemented during 2014); and *In re Department of Veterans Affairs (VA) Data Theft Litigation*, MDL No. 1796 (D.D.C.) (Notices appeared across the country in newspapers, consumer magazines, and specialty publications with a total circulation exceeding 76 million).

6.    Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances.  For example:

a)    *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer on May 17, 2017:

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice*

*"apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

b)      *In re: Caterpillar, Inc., C13 and C15 Engine Products Liability Litigation*,

MDL No. 2540 (D.N.J.), Judge Jerome B. Simadle on September 20, 2016:

*The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.*

c)      *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.,* Case No.

14-23120 (S.D. Fla.), Judge Marcia G. Cooke on April 11, 2016:

*Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.*

d)      *Adkins v. Nestle Purina PetCare Company, et al.,* Case No. 12-cv-2871

(N.D. Ill.), Judge Robert W. Gettleman on June 23, 2015:

*Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain*

*additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

  e)  *Gulbankian et al. v. MW Manufacturers, Inc.,* Case No. 1:10-cv-10392-

RWZ (D. Mass.), Judge Rya W. Zobel on December 29, 2014:

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

  f)  *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* Case

Nos. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.), Judge Edward J. Davila on

August 29, 2014:

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

  g)  *Wong et al. v. Alacer Corp.,* Case No. CGC-12-519221 (Cal. Super. Ct.),

Judge James A. Robertson, II on June 27, 2014:

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

h)     *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-cv-03800 (E.D.N.Y.), Judge John Gleeson stated on December 13, 2013:

*The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards... The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

i)     *Marolda v. Symantec Corporation*, Case No. 08-cv-05701 (N.D. Cal.), Judge Edward M. Chen stated on April 5, 2013:

*Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*

j)     *In Re: Zurn Pex Plumbing Products Liability Litigation*, Case No. 08-cv-01958 (D. Minn.), Judge Ann D. Montgomery stated on February 27, 2013:

*The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.  The notice plan's multi-faceted approach to providing notice to settlement class members whose identity*

*is not known to the settling parties constitutes" the best notice that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

k)   *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of*

*Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.), Judge Carl J. Barbier stated on

January 11, 2013:

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

> *The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

> *The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

l)   In *Schulte v. Fifth Third Bank*, Case No. 1:09-cv-6655 (N.D. Ill.), Judge

Robert M. Dow, Jr. stated on July 29, 2011:

> *The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

m)   *In re: Heartland Payment Systems, Inc. Customer Data Security Breach*

*Litigation*, MDL No. 09-2046 (S.D. Tex.), Judge Lee Rosenthal stated on March 2, 2012:

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197 (internal quotation marks omitted).*

7.      Numerous other court opinions and comments as to our testimony, and opinions on the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**.

8.      In forming my expert opinions, I and my staff draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time.  Prior to assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have over 18 years of experience in the design and implementation of legal notification and claims administration programs having been personally involved in well over one hundred successful notice programs.  I have been directly and personally responsible for designing all of the notice planning here, including analysis of the individual notice options and the media audience data and determining the most effective

mixture of media required to reach the greatest practicable number of Settlement Class Members. In my experience, the reach and frequency of the Notice Plan media effort as designed and implemented, met due process requirements.

9.     The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Hilsoft and Epiq, who worked with us to implement the notification effort.

<u>**OVERVIEW**</u>

10.    In *Gergetz v. Telenav, Inc.*, Case No. 5:16-cv-4261-BLF (United States District Court for the Northern District of California, San Jose Division), my colleagues and I were asked to design the Notice Program (or "Notice Plan") to inform Settlement Class Members about their rights under the Settlement.

11.    On April 30, 2018, the Court approved the Notice Plan as designed by Hilsoft and appointed Epiq as the Settlement Administrator in the Order Granting Preliminary Approval of Class Action Settlement ("Order").  In the Order, the Court certified the following Subclasses defined as:

The "No Consent Subclass": All persons in the United States who during the Class Period received at least one Download the Scout App Text Message; and/or

The "Stop Subclass": All persons in the United States who during the Class Period received at least one additional message other than a message confirming an opt out request, after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE to any text message received from any Telenav Number.

12.    After the Court's preliminary approval of the Settlement, we began to implement the Notice Program.  This declaration will detail the successful implementation of the Notice

Program and document the completion of the notice activities to date.  The declaration will also discuss the administration activity to date.

13.     To date, the Notice Plan has been implemented as ordered by the Court, including dissemination of individual notice to potential Settlement Class Members via postal mail and email, and publication of the Notice on highly trafficked websites.  A Settlement Website provided additional notice exposures.

14.     The combined measurable effort alone reached[2] approximately 79.1% of the overall Settlement Class with direct mail and email, and internet banner ads.  Not reflected in the calculable reach and average frequency of exposures is the addition of the Settlement Website. In my experience, the reach and frequency of the Notice Plan meets that of other court-approved notice programs, and was designed to meet due process requirements.  In my opinion, the Notice Plan was the best notice practicable under the circumstances of this case and satisfied the requirements of due process, including its "desire to actually inform" requirement.[3]

## NOTICE PLAN DETAIL

### *Individual Notice – Mail*

15.     On April 27, 2018, Epiq received one data file ("Telenav Lists"), which contained 204,653 total phone number records (2,156 phone numbers in the "Stop Subclass" and 202,497 phone numbers in the "No Consent Subclass").  The records were sent to a third-party (PacificEast) to perform "reverse look-ups."  The reverse look-ups process is used to identify

---

[2] Reach is defined as the percentage of a class exposed to notice, net of any duplication among people who may have been exposed more than once.  Notice exposure is defined as the opportunity to see a notice.

[3] "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ."  *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950).

whether an available associated physical address exists for each cell phone number, which resulted in 145,984 valid physical addresses. PacificEast then performed a second search to determine the best current email address for each record where there was a valid physical address, which resulted in 124,830 valid email addresses. For those records for which the reverse look-up process successfully identified an email address, a Summary Notice was emailed and for those records for which the reverse look-up process successfully identified a physical address, a Summary Postcard Notice was also mailed. Potential Settlement Class Members with more than one affected phone number were identified so they only received one mailed or emailed Summary Notice. The individual notice effort detailed below reached approximately 95.5% of the identifiable Settlement Subclasses and 79.1% of the overall Settlement Subclasses.

16.    Prior to mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[4] Any addresses that were returned by the NCOA database as invalid were updated through a third-party address search service. In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

17.    On May 30, 2018, Epiq mailed 145,984 Summary Postcard Notices via USPS first class mail to potential Settlement Class Members. Each notice was a two image 4.25" x 5.5"

---

[4] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

Summary Postcard Notice.  A copy of the Summary Postcard Notice as printed and mailed is included as **Attachment 2**.

18.    Additionally, a Notice Packet (Long Form Notice and Claim Form) was mailed via USPS first class mail to all persons who requested one via the toll-free phone number.  As of August 21, 2018, 140 Notice Packets have been mailed as a result of such requests.  A copy of the Notice Packet as printed and mailed is included as **Attachment 3**.

19.    The return address on the Notices is a post office box maintained by Epiq.  As of August 21, 2018, Epiq has re-mailed 2,636 Summary Postcard Notices for addresses that were corrected through the USPS.  For Summary Postcard Notices that were returned as undeliverable, Epiq undertook additional public record research, using a third-party lookup service ("ALLFIND", maintained by LexisNexis), which as of August 21, 2018, has resulted in the re-mailing of 10,264 Summary Postcard Notices.  Address updating and re-mailing for undeliverable Summary Postcard Notices is ongoing and will continue through the Final Approval Hearing.

### *Individual Notice – Email*

20.    On May 30, 2018, Epiq disseminated 124,830 Summary Email Notices to all potential Settlement Class Members for whom a facially valid email address was available.  The Summary Email Notice was created using an embedded html text format.  This format provided easy to read text without graphics, tables, images and other elements to decrease the likelihood that the message would be blocked by Internet Service Providers (ISPs) and/or SPAM filters.  Each Summary Email Notice was transmitted with a unique message identifier.  If the receiving e-mail server could not deliver the message, a "bounce code" was returned along with the unique message identifier.  For any Summary Email Notice for which a bounce code was received

indicating that the message was undeliverable, at least two additional attempts were made to deliver the Notice by email.

21. The Summary E-mail Notice included an embedded link to the Settlement Website. By clicking the link, recipients are able to easily access the Long Form Notice in English or Spanish, Settlement Agreement, Claim Form and other information about the settlement. The Summary Email Notice is included as **Attachment 4**.

22. As of August 21, 2018, Epiq has emailed and mailed Notices to 145,984 unique potential Settlement Class Members, with notice to 6,460 unique, potential Settlement Class Members currently known to be undeliverable. In my experience, this approximate 95.5% deliverable rate to identified likely Class Members exceeds the expected range and is indicative of the extensive address research, updating and re-mailing protocols used.

### Internet Banner Notices

23. Internet Banner Notices measuring 728 x 90 pixels and 300 x 250 pixels were placed on the online network: *Google Ad Network*. Banner Notices measuring 254 x 133 pixels were also placed on *Facebook*.

24. Combined, approximately 204 million adult impressions were generated by the Internet Banner Notice, which ran from May 30, 2018 to June 30, 2018. Clicking on the banner linked the reader to the Settlement Website where they could obtain information about the Settlement. Examples of the Banner Notices are included as **Attachment 5**.

### Settlement Website

25. On May 21, 2018, a neutral, informational, Settlement Website (www.TelenavTCPASettlement.com) was established to enable potential Settlement Class

Members to obtain additional information and documents including the Long Form Notice in English and Spanish, Settlement Agreement, Claim Form, Complaint and answers to frequently asked questions.  Settlement Class Members are able to submit a Claim via the Settlement Website.  A copy of the Long Form Notice and the Postcard Notice both in Spanish, as included on the Settlement Website are included as **Attachment 6**.

26.    The Settlement Website address was prominently displayed in all printed notice documents.  The Banner Notices linked directly to the Settlement Website.

27.    As of August 21, 2018, there have been 120,428 unique visitors to the Settlement Website and over 260,253 website pages presented.

*Toll-free Telephone Number and Postal Mailing Address*

28.    On May 21, 2018, a toll-free phone number (1-877-646-9240) was established to allow potential Settlement Class Members to call and request that a Long Form Notice and Claim Form be mailed to them.  The toll-free number also provides potential Settlement Class Members with access to recorded information that includes answers to frequently-asked questions and directs them to the Settlement Website.  This automated phone system is available 24 hours per day, 7 days per week.  As of August 21, 2018, the toll-free number has handled 283 calls representing 1,696 minutes of use.

29.    A post office box was established to allow potential Settlement Class Members to contact the settlement administrator by mail with any specific requests or questions.

*Exclusions and Objections*

30.     The exclusion deadline was August 16, 2018.  As of August 21, 2018, Epiq has received no requests for exclusion from the Settlement Subclasses.  I am aware of no objections to the Settlement at the time of this declaration.

## PERFORMANCE OF THE NOTICE PROGRAM

*Reach & Frequency*

31.     Using standard advertising media industry methodologies to calculate the overlap inherent in exposures to the direct mail and email, and internet banner ads we arrive at a combined measurable reach of approximately 79.1% of the overall Settlement Subclasses. Reach was enhanced further by the Settlement Website.

32.     Many courts have accepted and understood that a 75 or 80 percent reach is more than adequate.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70– 95%."[5]   Here we were able to develop a Notice Plan that reached well within this range (approximately 79.1%) that was broad in scope and was designed to reach the greatest practicable number of Settlement Class Members.

---

[5] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

*Costs of Settlement Administration*

33.     The combined, approximate cost to implement the notice plan and handle the administration of claims to date for this Settlement is $215,901.60. This includes a cost of approximately $46,100 for the media Notice Plan (internet banners and associated professional services) and a cost of approximately $169,801.60 to implement email and mailed notice and for claims administration activity to date (claims processing, website/phone support and associated project management).

34.     It is anticipated that approximately $47,611.26 additional in settlement administration fees will be incurred to complete the settlement administration.

## <u>CONCLUSION</u>

35.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice program be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way.  All of these requirements were met in this case.

36.     Our notice effort followed the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

> A.  "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the

absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

    B. "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (citing *Mullane* at 314).

    37.    The Notice Program provided the best notice practicable under the circumstances of this case, conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the guidance for effective notice articulated in the Manual for Complex Litigation 4th.

    38.    As reported above, the Notice Plan effectively reached approximately 79.1% of the overall Settlement Subclasses. The Notice Plan schedule afforded enough time to provide full and proper notice to Settlement Class Members before any opt-out and objection deadlines.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on August 22, 2018.

Cameron R. Azari, Esq.

*© 2018 Hilsoft Notifications*

Attachment 1

# HILSOFT
# NOTIFICATIONS

Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters.  We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny.  For more than 23 years, Hilsoft Notifications' notice plans have been approved and upheld by courts.  Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.  Case examples include:

➢ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, and Nissan vehicles as part of $1.2 billion in settlements regarding Takata airbags.  The Notice Plans included individual mailed notice to more than 51.5 million potential Class Members and notice via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media.  Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each.  *In re: Takata Airbag Products Liability Litigation (OEMS – BMW, Mazda, Subaru, Toyota, Honda and Nissan)*, MDL No. 2599 (S.D. Fla.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email.  A targeted internet campaign further enhanced the notice effort.  *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.).

➢ Hilsoft designed and implemented an extensive settlement Notice Plan for a class period spanning more than 40 years for smokers of light cigarettes.  The Notice Plan delivered a measured reach of approximately 87.8% of Arkansas Adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas Adults 55+ with a frequency of 10.8 times.  Hispanic newspaper notice, an informational release, radio PSAs, sponsored search listings and a case website further enhanced reach.  *Miner v. Philip Morris USA, Inc.*, No. 60CV03-4661 (Ark. Cir.).

➢ One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill.  Hilsoft Notifications designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and Internet effort that reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

➢ Large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience.  *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Date Notice)*, 14-10979(CSS) (Bankr. D. Del.).

➢ Landmark $6.05 billion settlement reached by Visa and MasterCard.  The intensive notice program involved over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a case website in eight languages, and acquisition of sponsored search listings to facilitate locating the website.  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.).

➢ BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action in U.S. history.  Hilsoft Notifications drafted and opined on all forms of notice.  The 2012 notice program designed by Hilsoft reached at least 95% Gulf Coast region adults via television, radio, newspapers, consumer publications, trade journals, digital media and individual notice.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.).

➢ Momentous injunctive settlement reached by American Express regarding merchant payment card processing.  The notice program provided extensive individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspapers in each of the U.S. territories and possessions.  *In re American Express Anti-Steering Rules Antitrust Litigation (II),* MDL No. 2221 (E.D.N.Y.) ("Italian Colors").

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank.  For related settlements, Hilsoft Notifications has developed programs that integrate individual notice and paid media efforts.  PNC, Citizens, TD Bank, Fifth Third, Harris Bank M&I, Comerica Bank, Susquehanna Bank, Capital One, M&T Bank and Synovus are among the more than 20 banks that have retained Hilsoft.  *In re Checking Account Overdraft Litigation,* MDL No. 2036 (S.D. Fla.).

➢ Possibly the largest data breach in U.S. history with approximately 130 million credit and debit card numbers stolen.  *In re Heartland Data Security Breach Litigation,* MDL No. 2046 (S.D. Tex.)

➢ Largest and most complex class action in Canadian history.  Designed and implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar settlement.  *In re Residential Schools Class Action Litigation,* 00-CV-192059 CPA (Ont. Super. Ct.).

➢ Extensive point of sale notice program of a settlement providing payments up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period.  *Vereen v. Lowe's Home Centers,* SU10-CV-2267B (Ga. Super. Ct.).

➢ Largest discretionary class action notice campaign involving virtually every adult in the U.S. for the settlement.  *In re Trans Union Corp. Privacy Litigation,* MDL No. 1350 (N.D. Ill.).

➢ Most complex national data theft class action settlement involving millions of class members.  *Lockwood v. Certegy Check Services, Inc.,* 8:07-cv-1434-T-23TGW (M.D. Fla.).

➢ Largest combined U.S. and Canadian retail consumer security breach notice program.  *In re TJX Companies, Inc., Customer Data Security Breach Litigation,* MDL No. 1838 (D. Mass.).

➢ Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation,* MDL No. 1539 (D. Md.).

➢ Most complex worldwide notice program in history.  Designed and implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages for $1.25 billion settlement.  *In re Holocaust Victims Assets,* "Swiss Banks", No. CV-96-4849 (E.D.N.Y.).

➢ Largest U.S. claim program to date.  Designed and implemented a notice campaign for the $10 billion program.  *Tobacco Farmer Transition Program,* (U.S. Dept. of Ag.).

➢ Multi-national claims bar date notice to asbestos personal injury claimants.  Opposing notice expert's reach methodology challenge rejected by court.  *In re Babcock & Wilcox Co,* No. 00-10992 (E.D. La.).

 PORTLAND AREA OFFICE      10300 SW ALLEN BLVD      BEAVERTON, OR 97005      T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F      PHILADELPHIA, PA 1910   T 215-721-2120

2

**LEGAL NOTICING EXPERTS**

***Cameron Azari, Esq., Director of Legal Notice***
Cameron Azari, Esq. has more than 17 years of experience in the design and implementation of legal notification and claims administration programs.  He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, Heartland Payment Systems, In re: Checking Account Overdraft Litigation, Lowe's Home Centers, Department of Veterans Affairs (VA),* and *In re Residential Schools Class Action Litigation.*  He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness.  Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

***Lauran Schultz, Executive Director***
Lauran Schultz consults extensively with clients on notice adequacy and innovative legal notice programs.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration for the past seven years.  High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio.  Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies.  Lauran can be reached at lschultz@hilsoft.com.

**ARTICLES AND PRESENTATIONS**

➢ **Cameron Azari** Co-Author, "A Practical Guide to Chapter 11 Bankruptcy Publication Notice."  E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit.  Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise."  Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration."  PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs."  *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations."  PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments."  ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases."  HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.

 HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE        10300 SW ALLEN BLVD        BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F        PHILADELPHIA, PA 1910    T 215-721-2120

3

- **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

- **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

- **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

- **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

- **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

- **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

- **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

- **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

- **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

- **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

- **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan litigation group, Los Angeles, CA, 2005.

- **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

- **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

4

## JUDICIAL COMMENTS

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶24.)*

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (April 13, 2017) No. 8:15-cv-00061-JFB-FG3 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*

**Judge Yvonne Gonzalez Rogers,** *Bias v. Wells Fargo & Company, et al.* (April 13, 2017) No. 4:12-cv-00664-YGR (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc., et al* (December 14, 2016) No. 2:12-cv-02247 (D. Kan.) and *Gary, LLC v. Deffenbaugh Industries, Inc., et al* (December 14, 2016) No. 2:13-cv-2634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (December 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*

**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (November 21, 2016) No. 60CV03-4661 (Ark. Cir.):

*The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.*


HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

5

**Judge Eileen Bransten, *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation*** (October 13, 2016) No. 650562/2011 (Sup. Ct. N.Y.):

> *This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.*

**Judge Jerome B. Simandle, *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*** (September 20, 2016) MDL No. 2540 (D. N.J.):

> *The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.*

**Judge Marcia G. Cooke, *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.*** (April 11, 2016) No. 14-23120 (S.D. Fla.):

> *Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.*

**Judge Christopher S. Sontchi, *In re: Energy Future Holdings Corp, et al.,*** (July 30, 2015) 14-10979(CSS) (Bankr. D. Del.):

> *Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.*

**Judge David C. Norton, *In re: MI Windows and Doors Inc. Products Liability Litigation*** (July 22, 2015) MDL No. 2333, No. 2:12-mn-00001 (D. S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.
>
> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.



| | | | |
|---|---|---|---|
| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

6

**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) No. 12-cv-2871 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) No. 2:10-cv-01505-JCZ-KWR (E.D. La.) and No. 1:10-cv-22058-JLK (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.)

> The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).  This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so.  Azari Decl. ¶¶ 30-39.

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (December 29, 2014) No. 1:10-cv-10392-RWZ (D. Mass.):

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law.  The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances.  The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices.  Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (August 29, 2014) No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.):

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) No. CGC-12-519221 (Cal. Super. Ct.):

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order.  Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (December 13, 2013) No. 1:05-cv-03800 (E.D. NY.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications.  The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

7

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) No. 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (April 5, 2013) No. 08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . . The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process. Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications. These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (February 27, 2013) No. 0:08cv01958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan. The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*

> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [\*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (January 28, 2013) No. 3:10-cv-960 (D. Or.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing. Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement),* (January 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed. Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.) Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements). Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.) All notice documents were designed to be clear, substantive, and informative. (Id. ¶ 5.)*

> *The Court received no objections to the scope or content of the [Medical Benefits] Notice Program. (Azari Supp. Decl. ¶ 12.) The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort. Likewise, the Notice and Notice Plan satisfied the requirements of Due Process. The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

8

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Economic and Property Damages Settlement)*, (December 21, 2012) MDL No. 2179 (E.D. La.):

> The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.

> The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.

> The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.

**Judge Alonzo Harris, Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,** (August 17, 2012) No. 12-C-1599 (27th Jud. D. Ct. La.):

> Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.

**Judge James Lawrence King, In re Checking Account Overdraft Litigation (IBERIABANK),** (April 26, 2012) MDL No. 2036 (S.D. Fla):

> The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.


PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

9

**Judge Bobby Peters,** *Vereen v. Lowe's Home Centers,* (April 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

> *The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

> *The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal,** *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* (March 2, 2012) MDL No. 2046 (S.D. Tex.):

> *The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at \*23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates,** *Trombley v. National City Bank,* (December 1, 2011) 1:10-CV-00232 (D.D.C.)

> *The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank,* (July 29, 2011) No. 1:09-cv-6655 (N.D. Ill.):

> *The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) No. 11-C-3187-B (27th Jud. D. Ct. La.):

> *Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

10

**Judge Stefan R. Underhill, *Mathena v. Webster Bank, N.A.,*** (March 24, 2011) No. 3:10-cv-1448 (D. Conn.):

> *The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart, *Miller v. Basic Research, LLC,*** (September 2, 2010) No. 2:07-cv-871 (D. Utah):

> *Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans.  Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number.  Similar mixed media plans have been approved by other district courts post class certification.  The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi, *Pavlov v. Continental Casualty Co.,*** (October 7, 2009) No. 5:07cv2580 (N.D. Ohio):

> *As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims.  With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson, *In re Department of Veterans Affairs (VA) Data Theft Litigation,*** (September 23, 2009) MDL No. 1796 (D.D.C.):

> *The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances.  The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement.  Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

**Judge Lisa F. Chrystal, *Little v. Kia Motors America, Inc.,*** (August 27, 2009) No. UNN-L-0800-01 (N.J. Super. Ct.):

> *The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*

**Judge Barbara Crowder, *Dolen v. ABN AMRO Bank N.V.,*** (March 23, 2009) No. 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

> *The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights.  The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803.  That Notice Plan is approved and accepted.  This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted.  This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman, *In re Trans Union Corp.,*** (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> *The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…  Accordingly, all objections are hereby OVERRULED.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

11

**Judge Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.,* (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.*

**Judge William G. Young,** *In re TJX Companies,* (September 2, 2008) MDL No. 1838 (D. Mass.):

> *The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.,* (June 11, 2008) SACV-06-2235-PSG (PJWx) (C.D. Cal.):

> *…was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge Robert L. Wyatt,** *Gunderson v. AIG Claim Services, Inc.,* (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason,** *Palace v. DaimlerChrysler Corp.,* (May 29, 2008) No. 01-CH-13168 (Ill. Cir. Ct.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Kirk D. Johnson,** *Webb v. Liberty Mutual Ins. Co.,* (March 3, 2008) No. CV-2007-418-3 (Ark. Cir. Ct.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.,* (December 6, 2007) No. CV-2003-513 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable…The Forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

12

**Judge Kirk D. Johnson,** *Sweeten v. American Empire Insurance Co.,* (August 20, 2007) No. CV-2007-154-3 (Ark. Cir. Ct.):

> The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation.  It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.

**Judge Robert Wyatt**, *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> This is the final Order and Judgment regarding the fairness, reasonableness and adequacy.  And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.

**Judge Joe Griffin,** *Beasley v. The Reliable Life Insurance Co.,* (March 29, 2007) No. CV-2005-58-1 (Ark. Cir. Ct.):

> [T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process.  They are fair, reasonable, and adequate.  I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (March 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as amended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.

**Judge Anna J. Brown,** *Reynolds v. The Hartford Financial Services Group, Inc.,* (February 27, 2007) No. CV-01-1529-BR (D. Or):

> [T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class.  The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.

**Judge Kirk D. Johnson,** *Zarebski v. Hartford Insurance Company of the Midwest,* (February 13, 2007) No. CV-2006-409-3 (Ark. Cir. Ct.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class.  Accordingly, the Class Notice and Claim Form as disseminated are



PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE     1420 LOCUST ST 30 F     PHILADELPHIA, PA 1910     T 215-721-2120

13

*finally approved as fair, reasonable, and adequate notice under the circumstances.  The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** ***In re Vivendi Universal, S.A. Securities Litigation,*** 2007 WL 1490466, at *34 (S.D.N.Y.):

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries.  According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Samuel Conti,** ***Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,*** (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

*After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.*

**Judge Ivan L.R. Lemelle**, ***In re High Sulfur Content Gasoline Prods. Liability Litigation,*** (November 8, 2006) MDL No. 1632 (E.D. La.):

*This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities and "ERISA" Litigation,*** (November 2, 2006) MDL No. 1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district.  The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages.  The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Elaine E. Bucklo,** ***Carnegie v. Household International,*** (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions.  The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge Joe E. Griffin,** ***Beasley v. Hartford Insurance Company of the Midwest,*** (June 13, 2006) No. CV-2005-58-1 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.*



PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

14

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (April 19, 2006) No. 00C15234 (Or. Cir. Ct.):

> The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (January 6, 2006) MDL No. 1539 (D. Md.):

> I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litigation,* 437 F.Supp.2d 467, 472 (D. Md. 2006):

> The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances.  The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (December 19, 2005) No. CV-2002-952-2-3 (Ark. Cir. Ct.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times.  The Court finds that such notice constitutes the best notice practicable.

**Judge Michael J. O'Malley,** *Defrates v. Hollywood Entm't Corp.,* (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct.):

> [T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

15

**Judge Michael Canaday, *Morrow v. Conoco Inc.*,** (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

> *The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova, *Nichols v. SmithKline Beecham Corp.*,** (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas Combs, *Morris v. Liberty Mutual Fire Ins. Co.*,** (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable.  And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting.  In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin, *In re Serzone Products Liability Litigation*,** 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

> *The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans.  Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months.  Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns, *In re Luprori® Marketing and Sales Practice Litigation*,** (November 24, 2004) MDL No. 1430 (D. Mass.):

> *After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns, *In re Luprori® Marketing and Sales Practice Litigation*,** (November 23, 2004) MDL No. 1430 (D. Mass.):

> *I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr., *Mantzouris v. Scarritt Motor Group Inc.*,** (August 10, 2004) No. 8:03 CV- 0015-T-30 MSS (M.D. Fla.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

16

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.)**:**

> *The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

***Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,*** 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C. 2004):

> *Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation,* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> *The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (November 26, 2003) No. 02-08115 (Fla. Cir. Ct.):

> *Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

> *The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (November 18, 2003) No. 005532 (Cal. Super. Ct.):

> *As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

17

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

> *In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (November 27, 2002) No. 99-6209; *Walker v. Rite Aid Corp.,* No. 99-6210; and *Myers v. Rite Aid Corp.,* No. 01-2771 (Pa. Ct. C.P.):

> *The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (November 22, 2002) No. 13007 (Tenn. Ch.):

> *The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (November 14, 2002) No. 01-L-6 (Ill. Cir. Ct.):

> *Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

> *Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (September 3, 2002) No. 00 Civ. 5071-HB (S.D.N.Y.):

> *The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct.) ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

> *In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all*


PORTLAND AREA OFFICE          10300 SW ALLEN BLVD          BEAVERTON, OR 97005          T 503-597-7697
PHILADELPHIA AREA OFFICE      1420 LOCUST ST 30 F          PHILADELPHIA, PA 1910        T 215-721-2120

18

*the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.,*** (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

*The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.,*** (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases,*** (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct.):

*[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied.  I think it's amazing if you're really getting 80 percent coverage. That's very reassuring.  And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases,*** (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition.  The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

## LEGAL NOTICE CASES

Hilsoft Notifications has served as a notice expert for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| ***Andrews v. MCI (900 Number Litigation)*** | S.D. Ga., CV 191-175 |
| ***Harper v. MCI (900 Number Litigation)*** | S.D. Ga., CV 192-134 |
| ***In re Bausch & Lomb Contact Lens Litigation*** | N.D. Ala., 94-C-1144-WW |
| ***In re Ford Motor Co. Vehicle Paint Litigation*** | E.D. La., MDL No. 1063 |
| ***Castano v. Am. Tobacco*** | E.D. La., CV 94-1044 |
| ***Cox v. Shell Oil (Polybutylene Pipe Litigation)*** | Tenn. Ch., 18,844 |
| ***In re Amino Acid Lysine Antitrust Litigation*** | N.D. Ill., MDL No. 1083 |
| ***In re Dow Corning Corp. (Breast Implant Bankruptcy)*** | E.D. Mich., 95-20512-11-AJS |



PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

19

| | |
|---|---|
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Or. Cir. Ct., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts)* | Ill. Cir. Ct., 97-L-114 |
| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., 97-2-06368 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

20

| | |
|---|---|
| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks)* | E.D.N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042, 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. 87 B 20142, 87 B 20143, 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 302774 |



PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE     1420 LOCUST ST 30 F     PHILADELPHIA, PA 1910     T 215-721-2120

21

| | |
|---|---|
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, MID-L-8839-00 MT |
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., GIC 765441, GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

22

| | |
|---|---|
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Or. Circ. Ct., 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., 01-2-36007-8 SEA |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., 00-22876-JKF |

| | |
|---|---|
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., 01-2-24553-8 SEA |

| | |
|---|---|
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D Ohio, C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Or. Cir. Ct., 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., 98-C-2178 |



| | | | | |
|---|---|---|---|---|
| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE<br>PHILADELPHIA AREA OFFICE | 10300 SW ALLEN BLVD<br>1420 LOCUST ST 30 F | BEAVERTON, OR 97005<br>PHILADELPHIA, PA 1910 | T 503-597-7697<br>T 215-721-2120 |

25

| | |
|---|---|
| *Daniel v. AON Corp.* | Ill. Cir. Ct., 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., 1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, 1:06-CV-075-MHW |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., 03-2-33553-3-SEA |



HILSOFT NOTIFICATIONS     PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
                          PHILADELPHIA AREA OFFICE  1420 LOCUST ST 30 F      PHILADELPHIA, PA 1910     T 215-721-2120

26

| | |
|---|---|
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., C-05-04289-BZ |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Or., CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Ark. Cir. Ct., CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., 04-CV-1898 (ADL) |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 (TWT) |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., 05-05437-RBL |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., 05-CIV-21962 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

27

| | |
|---|---|
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc (Neurontin)* | C.P. Pa., 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., SACV06-2235-PSG |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., 8:07-cv-1434-T-23TGW |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 1350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., 2:06-CV-06234 (GEB) |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., 01-L-454 and 01-L-493 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

28

| | |
|---|---|
| **Pavlov v. CNA (Long Term Care Insurance)** | N.D. Ohio, 5:07cv2580 |
| **Steele v. Pergo( Flooring Products)** | D. Or., 07-CV-01493-BR |
| **Opelousas Trust Authority v. Summit Consulting** | 27th Jud. D. Ct. La., 07-C-3737-B |
| **Little v. Kia Motors America, Inc. (Braking Systems)** | N.J. Super. Ct., UNN-L-0800-01 |
| **Boone v. City of Philadelphia (Prisoner Strip Search)** | E.D. Pa., 05-CV-1851 |
| **In re Countrywide Customer Data Breach Litigation** | W.D. Ky., MDL No.1998 |
| **Miller v. Basic Research (Weight-loss Supplement)** | D. Utah, 2:07-cv-00871-TS |
| **Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)** | 14th Jud. D. Ct. La., 2004-002417 |
| **Weiner v. Snapple Beverage Corporation** | S.D.N.Y., 07-CV-08742 |
| **Holk v. Snapple Beverage Corporation** | D.N.J., 3:07-CV-03018-MJC-JJH |
| **Coyle v. Hornell Brewing Co. (Arizona Iced Tea)** | D.N.J., 08-CV-2797-JBS-JS |
| **In re Heartland Data Security Breach Litigation** | S.D. Tex., MDL No. 2046 |
| **Satterfield v. Simon & Schuster, Inc. (Text Messaging)** | N.D. Cal., 06-CV-2893 CW |
| **Schulte v. Fifth Third Bank (Overdraft Fees)** | N.D. Ill., 1:09-CV-06655 |
| **Trombley v. National City Bank (Overdraft Fees)** | D.D.C., 1:10-CV-00232 |
| **Vereen v. Lowe's Home Centers (Defective Drywall)** | Ga. Super. Ct., SU10-CV-2267B |
| **Mathena v. Webster Bank, N.A. (Overdraft Fees)** | D. Conn, 3:10-cv-01448 |
| **Delandro v. County of Allegheny (Prisoner Strip Search)** | W.D. Pa., 2:06-cv-00927 |
| **Gunderson v. F.A. Richard & Assocs., Inc. (First Health)** | 14th Jud. D. Ct. La., 2004-002417 |
| **Williams v. Hammerman & Gainer, Inc. (Hammerman)** | 27th Jud. D. Ct. La., 11-C-3187-B |
| **Williams v. Hammerman & Gainer, Inc. (Risk Management)** | 27th Jud. D. Ct. La., 11-C-3187-B |
| **Williams v. Hammerman & Gainer, Inc. (SIF Consultants)** | 27th Jud. D. Ct. La., 11-C-3187-B |
| **Gwiazdowski v. County of Chester (Prisoner Strip Search)** | E.D. Pa., 2:08cv4463 |
| **Williams v. S.I.F. Consultants (CorVel Corporation)** | 27th Jud. D. Ct. La., 09-C-5244-C |
| **Sachar v. Iberiabank Corporation (Overdraft Fees)** | S.D. Fla., MDL No. 2036 |
| **LaCour v. Whitney Bank (Overdraft Fees)** | M.D. Fla., 8:11cv1896 |
| **Lawson v. BancorpSouth (Overdraft Fees)** | W.D. Ark., 1:12cv1016 |
| **McKinley v. Great Western Bank (Overdraft Fees)** | S.D. Fla., MDL No. 2036 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

29

| | |
|---|---|
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Or., No. 3:10-cv-960 |
| *RBS v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Mosser v. TD Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa)* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La., 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., CV-11-4322294-00CP |



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

30

| | |
|---|---|
| *Yarger v. ING Bank* | D. Del., 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., 4:13-cv-00250-JMM |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., 3:12-cv-01405-RDM |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., 11-cv-02390-EJD |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221, MDL No. 2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., 11-cv-06700-JST |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., 2005-05453 |
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., 1:12-cv-02871 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |



| | | | | |
|---|---|---|---|---|
| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE<br>PHILADELPHIA AREA OFFICE | 10300 SW ALLEN BLVD<br>1420 LOCUST ST 30 F | BEAVERTON, OR 97005<br>PHILADELPHIA, PA 1910 | T 503-597-7697<br>T 215-721-2120 |

31

| | |
|---|---|
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., 42-cv-2012-900001.00 |
| *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., 14-10979(CSS) |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., 14-civ-5731 (WHP) |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., 13-C-3212 |
| *Ono v. Head Racquet Sports USA* | C.D.C.A., 2:13-cv-04222-FMO(AGRx) |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., 13-C-5380 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D. N.J., MDL No. 2540 |
| *In Re: Citrus Canker Litigation* | 11th Jud. Cir., Flo., No. 03-8255 CA 13 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., 2:12-cv-02247<br>D. Kan., 2:13-cv-2634 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | N.D. Fla., No. 1:10-cv-00090 |
| *Forgione v. Webster Bank N.A. (Overdraft Fees)* | Sup. Ct.Conn., X10-UWY-CV-12-6015956-S |
| *Small v. BOKF, N.A.* | D. Col., 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., 14-cv-23120-MGC |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch)* | N.D. Cal., MDL No. 2672 |
| *Hawkins v. First Tennessee Bank, N.A., et al. (Overdraft Fees)* | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al. (Data Breach)* | N.D. Ill., No. 1:15-cv-02228 |
| *Bias v. Wells Fargo & Company, et al. (Broker's Price Opinions)* | N.D. Cal., No 4:12-cv-00664-YGR |
| *Klug v. Watts Regulator Company (Product Liability)* | D. Neb., No. 8:15-cv-00061-JFB-FG3 |
| *Ratzlaff v. BOKF, NA d/b/a Bank of Oklahoma, et al. (Overdraft Fees)* | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Morton v. Greenbank (Overdraft Fees)* | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al. (FirstMerit Overdraft Fees)* | Ohio C.P., No. 11CV000090 |



HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE   10300 SW ALLEN BLVD    BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910   T 215-721-2120

32

| | |
|---|---|
| *Farnham v. Caribou Coffee Company, Inc. (TCPA)* | W.D. Wis., No. 16-cv-00295-WMC |
| *Gottlieb v. Citgo Petroleum Corporation (TCPA)* | S.D. Fla., No. 9:16-cv-81911 |
| *McKnight v. Uber Technologies, Inc.* | N.D. Cal., No 3:14-cv-05615-JST |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. GA., No. 2:16-cv-132-LGW-RSB. |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780(LTS) |
| *Callaway v. Mercedes-Benz USA, LLC (Seat Heaters)* | C.D. Cal., No 14-cv-02011 JVS |
| *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru, Toyota, Honda, and Nissan)* | S.D. Fla, MDL No. 2599 |

Hilsoft-cv-141


PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

Attachment 2

PO Box 2995
Portland, OR 97208-2995

PRESORTED
FIRST-CLASS MAIL
AUTO
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

LEGAL NOTICE

*Gergetz v. Telenav, Inc.*

Case No. 5:16-CV-4261-BLF

Northern District of California

**ATTENTION! If You Received
A Text Message on Your Cellular
Telephone from a Telenav Number
Your Rights May Be Affected by
a Class Action Settlement**

**Learn More At:**

**www.TelenavTCPASettlement.com**

Class Member ID: 8CE8B9A4B



1
1

seek leave to file a breach-of-class action lawsuit, *Fraczyk v. Telenav*, Case No. 16-cv-04261-BLF (N.D. Cal) alleging that Telenav sent text messages to cellphones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* that encouraged recipients to download the Scout mobile application to cellphone users who never provided prior express consent and that Telenav continued sending text messages to cellphone users who had responded with a "STOP" or similar command. Telenav denies the allegations. The Court has approved the Settlement, which could impact your rights whether you act or not. This is only a summary. Visit the website below for the full notice, to file a claim and to view important documents.

**How Do I Know if I am a Class Member?** You are a Settlement Class Member if you resided in the United States and received a text message between July 28, 2012 and March 5, 2018 (a) that included a link to http://scoutgps.com and the language "Download Scout to send notifications," "Connect with [NAME] by downloading Scout," "To see [NAME]'s progress and communicate, download Scout," or "Welcome to Scout! [NAME] is using Scout to talk about, plan, and navigate to Meet Ups," (the "No Consent Subclass"), or (b) you received at least one additional text message other than a message confirming an opt-out request after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE (the "STOP Subclass"). The full list of Telenav Numbers for purposes of this Settlement can be found in the full notice available at www.TelenavTCPASettlement.com. You may be a member of both subclasses.

**What does the Settlement Provide?** Defendant will pay $3,500,000 into a Settlement Fund. After deducting attorneys' fees, the Incentive Award and expenses and the costs of notice and claims administration, the Settlement Fund will be divided among Settlement Class Members who submit valid claims using a formula and limits explained in the Settlement Agreement. Money remaining after these disbursements will be donated to a Court-approved Cy Pres Recipient.

**How do I file a Claim?** Visit www.TelenavTCPASettlement.com and submit your Claim Form online or download the form and submit it by mail so that it is filed online or postmarked by **August 28, 2018**. Include the Class Member ID on the front of this postcard with your claim.

**What are my other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself by **August 16, 2018**. If you do not exclude yourself, you will release your claims against Telenav, as more fully described in the Settlement Agreement. If you stay in the Settlement, you may object to it by **August 16, 2018**. The Detailed Notice available at the website listed below explains how to exclude yourself or object. The Court is scheduled to hold a hearing on **September 6, 2018** at the Robert F. Peckham Federal Building and United States Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113 to consider whether to approve the Settlement, Class Counsel's request for attorneys' fees of up to one third of the Settlement Fund plus costs and expenses, and service awards for the Class Representative of $5,000. The motion for attorneys' fees and costs will be posted on the website after it is filed. You can appear at the hearing, but you do not have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. To read the full notice or file a claim, visit www.TelenavTCPASettlement.com or call 1-877-646-9240.

U662 v.03

Attachment 3

Gergetz v. Telenav, Inc.
Settlement Administrator
PO Box 2995
Portland, OR 97208-2995



000 0000001 00000000 0001 0012 00002 INS:

July 3, 2018

# This Page Intentionally Left Blank



UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

# If You Received a Text Message from a Telenav Phone Number, You Could Get a Payment from a Class Action Settlement.

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

*Para ver este aviso en español, visite www.TelenavTCPASettlement.com.*

- A Settlement has been reached in an alleged class action lawsuit about whether Telenav, Inc. ("Telenav") sent text messages to cellphone users who did not consent to receiving such messages and/or sent messages after users had replied with a "STOP" or similar command (other than a text message confirming the opt-out request). Telenav is referred to as the "Defendant."

- Those included in the Settlement who file Valid Claim Forms will be eligible to receive a payment from the Settlement Fund, which is $3,500,000 total. The actual amount of the payments will be based on the number of Valid Claim Forms submitted, administrative costs, and any Incentive Award and attorneys fees and expenses approved by the Court.

- Please read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to receive a payment from the Settlement Fund. |
| **EXCLUDE YOURSELF** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **PARTICIPATE IN THE HEARING** | Ask for you or your attorney to speak in Court about your opinion of the Settlement. |
| **DO NOTHING** | You won't receive a payment from the Settlement Fund and will give up your right to sue the Defendant about the claims released by the Settlement Agreement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice. For complete details, view the Settlement Agreement at www.TelenavTCPASettlement.com or call 1-877-646-9240.

**Call 1-877-646-9240 for the Settlement Administrator and 1-720-213-0676 for Class Counsel.**



U1651 v.01

000 0000002 00000000 0002 0012 00002 INS:

## BASIC INFORMATION

### 1.   Why was this Notice issued?

A Court directed that this notice be sent because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge Beth L. Freeman of the U.S. District Court for the Northern District of California is overseeing this case. The case is known as *Gergetz v. Telenav, Inc.*, Case No. 5:16-CV-4261-BLF. Mr. Gergetz, the person who sued, is called the Plaintiff/Settlement Class Representative. The company he sued, Telenav, is called the Defendant.

### 2. What is a Class Action?

In a class action, one or more people, called class representatives (in this case, Nathan Gergetz), sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the class.

### 3. What is this lawsuit about?

This lawsuit alleges that Telenav sent text messages to cellphones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* The Settlement Class Representative claims that Telenav sent text messages encouraging recipients to download the "Scout" mobile application to cellphone users who never provided prior express consent. The Settlement Class Representative also claims that Telenav continued sending text messages to cellphone users who had responded with "STOP" or a similar command to prior messages and that the subsequent messages went beyond merely confirming the opt-out request. Telenav denies the allegations, denies that it violated any law, and has asserted several defenses.

The Court has not determined who is right. Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Settlement Class Members will get compensation now rather than, if at all, years from now.

## WHO'S INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am in the Settlement Class?

You are in the Settlement Class if either of the following apply:

**No Consent Subclass**: You are a member if you resided in the United States and, between July 28, 2012 and March 5, 2018, received at least one text message including a link to http://scoutgps.com and the language "Download Scout to send notifications," "Connect with [NAME] by downloading Scout," "To see [NAME]'s progress and communicate, download Scout," or "Welcome to Scout! [NAME] is using Scout to talk about, plan, and navigate to Meet Ups."

**STOP Subclass**: You are a member if you resided in the United States and, between July 28, 2012 and March 5, 2018, received at least one additional text message other than a message confirming an opt-out

INS: 02000 2100 0003 000000000 000000 3000000 000

request after replying STOP, QUIT, END, CANCEL, or UNSUBSCRIBE to any text message received from any Telenav Number listed below:

72711, 6503535354, 14083260909, 4086281466, 18014471740, 4083260964, 4083891019, 4083891173, 4082146704, 4083728950, 4083891081, 4082170339, 4082605166, 8014471447, 4082605082, 4084795509, 4084795512, 7205072688, 5172688155, 4243486284, 5172688785, 9792726889, 4086281090, 5172688529, 5172688473, 5172688212, 5172688220, 4086281591, 5108086289, 9495372688, 5614086284, 7862882682, 5172688596, 8628814294, 5172688830, 4086281619, 7194198628, 9792726881, 5172688702, 2018972688, 5172688222, 5172688602, 8643726888, 4243486282, 8327862844, 4086281626, 5172688827, 9792726887, 4243486289, 4086281609, 8175672688, 4086281079, 5172688152, 5172688831, 9792726885, 5172688603, 2018172688, 4086281615, 9093286285, 5172688576, 6143672688, 8628814129, 9792726884, 6467986288, 9792726882, 4086281469, 6506678628, 4136486286, 5172688026, 9792726883, 5039286281, 4243486283, 4086281777, 9792726888, 9792726880, 5172688796, 8176972688, 4084795554, 4084795518, 4084792930, 4084795524, 4084795552, 4084795531, 4084795521, 4082170170, 4084792931, 4084795502, 4084795523, 4084795550, 8282660066, 4084795522, 4084795529, 4084795527, 4084795534, 4084795519, 4084792935, 4084795526, 4084792934, 6502048134, 4086693631, 6693337361, 6503532889, 6693337460, 6503977110, 2246623018, 6505675793, 6503186344, 6698001276, 4432821010, 4085121115, 6693335868, 6503999737, 6509004743, 4084740384, 4084712757, 4084740437, 6503535880, 4084796187, 4084782420, 4084703794, 4084771550, 4084796046, 4084789302, 4084789117, 6674018988, 4087097688, 8566660818, 4086062881, 4088192661, 6692383666, 4086889159, 6693335969, 4087676901, 6693335955.

For the full definition of the Settlement Class, please see the Settlement Agreement, which is available by contacting the Settlement Administrator or Class Counsel or by clicking the "Settlement Agreement" link under the "Important Documents Tab" on the Settlement Website, located at www.TelenavTCPASettlement.com.

## THE SETTLEMENT BENEFITS

### 6. What does the Settlement provide?

The Settlement provides that Telenav will pay $3,500,000 U.S. dollars (the "Settlement Fund") into the Settlement Bank Account. The cost to send notice to the Settlement Class and administer the Settlement as well as Court-approved attorneys' fees and expenses, and a Court-approved payment to the Settlement Class Representative will come out of this amount (*see* Question 13). The amount remaining after deducting these sums (the "Net Settlement Fund") will be used to pay the claims of eligible Settlement Class Members who submit Valid Claim Forms.

Settlement Class Members who submit Valid Claim Forms and are part of the No Consent Subclass according to Telenav's records will be eligible to receive one (1) Award Unit from the Net Settlement Fund, up to a maximum of $1,500.00 USD. Settlement Class Members who submit Valid Claim Forms and are part of the STOP Subclass according to Telenav's records will be eligible to receive five (5) Award Units from the Net Settlement Fund, up to a maximum of $7,500 USD. Settlement Class Members who submit Valid Claim Forms and are members of both Subclasses will be eligible to receive a total of six (6) Award Units from the Net Settlement Fund, up to a maximum of $9,000 USD. All Award Units will be of equal value, and the actual value of each Award Unit will depend upon the number of Valid Claim Forms submitted and approved.



## 7. How much will my payment be?

If you are member of the Settlement Class and the Court gives final approval to the Settlement, you may be entitled to receive a Settlement Check for an amount equal to the value of the number of Award Units for which you qualify. The amount of your exact payment cannot be calculated at this time. Your payment will depend on the total number of Valid Claim Forms submitted, the cost of the notice to Settlement Class Members and administration of the Settlement, and any Incentive Award to the Settlement Class Representative and award of attorneys' fees and expenses to Class Counsel. Any amounts remaining in the Settlement Fund after disbursement of these amounts will be paid to a Court-approved Cy Pres Recipient. The Settlement Class is estimated to include approximately 200,000 cellphone users.

You may only make one claim per cellphone number, regardless of how many messages were received.

## 8. When will I get my payment?

You should receive a Settlement Check from the Settlement Administrator within 60-90 days after the Settlement has been finally approved and/or after any appeals have been resolved in favor of the Settlement. The hearing to consider the final fairness of the Settlement will be held before the Honorable Beth Labson Freeman in Courtroom 3, Fifth Floor, Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113, scheduled for **September 6, 2018.** All Settlement Checks will expire and become void 90 days after they are issued.

## HOW TO GET BENEFITS

## 9. How do I get benefits?

If you are a Settlement Class Member and you want to participate in the Settlement, you must complete and submit a Claim Form, under penalty of perjury, by **August 28, 2018**. The Claim Form is available at www.TelenavTCPASettlement.com or can be obtained by calling, toll-free, 1-877-646-9240 or by contacting Class Counsel at 1-720-213-0676. The Claim Form can be submitted online at the Settlement Website, www.TelenavTCPASettlement.com, or by mail. There is only one claim per cellphone number.

## REMAINING IN THE SETTLEMENT

## 10. What am I giving up if I stay in the Settlement Class?

If the Settlement becomes Final, you will give up your right to sue Telenav for the claims being resolved by this Settlement. The specific claims you are giving up against Telenav are described in Section V of the Settlement Agreement. You will be "releasing" the Defendant and all related people and entities as described in Section II.29 of the Settlement Agreement. Unless you exclude yourself (*see* Questions 14-16), you are "releasing" the claims, regardless of whether you submit a Claim Form or not. The Settlement Agreement is available at www.TelenavTCPASettlement.com.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions, you can talk to Class Counsel, listed in Questions 12, for free, or you can, of course, talk to your own lawyer if you have questions about what this means.

**Call 1-877-646-9240 for the Settlement Administrator and
1-720-213-0676 for Class Counsel.**

## 11. What happens if I do nothing at all?

If you do nothing, you won't get any benefits from this Settlement. But, unless you exclude yourself, you won't be able to start a lawsuit or be part of any other lawsuit against the Defendant for the claims being resolved by this Settlement.

# THE LAWYERS REPRESENTING YOU

## 12. Do I have a lawyer in the case?

The Court has appointed Steven Woodrow and Patrick Peluso of Woodrow & Peluso, LLC, and Stefan Coleman of the Law Offices of Stefan Coleman P.A. to be the attorneys representing the Settlement Class. They are called "Class Counsel." They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense. You may also enter an appearance though an attorney if you so desire.

## 13. How will the lawyers, Settlement Class Representative, and Settlement Administrator be paid?

The Settlement Agreement allows Class Counsel to submit a request for reasonable attorneys' fees and costs of up to one-third of the Settlement Fund as fees and expenses for investigating the facts, litigating the case, and negotiating the Settlement in this matter. Class Counsel may seek, and the Court may award, less than this amount. Class Counsel also will apply to the Court for an Incentive Award in the amount of up to $5,000 for the Settlement Class Representative for his efforts in bringing the action and assisting throughout the litigation. If approved by the Court, these amounts will be deducted and paid from the Settlement Fund before making payments to Settlement Class Members who submit Valid Claim Forms. The Settlement also requires that all costs and expenses associated with giving notice of and administering the Settlement will be paid from the Settlement Fund before making payments to Settlement Class Members.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this Settlement, or you want to keep the right to sue or continue to sue Defendant on your own, then you must take steps to get out of the Settlement. This is called "excluding yourself" from or "opting out" of the Settlement. If you exclude yourself from the Settlement, you will not be entitled to any relief the Settlement provides.

## 14. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter (or request for exclusion) by mail stating that you want to be excluded from the Settlement of *Gergetz v. Telenav, Inc.*, Case No. 5:16-CV-4261-BLF. Your letter or request for exclusion must also include your name, your address, the phone number that allegedly received the relevant text message(s) from a Telenav number, and your signature. You must mail your exclusion request so that it is postmarked no later than **August 16, 2018** to the following address:

Settlement Administrator
*Gergetz v. Telenav, Inc.*
P.O. Box 2995
Portland, OR 97208-2995

You cannot exclude yourself on the phone or by email.

The Court will exclude from the Settlement Class any Settlement Class Member who timely requests exclusion.

**Call 1-877-646-9240 for the Settlement Administrator and**
**1-720-213-0676 for Class Counsel.**

## 15. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Telenav for the claims being resolved by this Settlement.

## 16. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, do not submit a Claim Form to ask for benefits. You will no longer be eligible to receive a benefit from the Settlement.

# OBJECTING TO THE SETTLEMENT

## 17. How do I tell the Court I do not like the Settlement?

If you're a Settlement Class Member and you do not exclude yourself, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views before deciding whether to approve the Settlement. To object, you must send a letter stating that you object to the Settlement in *Gergetz v. Telenav, Inc.*, Case No. 5:16-CV-4261-BLF and identify all your reasons for your objections (including citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, your cellular telephone number that allegedly received the relevant text message(s), and your signature. You must mail or deliver the objection to the Clerk of the Court at the address below, postmarked no later than **August 16, 2018**. If you are represented by a lawyer, your lawyer must file your objection or comment with the Court. Include your lawyer's contact information in the objection or comment.

Clerk of the Court
Robert F. Peckham Federal Building and United States Courthouse
280 South 1st Street, Room 2112
San Jose, CA 95113

Class Counsel will file with the Court and post on the Settlement Website under the "Important Documents" tab its request for attorneys' fees two weeks prior to the objection deadline.

## 18. May I speak to the Court about my objection?

Yes, you may ask the Court for permission to speak. If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer, you must either say so in your objection, designating it as an "Objection and Notice of Intention to Appear at Final Approval Hearing," or you must send a letter stating your intent to speak at the Final Approval Hearing to the Clerk of the Court at the address listed above. If submitted separately from your objection, your Notice of Intention to Appear at Final Approval Hearing must include your name, address, telephone number, and your signature. Mail the notice so that it is postmarked no later than **August 16, 2018**.

## 19. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you are excluding yourself from the entire Settlement, so you have no basis to object because the case no longer affects you.

**Call 1-877-646-9240 for the Settlement Administrator and
1-720-213-0676 for Class Counsel.**

U1656 v.01

# THE COURT'S FINAL APPROVAL HEARING

**20. When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Final Approval Hearing at **1:30 p.m. on September 6, 2018** at the Robert F. Peckham Federal Building and United States Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113. The purpose of the hearing will be for the Court to consider whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class; to consider the Class Counsel's request for an award of attorneys' fees and expenses; and to consider the request for an Incentive Award for the Settlement Class Representative. If anyone has asked to speak at the hearing (*see* Question 18), the Court will listen to him or her at that time. The Court will issue its decision after the hearing. We do not know how long it will take for the Court to decide.

The hearing may be postponed to a different date or time without notice, so if you plan to attend, it is a good idea to check with Class Counsel by calling 1-720-213-0676. If, however, you timely object to the Settlement and advise the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of such hearing.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have that are directed to the Settlement Class. However, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

# GETTING MORE INFORMATION

**22. Where do I get more information about the Settlement?**

This notice summarizes the proposed Settlement. More details are in the full Settlement Agreement, which can be viewed or downloaded at www.TelenavTCPASettlement.com. You also can get a copy of the Settlement Agreement by writing the Settlement Administrator at P.O. Box 2995, Portland, OR 97208-2995 or by visiting www.TelenavTCPASettlement.com. You can call the Settlement Administrator at 1-877-646-9240 or Class Counsel at 1-720-213-0676 if you have any questions. Before doing so, however, please read this full notice carefully.

Many of the Court papers, including this notice, the Settlement Agreement, and the Order for Preliminary Approval are posted on the Settlement Website, www.TelenavTCPASettlement.com. You can also obtain a copy of the Settlement Agreement or review any other public papers relating to the lawsuit by examining the records of this case, *Gergetz v. Telenav, Inc.*, Case No. 5:16-CV-4261-BLF at the Clerk's Office at the U.S. District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, Room 2112, San Jose, CA 95113. The Clerk's Office has the ability to make copies of any such public documents for a fee. Also, all filed documents in the case, including the Settlement document, are available for viewing online for a fee through the Court's PACER document review system (www.pacer.gov). Any questions you may have about this notice should not be directed to the Court but should be directed to the Settlement Administrator or Class Counsel.

**23. What am I giving up in exchange for the Settlement benefits?**

Unless you exclude yourself, you will release Telenav and its predecessors, successors, and its past, present, and future parents, subsidiaries, affiliated companies, and corporations, and each of their



respective past, present, and future directors, officers, managers, employees, general partners, limited partners, members, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint ventures, assigns, vendors, independent contractors, or any other representatives, and each of their respective executors, administrators, successors, assigns, and legal representatives (collectively "Released Parties") from any and all claims related to unauthorized Download the Scout App Text Messages and ineffective attempts to opt out of additional text messages from a Telenav telephone number during the Class Period. You will no longer be able to sue, continue to sue, or be part of any other lawsuit against Telenav or any of the Released Parties about these claims. You will be legally bound by all the Court's orders relating to the Settlement, as well as the "Released Claims" (*see* Question 24 below).

## 24. What are the released claims?

The "Released Claims" are any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including but not limited to any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of the Final Approval Order and Judgment, that arise out of or relate in any way to (a) the sending of the Download the Scout App Text Messages or (b) to the sending of at least one additional text message other than a message confirming an opt-out request to any person who had replied STOP, QUIT, END, CANCEL, or UNSUBSCRIBE to any text message received from a Telenav Number, in either case during the Class Period, including alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and similar state laws relating to sending of text messages without consent or after revoking consent. The Parties acknowledge and agree that the Settlement does not release any claims held by the States or other governmental entities. The release covers known and unknown claims and waives rights under California Civil Code Section 1542 and similar statutes. This means that all the Court's orders will apply to you and legally bind you. The full terms of the Release are set forth in Section V of the Settlement Agreement, available at www.TelenavTCPASettlement.com.

## Telenav, Inc. TCPA Settlement CLAIM FORM

### *Gergetz v. Telenav, Inc.* Case No. 5:16-CV-4261-BLF (N.D. Cal.)

Return this Claim Form to the following address: Settlement Administrator, *Gergetz v. Telenav, Inc.*, P.O. Box 2995, Portland, OR 97208-2995. For questions, visit www.TelenavTCPASettlement.com or call 1-877-646-9240.

**DEADLINE: THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR BE POSTMARKED BY AUGUST 28, 2018. IT MUST ALSO BE FULLY COMPLETED, BE SIGNED UNDER OATH, AND MEET ALL CONDITIONS OF THE SETTLEMENT AGREEMENT.**

**Instructions:** If you received one or more text messages on your cellphone from a Telenav, Inc. ("Telenav" or "Defendant") phone number without providing prior express consent and/or after you responded "STOP" (or similar language) to a previous text message, you may be entitled to a monetary payment if the Settlement is finally approved by the Court. If the Settlement is approved, each Settlement Class Member, whether or not he or she submits a claim, will release the Defendant and related entities and all their officers, agents, employees, and those working with them from any and all claims as a result of the text messages that are the subject of the Settlement. Only the primary user or owner of the cellular telephone number at which the text messages at issue were received can submit this Claim Form. Only one claim per cellular telephone number is allowed regardless of how many text messages were received. Please see below for the full definition of the Settlement Class.

Claimants who are part of the No Consent Subclass will receive one (1) Settlement Unit (equal to the Net Settlement Fund divided by the total number of Units, subject to a $1,500 maximum cap per Unit). Claimants who are part of the STOP Subclass will receive five (5) Units. Members of both Subclasses will receive six (6) Units. Subclass membership will be determined based on Telenav's records. All Units will be equal. See below for the definition of each Subclass.

**YOU MUST SUBMIT THIS CLAIM FORM TO RECEIVE A SETTLEMENT PAYMENT.**

Please note that if you are a Settlement Class Member, the Class Member Verification section below requires you to state, under penalty of perjury, that all information contained herein is true and correct.

Call Class Counsel at 1-720-213-0676 for more information.

## YOUR CONTACT INFORMATION

**First Name:**

**MI:**

**Last Name:**

**Current Address:** (You must provide a street address. A P.O. box will not be accepted.)

**City:**

**State:**

**ZIP Code:**

**Cell Phone Number at the Time You Received a/the Text(s):**

**Current Phone Number:**

**or** ☐ check if same as above

(Please provide a phone number where you can be reached if further information is required.)

**Class Member ID (if known):**





## Class Member Verification

By submitting this Claim Form and signing below, I declare under penalty of perjury that I am a member of the Settlement Class as described below.

**************************************************************************

Additional information regarding the Settlement can be found at **www.TelenavTCPASettlement.com**.

The Settlement Administrator may audit any and all claims. **I declare under penalty of perjury that the foregoing is true and correct.**

| Signature: | | Date: | | – | | – | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | MM | | DD | | YY |

| Print Name: | | Your claim will be reviewed by the Settlement Administrator. If accepted, you will be mailed a check for your share of the Settlement based on the Units for which you are eligible. Please be patient. |
| --- | --- | --- |

**CLAIM FORMS MUST BE SUBMITTED ONLINE AT www.TelenavTCPASettlement.com OR BE POSTMARKED NO LATER THAN AUGUST 28, 2018 TO BE ELIGIBLE FOR PAYMENT. MAIL THIS CLAIM FORM TO THE FOLLOWING ADDRESS:** Settlement Administrator, *Gergetz v. Telenav, Inc.*, P.O. Box 2995, Portland, OR 97208-2995. If you have questions, you may call the Settlement Administrator at 1-877-646-9240 and Class Counsel at 1-720-213-0676.

**CLASS DEFINITION: You are a member of the Settlement Class if you fall within one of Subclasses defined below. For purposes of this definition, multiple owners or users of a single cellular telephone are deemed to be a single member of the Settlement Class. The Settlement Class is comprised of all Persons in the No Consent Subclass and the Stop Subclass defined as:**

The "No Consent Subclass": All persons in the United States who, during the Class Period, received at least one text message including a link to http://scoutgps.com and the language "Download Scout to send notifications," "Connect with [NAME] by downloading Scout," "To see [NAME]'s progress and communicate, download Scout," or "Welcome to Scout! [NAME] is using Scout to talk about, plan, and navigate to Meet Ups"; and/or

The "Stop Subclass": All persons in the United States who, during the Class Period, received at least one additional message other than a message confirming an opt-out request, after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE to any text message received from any Telenav Number.

"Telenav Number" means the following long and short codes used by Telenav during the Class Period: 72711, 6503535354, 14083260909, 4086281466, 18014471740, 4083260964, 4083891019, 4083891173, 4082146704, 4083728950, 4083891081, 4082170339, 4082605166, 8014471447, 4082605082, 4084795509, 4084795512, 7205072688, 5172688155, 4243486284, 5172688785, 9792726889, 4086281090, 5172688529, 5172688473, 5172688212, 5172688220, 4086281591, 5108086289, 9495372688, 5614086284, 7862882682, 5172688596, 8628814294, 5172688830, 4086281619, 7194198628, 9792726881, 5172688702, 2018972688, 5172688222, 5172688602, 8643726888, 4243486282, 8327862844, 4086281626, 5172688827, 9792726887, 4243486289, 4086281609, 8175672688, 4086281079, 5172688152, 5172688831, 9792726885, 5172688603, 2018172688, 4086281615, 9093286285, 5172688576, 6143672688, 8628814129, 9792726884, 6467986288, 9792726882, 4086281469, 6506678628, 4136486286, 5172688026, 9792726883, 5039286281, 4243486283, 4086281777, 9792726888, 9792726880, 5172688796, 8176972688, 4084795554, 4084795518, 4084792930, 4084795524, 4084795552, 4084795531, 4084795521, 4082170170, 4084792931, 4084795502, 4084795523, 4084795550, 8282660066, 4084795522, 4084795529, 4084795527, 4084795534, 4084795519, 4084792935, 4084795526, 4084792934, 6502048134, 4086693631, 6693337361, 6503532889, 6693337460, 6503977110, 2246623018, 6505675793, 6503186344, 6698001276, 4432821010, 4085121115, 6693335868, 6503999737, 6509004743, 4084740384, 4084712757, 4084740437, 6503535880, 4084796187, 4084782420, 4084703794, 4084771550, 4084796046, 4084789302, 4084789117, 6674018988, 4087097688, 8566660818, 4086062881, 4088192661, 6692383666, 4086889159, 6693335969, 4087676901, 6693335955.

02-CA7429
U1642 v.09 05.21.2018

Attachment 4

| | |
|---|---|
| **From:** | mail@msgbsvc.com on behalf of noreply_TelenavTCPASettlement |
| **Sent:** | Thursday, May 31, 2018 9:53 AM |
| **To:** | █████████████ |
| **Subject:** | HTML Sample -- Notice of Class Action Settlement – Gergetz v. Telenav, Inc. |

> **CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe.

## NOTICE OF CLASS ACTION SETTLEMENT

*Gergetz v. Telenav, Inc.*, No. 5:16-CV-4261-BLF (N.D. Cal.)

### IF YOU RECEIVED A TEXT MESSAGE
### FROM A TELENAV PHONE NUMBER, YOU COULD RECEIVE
### A PAYMENT FROM A CLASS ACTION SETTLEMENT.

*For complete information, visit www.TelenavTCPASettlement.com or call 1-877-646-9240.*
*Para ver este aviso en español, visite www.TelenavTCPASettlement.com.*

*A Federal Court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

A Settlement has been reached in a class action lawsuit against Telenav, Inc. ("Telenav"), *Gergetz v. Telenav, Inc.*, Case No. 5:16-CV-4261-BLF, pending in the U.S. District Court for the Northern District of California, San Jose Division. The Court has preliminarily approved the Settlement, which could impact your legal rights, whether you act or not. This is only a summary of the Full Notice. Visit www.TelenavTCPASettlement.com to read the Full Notice, submit a Claim Form, and view important court dates and documents.

  **Nature of the Action.** The lawsuit alleges that Telenav sent text messages to cellphones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. The Class Representative claims that Telenav sent text messages encouraging recipients to download its "Scout App" to cellphone users who never provided prior express consent. The Class Representative also claims that Telenav continued sending text messages to cellphone users who had responded with a "STOP" or similar command to prior messages, and that the subsequent messages went beyond merely confirming the opt-out request. Telenav denies the allegations and that it violated any laws, and it asserts several defenses. The Court has not determined who is right. Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

  **Why am I Receiving This Email?** Our records show you may be a member of the "Settlement Class." You are in the Settlement Class if you resided in the United States and received a text message between July 28, 2012 and March 5, 2018 (a) that included a link to http://scoutgps.com and the language "Download Scout to send notifications," "Connect with [NAME] by downloading Scout," "To see [NAME]'s progress and communicate, download Scout," or "Welcome to Scout! [NAME] is using Scout to talk about, plan, and navigate to Meet Ups," (the "No Consent Subclass"); or (b) you received at least one additional text message other than a message confirming an opt-out request after replying STOP, QUIT, END, CANCEL, or UNSUBSCRIBE to any text message received from any Telenav Number (the "STOP Subclass"). The full list of Telenav Numbers for purposes of this Settlement can be found in the Full Notice available at www.TelenavTCPASettlement.com. You may be a member of both subclasses.

**What Can I Get Out of the Settlement?** If you're eligible and the Court approves the Settlement, you could receive a cash payment. Telenav has agreed to fund a Settlement Fund of $3,500,000 U.S. dollars. The cost to send notice to the Settlement Class and administer the Settlement (estimated to be approximately $240,000 USD), as well as any award of reasonable attorneys' fees and expenses (no more than one-third of the Settlement Fund) and any Incentive Award of no more than $5,000 to the Class Representative will come out of this amount. The amount remaining after deducting these amounts (the "Net Settlement Fund") will be used to pay the claims of eligible Settlement Class Members who submit valid claims. Settlement Class Members who file valid claims and who are part of the No Consent Subclass according to Telenav's records will be eligible to receive One (1) Unit from the Net Settlement Fund. Settlement Class Members who file valid claims and who are part of the STOP Subclass according to Telenav's records will be eligible to receive Five (5) Units from the Net Settlement Fund. Settlement Class Members who file valid claims and are members of both Subclasses will be eligible to receive a total of Six (6) Units from the Net Settlement Fund. All Units will be equal, and no Unit may exceed $1,500. If any money remains after these disbursements, it will be donated to a *cy pres* recipient approved by the Court.

**What are My Options?** If you are a member of the Settlement Class as described above, your legal rights are affected, and you have several options: **(1) Submit a Claim:** You may submit a Claim Form here or download the form and submit it by mail—either way by no later than **August 28, 2018**. **Include your Settlement Class Member ID: 222637E29.** The information you provide to the Settlement Administrator will be used only to administer the Settlement. **(2) Do Nothing: You will not receive a payment,** but you will be bound by the Court's Orders and Judgment and give up your right to sue Telenav and certain other persons and entities about the legal claims resolved by the Settlement. **(3) Exclude Yourself:** Keep the right to sue Telenav about the legal claims resolved by the Settlement, but **you will not receive payment** from this Settlement. To request exclusion, you must mail a signed statement that says "I wish to be excluded from the Settlement in *Gergetz v. Telenav, Inc*., Case No. 5:16-CV-4261-BLF" to the Settlement Administrator, postmarked by **August 16, 2018**. Specific information is available at www.TelenavTCPASettlement.com. **(4) Object/Request to Appear:** Write to the Court and say why you don't like the Settlement and/or request permission to speak at the Final Approval Hearing by **August 16, 2018**. The Court will hold a Final Approval Hearing at **1:30 p.m. PDT on September 6, 2018**, before the Honorable Beth Labson Freeman in Courtroom 3, 5th Floor, Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, CA 95113. The Court will consider whether the proposed Settlement is fair, reasonable, and adequate and whether to approve the attorneys' fees and costs to Class Counsel and an Incentive Award to the Class Representative, and consider objections, if any. The motion for attorneys' fees and costs will be posted on the website after it is filed.

**Who Represents Me?** The Court has appointed Steven Woodrow and Patrick Peluso of Woodrow & Peluso, LLC, and Stefan Coleman of the Law Offices of Stefan Coleman, P.A., to be the attorneys representing the Settlement Class. They are called "Class Counsel." You may hire your lawyer at your own expense.

**When Will the Court Approve the Settlement?** The Court will hold a Final Approval Hearing on **September 6, 2018 at 1:30 p.m. PDT** at the Robert F. Peckham Federal Building & United States Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113. The Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for fees and expenses and an Incentive Award to the Class Representative. These requests will be posted on the Settlement Website.

**How Do I Get More Information?** For more information about the proposed Settlement and a copy of the Full Notice and Claim Form, go to www.TelenavTCPASettlement.com, contact the Settlement Administrator at 1-877-646-9240 or Settlement Administrator, Gergetz v. Telenav, Inc., P.O. Box 2995, Portland, OR 97208-2995; or call Class Counsel at 1-720-213-0676.

Please note: This e-mail message was sent from a notification-only address that cannot accept incoming e-mail. Please do not reply to this message.

If you would prefer not to receive further messages from this sender, please Click Here and confirm your request.

Attachment 5





Attachment 6

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL
DISTRITO NORTE DE CALIFORNIA

# Si usted recibió un mensaje de texto de un número de teléfono de Telenav, podría recibir un pago de una Conciliación de demanda colectiva.

*Un Tribunal federal autorizó este aviso. No se trata del ofrecimiento de un abogado.*

- Se ha llegado a una Conciliación en un litigio por demanda colectiva para determinar si Telenav, Inc. ("Telenav") envió mensajes de texto a usuarios de teléfono celular que no dieron su consentimiento para recibir dichos mensajes y/o mensajes después de que los usuarios respondieran con "STOP" (PARAR) o un comando similar (diferente a un mensaje de texto que confirmaba la solicitud de exclusión). Telenav se denominará en adelante el "Demandado".

- Las personas incluidas en la Conciliación que presenten Formularios de reclamo válidos podrán recibir un pago del Fondo de la Conciliación, que suma $3,500,000 en total. El monto real de los pagos se basará en la cantidad de Formularios de reclamo válidos enviados, costos administrativos y cualquier Compensación incentiva y honorarios y gastos de abogados aprobados por el Tribunal.

- Lea este aviso detenidamente. Independientemente de que usted actúe o no, sus derechos legales se verán afectados.

| SUS DERECHOS Y OPCIONES LEGALES EN ESTE ACUERDO | |
|---|---|
| **PRESENTAR UN FORMULARIO DE RECLAMO** | Esta es la única forma de recibir un pago del Fondo de la Conciliación. |
| **EXCLUIRSE** | No recibirá beneficios, pero conservará cualquier derecho que tenga actualmente de presentar una demanda contra el Demandado sobre los reclamos de este caso. |
| **OBJETAR** | Escribir al Tribunal para explicar el motivo por el cual no le satisface la Conciliación. |
| **PARTICIPAR EN LA AUDIENCIA** | Solicitar que usted o su abogado puedan hablar en el Tribunal sobre su opinión de la Conciliación. |
| **NO HACER NADA** | Usted no recibirá un pago del Fondo de la Conciliación y renunciará a su derecho a demandar al Demandado por las reclamaciones exentas por el Acuerdo de conciliación. |

Estos derechos y opciones, **y las fechas límite para ejercerlos**, se explican en este Aviso. Para obtener información completa del asunto, consulte el Acuerdo de conciliación en www.TelenavTCPASettlement.com o llame al 1-877-646-9240.

**Llame al 1-877-646-9240 para comunicarse con el Administrador de la Conciliación y al 1-720-213-0676 para comunicarse con los Abogados del Grupo de demandantes.**

# INFORMACIÓN BÁSICA

## 1. ¿Por qué se emitió este Aviso?

Un Tribunal ordenó el envío de este aviso porque usted tiene derecho a conocer acerca de la Conciliación propuesta de esta demanda colectiva y sobre todas sus opciones antes de que el Tribunal decida si le dará la aprobación final a la Conciliación. Este Aviso le explica la demanda, la Conciliación y sus derechos legales.

El juez S. Beth L. Freeman, del Tribunal de Distrito de los Estados Unidos para el Distrito Norte de California, está a cargo de este caso. El caso se denomina *Gergetz v. Telenav, Inc.*, caso n.º 5:16-CV-4261-BLF. El Sr. Gergetz, la persona que presentó la demanda, se denomina el Demandante/Representante del Grupo de la Conciliación. La compañía a la que demandaron, Telenav, se le conoce como Demandado.

## 2. ¿Qué es una demanda colectiva?

En una demanda colectiva, una o más personas, conocidas como representantes del grupo de demandantes (en este caso, Nathan Gergetz), presentan una demanda en representación de un colectivo o de un "grupo" de personas que tienen reclamos similares. En una demanda colectiva, el tribunal resuelve los asuntos para todos los miembros del grupo de demandantes, excepto para quienes se hayan excluido del grupo de demandantes.

## 3. ¿De qué trata esta demanda?

En esta demanda se alega que Telenav envió mensajes de texto a teléfonos celulares en infracción de la Ley de Protección al Consumidor Telefónico (Telephone Consumer Protection Act), art. 227, título 47, U.S.C. El Representante del Grupo de la Conciliación reclama que Telenav envió mensajes de texto invitando a los destinatarios a descargar la aplicación móvil "Scout" a usuarios de teléfono celular que nunca dieron su consentimiento expreso antes indicado. El Representante del Grupo de la Conciliación también reclama que Telenav continuó enviando mensajes de texto a usuarios de teléfono celular que habían respondido con "STOP" (PARAR) o un comando similar a mensajes previos y que los mensajes posteriores iban más allá de simplemente confirmar la solicitud de exclusión. Telenav niega lo alegatos, niega que haya infringido la ley, y ha afirmado diferentes defensas.

El Tribunal no ha determinado quién tiene razón. En su lugar, las partes han decidido llegar a una conciliación en relación con la demanda para evitar las incertidumbres y los gastos asociados con el litigio en curso.

## 4. ¿Por qué existe una Conciliación?

El Tribunal no ha decidido si debe ganar este caso el Demandante o el Demandado. En lugar de eso, las dos partes involucradas llegaron a una Conciliación. De esa manera, evitan la incertidumbre y los gastos asociados con el litigio en curso y los miembros del Grupo de la Conciliación obtendrán una compensación en la actualidad, en lugar de obtenerla, en caso de que ganaran, luego de varios años.

# ¿QUIÉNES ESTÁN INCLUIDOS EN LA CONCILIACIÓN?

## 5. ¿Cómo sé si formo parte del Grupo de la Conciliación?

Usted está en el Grupo de la Conciliación si se aplica una de las siguientes condiciones:

**Subgrupo de Sin consentimiento**: Usted es un miembro si residió en los Estados Unidos y, entre el 28 de julio de 2012 y el 5 de marzo de 2018, recibió como mínimo un mensaje de texto que incluía un enlace

a http://scoutgps.com y el mensaje "Download Scout to send notifications" (Descargue Scout para enviar notificaciones), "Conect with [NAME] by downloading Scout" (Conéctese con [NOMBRE] al descargar Scout), "To see [NAME]'s progress and communicate, download Scout" (Para ver el progreso de [NOMBRE] y comunicarse con él/ella, descargue Scout), o "Welcome to Scout! [NAME] is using Scout to talk about, plan, and navigate to Meet Ups" (Bienvenido a Scout, [NOMBRE] está usando Scout para hablar, planificar y navegar a reuniones).

**Subgrupo de PARAR**: Usted es miembro si residió en los Estados Unidos, y entre el 28 de julio de 2012 y el 5 de marzo de 2018, recibió como mínimo un mensaje de texto adicional diferente a un mensaje que confirma una solicitud de exclusión después de responder STOP (PARAR), QUIT (FINALIZAR), END (TERMINAR), CANCEL (CANCELAR) O UNSUBSCRIBE (CANCELAR SUSCRIPCIÓN) a cualquier mensaje de texto recibido de cualquier número de Telenav que se indica a continuación:

72711, 6503535354, 14083260909, 4086281466, 18014471740, 4083260964, 4083891019, 4083891173, 4082146704, 4083728950, 4083891081, 4082170339, 4082605166, 8014471447, 4082605082, 4084795509, 4084795512, 7205072688, 5172688155, 4243486284, 5172688785, 9792726889, 4086281090, 5172688529, 5172688473, 5172688212, 5172688220, 4086281591, 5108086289, 9495372688, 5614086284, 7862882682, 5172688596, 8628814294, 5172688830, 4086281619, 7194198628, 9792726881, 5172688702, 2018972688, 5172688222, 5172688602, 8643726888, 4243486282, 8327862844, 4086281626, 5172688827, 9792726887, 4243486289, 4086281609, 8175672688, 4086281079, 5172688152, 5172688831, 9792726885, 5172688603, 2018172688, 4086281615, 9093286285, 5172688576, 6143672688, 8628814129, 9792726884, 6467986288, 9792726882, 4086281469, 6506678628, 4136486286, 5172688026, 9792726883, 5039286281, 4243486283, 4086281777, 9792726888, 9792726880, 5172688796, 8176972688, 4084795554, 4084795518, 4084792930, 4084795524, 4084795552, 4084795531, 4084795521, 4082170170, 4084792931, 4084795502, 4084795523, 4084795550, 8282660066, 4084795522, 4084795529, 4084795527, 4084795534, 4084795519, 4084792935, 4084795526, 4084792934, 6502048134, 4086693631, 6693337361, 6503532889, 6693337460, 6503977110, 2246623018, 6505675793, 6503186344, 6698001276, 4432821010, 4085121115, 6693335868, 6503999737, 6509004743, 4084740384, 4084712757, 4084740437, 6503535880, 4084796187, 4084782420, 4084703794, 4084771550, 4084796046, 4084789302, 4084789117, 6674018988, 4087097688, 8566660818, 4086062881, 4088192661, 6692383666, 4086889159, 6693335969, 4087676901, 6693335955.

Para obtener una definición completa del Grupo de la Conciliación, consulte el Acuerdo de conciliación, que puede obtener comunicándose con el Administrador de la Conciliación o los Abogados del Grupo de demandantes o haciendo clic en el enlace de "Acuerdo de conciliación" que está bajo la "Pestaña de documentos importantes" en el sitio web de la Conciliación, ubicada en www.TelenavTCPASettlement.com.

## LOS BENEFICIOS DE LA CONCILIACIÓN

### 6. ¿Qué estipula la Conciliación?

La Conciliación dispone que Telenav pagará $3,500,000 dólares estadounidenses (el "Fondo de la Conciliación") a la Cuenta bancaria de la Conciliación. El costo de enviar avisos al Grupo de la Conciliación y administrar la Conciliación, así como los honorarios y gastos de abogado aprobados por el Tribunal, y un pago autorizado por el Tribunal al Representante del Grupo de la Conciliación saldrá de este monto (*consulte la* Pregunta 13). El monto restante después de deducir estas sumas (el "Fondo de la Conciliación neto") se utilizará para pagar las reclamaciones de Miembros del Grupo de la Conciliación elegibles que presenten Formulario de reclamo válidos.

Los Miembros del Grupo de la Conciliación que presenten Formularios de reclamo válidos y formen parte del Subgrupo de Sin consentimiento conforme a los registros de Telenav podrán recibir una (1) Unidad de compensación a partir del Fondo de la Conciliación Neto, hasta un máximo de $1,500.00 USD. Los Miembros del Grupo de la Conciliación que presentan Formularios de reclamo válidos y forman parte del Subgrupo de PARAR conforme a registros de Telenav serán elegibles para recibir cinco (5) Unidades de compensación a partir del Fondo de la Conciliación Neto, hasta un máximo de $7,500 USD. Los Miembros del Grupo de la Conciliación que presentan Formularios de reclamo válidos y son miembros de ambos Subgrupos serán elegibles para recibir un total de seis (6) Unidades de compensación a partir del Fondo de la Conciliación Neto, hasta un máximo de $9,000 USD. Todas las Unidades de la Compensación serán de valor equivalente, y el valor real de cada Unidad de Compensación dependerá de la cantidad de Formularios de reclamo válidos presentados y aprobados.

## 7. ¿A cuánto ascenderá mi pago?

Si usted es miembro del Grupo de la Conciliación y el Tribunal otorga una aprobación final de la Conciliación, usted puede tener derecho a recibir un Cheque de la Conciliación por un valor equivalente al valor de la cantidad de Unidades de Compensación que usted pueda recibir. La cantidad exacta de su pago no se puede calcular en este momento. Su pago dependerá de la cantidad total de Formularios de reclamo válidos enviados, el costo del aviso a los Miembros del Grupo de la Conciliación y administración de la Conciliación, y cualquier Compensación incentiva al Representante del Grupo de la Conciliación y reconocimiento de honorarios y gastos de abogados de los Abogados del Grupo de demandantes. Cualquier monto restante en el Fondo de la Conciliación después del desembolso de estos montos se pagará a un Beneficiario cercano aprobado por el Tribunal. Se estima que el Grupo de la Conciliación incluya aproximadamente 200,000 usuarios de teléfono celular.

Usted solo puede hacer un reclamo por número de teléfono celular, independientemente de la cantidad de mensajes recibidos.

## 8. ¿Cuándo recibiré mi pago?

Debería recibir un cheque del Administrador de la Conciliación en un plazo de entre 60 y 90 días posteriores a que se haya aprobado definitivamente la Conciliación o posteriores a la resolución de las apelaciones en favor de la Conciliación. La audiencia para considerar la imparcialidad final de la Conciliación se llevará a cabo ante el honorable Beth Labson Freeman en Courtroom 3, Fifth Floor, Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San José, CA 95113, programada para el **6 de septiembre de 2018.** Todos los Cheques de la Conciliación vencerán y serán nulos 90 días después de su emisión.

# CÓMO OBTENER BENEFICIOS

## 9. ¿Cómo obtengo beneficios?

Si es Miembro del Grupo de la Conciliación y desea participar en la Conciliación, debe completar y enviar un Formulario de reclamo, bajo pena de perjurio, a más tardar el **28 de agosto de 2018**. El Formulario de reclamo está disponible en www.TelenavTCPASettlement.com o puede obtenerse si llama, por línea gratuita, al 1-877-646-9240 o si se comunica con los Abogados del Grupo de demandante al 1-720-213-0676. El Formulario de reclamo puede presentarse en línea en el Sitio web de la Conciliación, www.TelenavTCPASettlement.com, o por correo postal. Solo puede hacerse un reclamo por número de teléfono celular.

**Llame al 1-877-646-9240 para comunicarse con el Administrador de la Conciliación y al 1-720-213-0676 para comunicarse con los Abogados del Grupo de demandantes.**

## PERMANECER EN EL ACUERDO

### 10. ¿A qué renuncio si permanezco como parte del Grupo de la Conciliación?

Si la Conciliación adquiere carácter definitivo, usted renunciará a su derecho de demandar a Telenav por los reclamos que se resuelven por esta Conciliación. Los reclamos específicos contra Telenav a los que está renunciando se describen en la sección V del Acuerdo de conciliación. "Eximirá" al Demandado y a todas las personas relacionadas como se describe en la sección II.29 del Acuerdo de conciliación. A menos que se excluya (*consulte* las preguntas 14-16), "deja sin efecto" las reclamaciones, independientemente de si presenta un Formulario de reclamo o no. El Acuerdo de conciliación está disponible en www.TelenavTCPASettlement.com.

El Acuerdo de conciliación describe las reclamaciones que quedarán sin efecto con detalles específicos; por lo tanto, léalo detenidamente. Si tiene preguntas, puede hablar con los Abogados del Grupo de demandantes que se indican en la pregunta 12 de manera gratuita, o bien puede, por supuesto, hablar con su propio abogado si tiene preguntas sobre lo que significa esto.

### 11. ¿Qué sucede si no hago nada?

Si no hace nada, no recibirá ningún beneficio de esta Conciliación. Sin embargo, a menos que se excluya, no podrá comenzar una demanda ni ser parte de una demanda contra el Demandado por los reclamos que se resolverán en esta Conciliación.

## LOS ABOGADOS QUE LO REPRESENTAN

### 12. ¿Tengo un abogado en este caso?

El Tribunal ha nombrado a Steven Woodrow y a Patrick Peluso de Woodrow & Peluso, LLC, y Stefan Coleman del despacho jurídico Law Offices of Stefan Coleman P.A. para que funjan como los abogados que representan al Grupo de la Conciliación. Se los denomina "Abogados del Grupo de demandantes". Luego de realizar una investigación exhaustiva, ellos creen que el Acuerdo de conciliación es justo, razonable y beneficioso para el Grupo de la Conciliación. No se le cobrará por los servicios de estos abogados. Si desea ser representado por su propio abogado en este caso, puede contratar uno por su propia cuenta. También puede registrar una comparecencia mediante un abogado si así lo desea.

### 13. ¿Cómo se pagará a los abogados, al Representante del Grupo de la Conciliación y al Administrador de la Conciliación?

El Acuerdo de conciliación permite que los Abogados del Grupo de demandantes presenten una solicitud para que se les reconozcan honorarios y costos razonables de abogados por hasta un tercero del Fondo de la Conciliación por concepto de honorarios y gastos por investigar los hechos, litigar el caso y negociar la Conciliación en este caso. Los Abogados del Grupo de demandantes pueden solicitar, y el Tribunal puede otorgar, un monto inferior al solicitado. Los Abogados del Grupo de demandantes también solicitarán al Tribunal que se les reconozca una Compensación incentiva por valor de máximo $5,000 para el Representante del Grupo de la Conciliación por sus esfuerzos para entablar la acción judicial y prestar su asistencia a lo largo del litigio. Si son autorizados por el Tribunal, estos montos serán deducidos y pagados a partir del Fondo de la Conciliación antes de hacer los respectivos pagos a los Miembros del Grupo de la Conciliación que presenten Formularios de reclamo válidos. La Conciliación también requiere que todos los costos y gastos asociados con la entrega de avisos y la administración de la Conciliación se paguen a partir del Fondo de la Conciliación antes de hacer pagos a los Miembros del Grupo de la Conciliación.

## EXCLUIRSE DE LA CONCILIACIÓN

Si no desea participar en esta Conciliación, o desea conservar el derecho a demandar o a seguir con la demanda al Demandado por cuenta propia, debe seguir los pasos necesarios para excluirse. Esto se conoce como "apartarse" u "optar por no formar parte" de la Conciliación. Si se excluye de la Conciliación, no tendrá derecho a recibir los beneficios de la Conciliación.

### 14. ¿Cómo me excluyo de la Conciliación?

Para excluirse de la Conciliación, debe enviar una carta (o solicitar la exclusión) por correo en la que indique que <u>usted desea ser excluido</u> de la Conciliación de *Gergetz v. Telenav*, *Inc*., caso n.º 5:16-CV-4261-BLF. Su carta o solicitud de exclusión también deben incluir su nombre, su dirección, el número de teléfono celular que presuntamente recibió los mensajes de texto pertinentes de un número de Telenav, y su firma. Debe enviar su solicitud de exclusión para que tenga el sello postal fechado a más tardar el **16 de agosto de 2018** a la siguiente dirección:

Settlement Administrator
*Gergetz v. Telenav*, *Inc*.
P.O. Box 2995
Portland, OR 97208-2995

No puede excluirse por teléfono ni por correo electrónico.

El Tribunal excluirá del Grupo de la Conciliación a cualquier Miembro del Grupo de la Conciliación que solicite ser excluido dentro del plazo establecido.

### 15. Si no me excluyo, ¿puedo demandar al Demandado por este mismo asunto en el futuro?

No. A menos que se excluya, usted renuncia a todo derecho de presentar una demanda contra Telenav por los reclamos que este acuerdo resuelve.

### 16. Si me excluyo, ¿puedo obtener algo de esta Conciliación?

No. Si se excluye, no presente el Formulario de reclamo para solicitar beneficios. Si deja de ser elegible para recibir un beneficio de la Conciliación.

## CÓMO OBJETAR LA CONCILIACIÓN.

### 17. ¿Cómo le hago saber al Tribunal que no estoy conforme con la Conciliación?

Si es un Miembro del Grupo de la Conciliación y no se excluye, puede objetar cualquier parte de la Conciliación si no le gusta alguna parte de la misma. Puede indicar las razones por las que piensa que el Tribunal no debería aprobarla. El Tribunal considerará sus posturas antes de decidir si aprueba la Conciliación. Para presentar una objeción, debe enviar una carta en la que indique que objeta la Conciliación en *Gergetz v. Telenav*, *Inc*., Caso n.º 5:16-CV-4261-BLF e identificar todos sus motivos para sus objeciones (incluidas las citas y pruebas de respaldo) y adjuntar cualquier material en el que usted base sus objeciones. Su carta o informe breve también debe incluir su nombre, su dirección, el número de teléfono celular en el que presuntamente recibió los mensajes de texto pertinentes y su firma. Debe enviar por correo postal o entregar la objeción al secretario del Tribunal a la siguiente dirección, con sello postal fechado a más tardar el **16 de agosto de 2018**. Si usted está representado por un abogado, su abogado debe registrar su objeción o comentario ante el Tribunal. Incluya la información de contacto de su abogado en la objeción o el comentario.

**Llame al 1-877-646-9240 para comunicarse con el Administrador de la Conciliación y al 1-720-213-0676 para comunicarse con los Abogados del Grupo de demandantes.**

Clerk of the Court
Robert F. Peckham Federal Building and United States Courthouse
280 South 1st Street, Room 2112
San José, CA 95113

Los Abogados del Grupo de demandantes presentarán su solicitud al Tribunal y la publicarán en el Sitio web de la Conciliación para que se paguen los honorarios de los abogados dos semanas antes del plazo de la objeción.

| 18. ¿Puedo hablar con el Tribunal sobre mi objeción? |
| --- |

Sí, puede solicitarle al Tribunal permiso para hablar durante la audiencia. Si desea comparecer y hablar en la Audiencia de aprobación final para objetar la Conciliación, con o sin abogado, debe decirlo en su objeción, designarla como una "Objeción y notificación de intención de comparecer en la Audiencia de aprobación definitiva", o debe enviar una carta en la que indique su intención de hablar en la Audiencia de aprobación definitiva al secretario del Tribunal en la dirección antes indicada. Si presentó su objeción por separado, su Notificación de intención de comparecer en una Audiencia de aprobación definitiva debe incluir su nombre, dirección, número de teléfono y su firma. Envíe el aviso por correo postal de forma que tenga sello postal fechado a más tardar el **16 de agosto de 2018**.

| 19. ¿Cuál es la diferencia entre objetar y excluirme del acuerdo? |
| --- |

Objetar es sencillamente decirle al Tribunal que a usted no le gusta algo de la Conciliación. Puede presentar una objeción solo si es parte del Grupo de la Conciliación. Al excluirse, usted le indica al Tribunal que no quiere formar parte del Grupo de la Conciliación. Si se excluye, se excluirá de toda la Conciliación, así que no tiene fundamentos para objetar porque el caso ya no le afecta.

## AUDIENCIA DE APROBACIÓN DEFINITIVA DEL TRIBUNAL

| 20. ¿Cuándo y dónde decidirá el Tribunal si aprueba la Conciliación? |
| --- |

El Tribunal llevará a cabo la Audiencia de aprobación definitiva a la **1:30 p. m. el 6 de septiembre de 2018** en el Robert F. Peckham Federal Building and United States Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San José, CA 95113. El propósito de la audiencia será que el Tribunal determine si aprueba la Conciliación como justa, razonable, adecuada y beneficiosa para el Grupo de la Conciliación, que considere la solicitud de los Abogados del Grupo de demandantes de recibir compensación por gastos y honorarios de los abogados, y que considere la solicitud de recibir una Compensación incentiva para el Representante del Grupo de la Conciliación. Si alguna parte ha pedido tomar la palabra en la audiencia (*consulte la* Pregunta 18), el Tribunal la escuchará en ese momento. El Tribunal dará su decisión después de la audiencia. No sabemos cuánto tiempo demorará el Tribunal en tomar su decisión.

La audiencia puede ser pospuesta a una fecha u hora diferente sin aviso previo, así que si usted tiene planeado asistir, se recomienda que hable por teléfono con los Abogados del Grupo al 1-720-213-0676 para verificar. Si, sin embargo, objetó de manera oportuna la Conciliación y le informó al Tribunal que tiene la intención de comparecer y hablar en la Audiencia de aprobación definitiva, recibirá un aviso sobre cualquier cambio en la fecha de dicha audiencia.

| 21. ¿Debo asistir a la audiencia? |
| --- |

No. Los Abogados del Grupo de demandantes responderán cualquier pregunta que el Tribunal dirija al Grupo de la Conciliación. Sin embargo, puede venir por su cuenta si lo desea. Si presenta una objeción, no tiene que presentarse en el Tribunal para hablar sobre ella. Siempre que haya enviado su objeción por

**Llame al 1-877-646-9240 para comunicarse con el Administrador de la Conciliación y al
1-720-213-0676 para comunicarse con los Abogados del Grupo de demandantes.**

escrito a tiempo, el Tribunal la tendrá en cuenta. Usted también puede pagar a otro abogado para que asista a la audiencia, pero no es necesario que lo haga.

## CÓMO OBTENER MÁS INFORMACIÓN

**22. ¿Cómo puedo obtener más información acerca de la Conciliación?**

Este aviso resume la Conciliación propuesta. Podrá encontrar más información en el Acuerdo de conciliación completo, que puede ser consultado o descargado en www.TelenavTCPASettlement.com. También puede obtener una copia del Acuerdo de conciliación si le escribe al Administrador de la Conciliación a la siguiente dirección: P.O. Box 2995, Portland, OR 97208-2995 o si visita el sitio web de www.TelenavTCPASettlement.com. Si tiene preguntas, puede llamarle al Administrador de la Conciliación al 1-877-646-9240 o al Abogado del Grupo de demandantes al 1-720-213-0676. Sin embargo, antes de hacerlo, lea todo el aviso detenidamente.

Muchos de los documentos del Tribunal, incluido este aviso, el Acuerdo de conciliación, y la Orden para aprobación preliminar están publicados en el Sitio web de la Conciliación, www.TelenavTCPASettlement.com. También puede obtener una copia del Acuerdo de conciliación o revisar cualquier otro documento público relacionado con la demanda al consultar los registros de este caso, *Gergetz v. Telenav, Inc.*, caso n.º 5:16-CV-4261-BLF en la oficina del secretario judicial del U.S. District Court for the Northern District of California, Robert F. Peckham Federal Building, 280 South 1st Street, Room 2112, San José, CA 95113. La oficina del secretario judicial tiene la posibilidad de hacer copias de cualquiera de dichos documentos a cambio de una tarifa establecida. Igualmente, todos los documentos registrados en el caso, incluido el documento de la Conciliación, pueden ser consultados en línea por un cargo mediante el sistema de revisión de documentos PACER del Tribunal (www.pacer.gov). Cualquier pregunta que usted pueda tener sobre este aviso no debe dirigirse al Tribunal, sino al Administrador de la Conciliación o a los Abogados del Grupo de demandantes.

**23. ¿A qué renuncio a cambio de recibir los beneficios de la Conciliación?**

A menos que se excluya, usted exentará a Telenav y sus predecesores, sucesores y sus entidades matrices, subsidiarias, empresas filiales y sociedades pasadas, presentes y futuras, y cada uno de sus respectivos directores, ejecutivos, gerentes, empleados, socios generales, socios limitados, miembros, mandantes, agentes, aseguradoras, reaseguradoras, accionistas, abogados, asesores, representantes, predecesores, sucesores, divisiones, empresas conjuntas, cesionarios, vendedores, contratistas independientes o cualquier otro representante, y cada uno de sus respectivos albaceas, administradores, sucesores, cesionarios y representantes legales (en conjunto, "Partes exentas") de todo reclamo relacionado con los Mensajes de texto de "Descargue la aplicación Scout" e intentos ineficaces de cancelar el envío de mensajes de texto adicionales de un número de teléfono Telenav durante el Periodo del Grupo de demandantes. Usted no podrá demandar, continuar demandando, ni ser parte de ninguna otra demanda en contra de Telenav o cualquiera de las Partes exentas sobre estas reclamaciones. Usted quedará legalmente vinculado por todas las órdenes del Tribunal en relación con la Conciliación, así como las "Reclamaciones exentas" (*consulte la* Pregunta 24).

**24. ¿Cuáles son las reclamaciones exentas?**

Las "Reclamaciones exentas" son todas las reclamaciones, pretensiones judiciales, litigios, obligaciones, deudas, demandas, acuerdos, promesas, responsabilidades, daños y perjuicios, pérdidas, controversias, costos, gastos y honorarios de abogados de cualquier naturaleza, ya sea con base en cualquier ley federal, ley estatal, "common law", ley territorial, ley extranjera, contrato, norma, reglamentación, cualquier promulgación normativa (lo que incluye a modo no taxativo cualquier opinión o norma declaratoria),

"common law" o "equity", independientemente de que sea conocido o desconocido, sospechado o insospechado, afirmado o no afirmado, previsible o imprevisto, real o contingente, predeterminado o no predeterminado, punitivo o compensatorio, a la fecha de la Orden de aprobación definitiva y Sentencia, que surjan de o se relacionen de alguna forma con (a) el envío de los Mensajes de texto de Descargue la aplicación Scout o (b) el envío de mínimo un mensaje de texto adicional diferente a un mensaje que confirme una solicitud de exclusión a cualquier persona que haya respondido STOP (PARAR), QUIT (FINALIZAR), END (TERMINAR), CANCEL (CANCELAR) O UNSUBSCRIBE (CANCELAR SUSCRIPCIÓN), a cualquier mensaje de texto recibido de un Número Telenav, en cualquier caso durante el Periodo del Grupo de demandantes, lo que incluye las presuntas infracciones de la Ley de Protección al Consumidor Telefónico, art. 227 y siguientes, Título 47 del U.S.C. ("TCPA") y leyes estatales similares relacionadas con el envío de mensajes de texto sin consentimiento o después de la revocación de consentimiento. Las Partes reconocen y aceptan que la Conciliación no exenta ningún reclamo que tengan los Estados u otras entidades gubernamentales. La exención cubre reclamaciones conocidas y desconocidas y exenta derechos en virtud del art. 1542 del Código Civil de California y leyes similares. Esto también significa que todas las órdenes del Tribunal se aplicarán a usted y que estará legalmente vinculado por las mismas. Todas las disposiciones de la Exención se establecen en la sección V del Acuerdo de conciliación, que está disponible en www.TelenavTCPASettlement.com.

se ha notificado una acción de conciliación en un litigio denominado colectivo titulado *Gergetz v. Telenav Inc.* Caso 5:16-cv-4261-BLF (N.D. Cal) en el cual se reclama que Telenav envió mensajes de texto a teléfonos celulares en infracción de la Ley de Protección al Consumidor Telefónico, art. 227 y siguientes, título 47 del U.S.C. que invitaba a los destinatarios a descargar la aplicación móvil Scout para usuarios de teléfono celular que nunca dieron su consentimiento previo y expreso y que Telenav continuó enviando mensajes de texto a usuarios de teléfono celular que habían respondido con un comando de "STOP" (PARAR) o un comando similar. Telenav niega los alegatos. El Tribunal ha aprobado la Conciliación, que podría tener un impacto en sus derechos independientemente de que actúe o no. Este es solo un resumen. Visite el sitio web para consultar el aviso completo, presentar un reclamo y ver documentos importantes.

**¿Cómo sé si soy Miembro del Grupo de demandantes?** Usted es un Miembro del Grupo de la Conciliación si residió en los Estados Unidos y recibió mensajes de texto entre el 28 de julio de 2012 y el 5 de marzo de 2018, que incluían un enlace a http://scoutgps.com y el mensaje "Download Scout to send notifications" (Descargue Scout para enviar notificaciones), "Connect with [NAME] by downloading Scout" (Conéctese con [NOMBRE] al descargar Scout), "To see [NAME]'s progress and communicate, download Scout" (Para ver el progreso de [NOMBRE] y comunicarse con él/ella, descargue Scout), o "Welcome to Scout! [NAME] is using Scout to talk about, plan, and navigate to Meet Ups," (Bienvenido a Scout, [NOMBRE] está usando Scout para hablar, planificar y navegar a reuniones) (el "Subgrupo de Sin consentimiento"), o (b) usted recibió como mínimo un mensaje de texto adicional diferente a un mensaje para confirmar una solicitud de exclusión después de responder: STOP (PARAR), QUIT (FINALIZAR), END (TERMINAR), CANCEL (CANCELAR) O UNSUBSCRIBE (CANCELAR SUSCRIPCIÓN) (el "Subgrupo de PARAR"). Puede consultar la lista completa de Números de Telenav para efectos de esta Conciliación en el aviso completo disponible en www.TelenavTCPASettlement.com. Usted puede ser miembro de ambos subgrupos.

**¿Qué estipula la Conciliación?** El Demandado pagará $3,500,000 a un Fondo de Conciliación. Después de deducir honorarios de abogados, la Compensación incentiva y gastos y los costos de aviso y administración de reclamaciones, el Fondo de la Conciliación se dividirá entre Miembros del grupo de la Conciliación que presenten reclamos válidos usando un formulario y los límites explicados en el Acuerdo de conciliación. El dinero restante después de estos desembolsos será donado a un beneficiario cercano aprobado por el Tribunal.

**¿Cómo presento un reclamo?** Visite www.TelenavTCPASettlement.com y presente su Formulario de reclamo en línea o descargue el formulario y envíelo por correo de forma que sea registrado en línea o marcado con sello postal fechado a más tardar el **28 de agosto de 2018**. Incluya la id. del Miembro del Grupo de demandantes en la parte frontal de esta postal con su reclamo.

**¿Qué otras opciones tengo?** Si no desea que este acuerdo tenga efectos jurídicos vinculantes para usted, debe excluirse, a más tardar, el **16 de agosto de 2018**. Si no se excluye, renunciará a sus reclamaciones en contra de Telenav, conforme se describe con más detalle en el Acuerdo de conciliación. Si permanece en la Conciliación, puede objetarla a más tardar el **16 de agosto de 2018**. El Aviso detallado disponible en el sitio web que se indica a continuación explica cómo excluirse u objetar. El Tribunal tiene programado llevar a cabo una audiencia el **6 de septiembre de 2018** en el Robert F. Peckham Federal Building and United States Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San José, CA 95113 para considerar si aprueba la Conciliación, la solicitud de los Abogados del Grupo de demandantes para recibir honorarios de abogados por hasta un tercio del Fondo de la Conciliación más costos y gastos, y compensaciones por servicios para el Representante del Grupo de demandantes por $5,000. La moción para honorarios y costos de abogados se publicará en el sitio web después de que sea registrada. Usted puede asistir a la audiencia, pero no es obligatorio que lo haga. Puede contratar a su propio abogado, por su cuenta, para que comparezca y declare en su nombre en la audiencia. Para leer el aviso completo o registrar un reclamo, visite www.TelenavTCPASettlement.com o llame al 1-877-646-9240.

Settlement Administrator
PO Box 2995
Portland, OR 97208-2995

AVISO JUDICIAL
*Gergetz v. Telenav, Inc.*
Caso N.º 5:16-CV-4261-BLF
Distrito Norte de California

**INFORMACIÓN IMPORTANTE:
Si usted recibió un mensaje de texto
en su teléfono celular desde un
número de Telenav, sus derechos
pueden verse alterados por un
Acuerdo de demanda colectiva**

**Puede encontrar más información en:**

**www.TelenavTCPASettlement.com**