United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NATHAN GERGETZ,<br><br>Plaintiff,<br><br>v.<br><br>TELENAV, INC.,<br><br>Defendant. | Case No. 16-cv-04261-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD**<br><br>[Re: ECF 73, 75] |

On September 6, 2018, the Court heard (1) Plaintiff's Motion for Final Approval of Class Action Settlement and (2) Plaintiff's Motion for Award of Reasonable Attorneys' Fees and Expenses, and Incentive Award. For the reasons discussed below, the motion for final approval is GRANTED and the motion for attorneys' fees, expenses, and incentive award is GRANTED IN PART.

**I.  BACKGROUND**

Plaintiff Nathan Gergetz filed this action on July 28, 2016, asserting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of himself and others who received unsolicited text messages from Defendant Telenav, Inc. *See* Compl., ECF 1. The text messages originated from the Scout App, an application developed by Telenav for smart phones. The Scout App allows a user to coordinate plans with friends by, among other things, sending the user's friends text messages containing real time updates regarding the user's location. The app can send text messages to the user's contacts whether or not the recipients also have

downloaded the Scout App. Some text messages sent by the app contained marketing materials from Telenav encouraging recipients to download the Scout App.

Gergetz asserts TCPA claims on behalf of two classes of individuals, the first comprised of persons who received text messages from Telenav and the second comprised of persons who continued to receive text messages from Telenav after replying to at least one text message with the words STOP, END, CANCEL, or similar language. *See* Compl. ¶ 41.

In November 2016, Telenav filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to stay the case pending a ruling by the Court of Appeals for the D.C. Circuit in *ACA Int'l v. FCC*. *See* Def.'s Motion, ECF 24. Upon completion of the briefing, the Court took the motion under submission without oral argument. *See* Order Submitting Motion, ECF 30. Before the Court issued a ruling, however, the parties jointly requested that the Court defer disposition of the motion and stay the case pending settlement discussions. *See* Order Granting Parties' Request to Stay, ECF 43; Order Granting Parties' Request to Defer Disposition of Pending Motion, ECF 47.

On November 2, 2017, the parties notified the Court that settlement had not yet been reached. *See* Joint Status Update, ECF 56. The Court thereafter requested and received supplemental briefing on Telenav's pending motion, and set the motion for hearing on December 21, 2017. *See* Minute Entry, ECF 57; Order Requesting Suppl. Briefing, ECF 58; Pl.'s Suppl. Brief, ECF 59; Def.'s Suppl. Brief, ECF 60. On the scheduled hearing date, the parties appeared and informed the Court that the case had settled. *See* Minute Entry, ECF 63. The Court terminated Telenav's pending motion and set a preliminary approval hearing, which ultimately went forward on April 27, 2018. *See* Order Terminating Motion, ECF 64; Minute Entry, ECF 68.

On April 30, 2018, the Court issued an order preliminarily approving the parties' settlement agreement ("Agreement"). *See* Order Granting Motion for Preliminary Approval, ECF 70. The Agreement defines the Settlement Class as follows:

> "Settlement Class" means all Persons who fall within one of [sic] Subclasses defined below. For purposes of this definition, multiple owners or users of a single cellular telephone are deemed to be a single member of the Settlement Class. The Settlement Class is compromised [sic] of all Persons in the No Consent Subclass and the Stop Subclass defined as:

>The "No Consent Subclass": All persons in the United States who during the Class Period received at least one Download the Scout App Text Message.
>
>The "Stop Subclass": All persons in the United States who during the Class Period received at least one additional message other than a message confirming an opt out request, after replying STOP, QUIT, END, CANCEL or UNSUBSCRIBE to any text message received from any Telenav Number.

Agreement ¶ II.35, Exh. C to Motion for Final Approval, ECF 75-3. The Class Period is July 28, 2012 to the present. Agreement ¶ II.7.

Telenav has agreed to provide a Settlement Fund in the amount of $3.5 million. Agreement ¶¶ II.38, III.1.a. The Settlement Fund will be used to pay all settlement administration costs, any attorneys' fees awarded by the Court, any incentive award granted by the Court, and settlement checks issued to Class Members who submit valid claim forms. Agreement ¶ II.38. A class member qualifies for payment from the Settlement Fund if his or her cellular telephone number appears on a list maintained by Telenav of cellular telephone numbers that received text messages from Telenav during the Class Period. Agreement ¶ III.1.c.

Each class member who submits a valid claim form will receive one or more "Award Units." Agreement ¶ III.1.d. Each No Consent Subclass member will receive 1 Award Unit, each Stop Subclass member will receive 5 award units, and each person who is a member of both subclasses will receive 6 award units. *Id.* The net Settlement Fund (after deduction of administration costs, attorneys' fees, and incentive award) will be divided by the total number of Award Units. *Id.* Settlement checks will be issued to class members based on their total Award Units, and the Settlement Administrator will make one attempt at remailing any returned checks. *Id.* Any amounts remaining after payment of all administration costs, attorneys' fees, incentive award, and settlement checks will be donated to a *cy pres* recipient. *Id.*

Following preliminary approval of the Agreement, the Settlement Administrator provided notice by postal mail, email, and internet banner ads. *See* Azari Decl. ¶ 13, Exh. D to Motion for Final Approval, ECF 75-4. The Administrator estimates that there are approximately 200,000 class members. *See* Azari Decl. ¶¶ 15, 17. The Administrator sent postal mail notice to 145,984 class members and email notice to 124,830 potential class members, which resulted in attempted notice to 145,984 unique potential class members. Azari Decl. ¶¶ 17-22. Banner ads and a

3

Settlement Website provided additional notice exposure. Azari Decl. ¶¶ 23-27. As of August 21, 2018, there had been 120,428 unique visitors to the Settlement Website. Azari Decl. ¶ 27. The Administrator estimates that direct notice reached approximately 79.1% of the entire Settlement Class, and opines that the notice provided was the best notice practicable under the circumstances of the case. Azari Decl. ¶ 14. In addition to the notice given by the Administrator, Class Counsel called potential class members to inform them of their rights under the settlement. Woodrow Decl. ¶ 21, Exh. B to Motion for Final Approval, ECF 75-2. No class member has opted out of the settlement and no class member has objected. Woodrow Decl. ¶ 23.

On September 6, the Court heard Plaintiff's Motion for Final Approval of Class Action Settlement, and Plaintiff's Motion for Award of Reasonable Attorneys' Fees and Expenses, and Incentive Award. The Court indicated on the record that the final approval motion would be granted and the attorneys' fees motion would be granted in part.

## II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A. The Class Meets the Requirements for Certification under Rule 23

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule –

4

those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Gergetz seeks certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Order Granting Motion for Preliminary Approval, ECF 70. The Court is not aware of any new facts which would alter that conclusion. However, the Court reviews the Rule 23 requirements again briefly, as follows.

Turning first to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that because the class contains approximately 200,000 individuals, and approximately 2,000 claims have been filed, joinder of all class members would be impracticable. *See* Azari Decl. ¶¶ 15, 17. The commonality requirement is met because the key issue in the case is the same for all class members – whether the text messages generated by Telenav and the Scout App violated the TCPA. Gergetz's claims are typical of those of both subclasses, as he received text messages before and after sending "STOP" messages in response to texts. *See Hanlon*, 150 F.3d at 1020 (typicality requires only that the claims of the class representatives are "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest which would preclude Gergetz from acting as class representative.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common question in this case – whether the text messages generated by Telenav and the Scout App violated the TCPA – predominates. Given that commonality, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and thus that certification of the class for settlement purposes is appropriate.

### B. The Settlement is Fundamentally Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by an eight-factor test articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp* ("*Hanlon* factors"). *Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

6

### 1. Notice was Adequate

The Court previously approved Gergetz's plan for providing notice to the class when it granted preliminary approval of the class action settlement. *See* Order Granting Preliminary Approval of Class Action Settlement, ECF 70. Prior to granting preliminary approval, the Court examined carefully the proposed class notice and notice plan, and determined that they complied with Federal Rule of Civil Procedure 23 and Due Process. *Id.* ¶ 7. Gergetz provides declarations of counsel and the Administrator describing implementation of the notice plan. *See* Woodrow Decl., Exh. B to Motion for Final Approval, ECF 75-2; Azari Decl., Exh. D to Motion for Final Approval, ECF 75-4. The Court has summarized the key portions of those declarations in section I, above. Based on those declarations, it appears that at least 79.1% of all class members received notice through direct postal mail, email, banner ads, and the Settlement Website. *See* Woodrow Decl. ¶ 21; Azari Decl. ¶¶ 13-27. "[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017). The Court is satisfied that the class members were provided with the best notice practicable under the circumstances, and that such notice was adequate.

### 2. Presumption of Correctness

Before discussing the *Hanlon* factors, the Court notes that "[a] presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (quoting *Manuel for Complex Litigation* (Third) § 30.42 (1995)). The settlement in this case was the result of arms-length negotiations between experienced counsel with the aid of a respected mediator. *See* Woodrow Decl. ¶¶ 7-15. While there was little formal discovery, Gergetz's counsel has submitted a declaration describing the pre-suit investigation and informal discovery which was conducted. Woodrow Decl. ¶¶ 3-6, 8-10.

The Court therefore concludes that on this record a presumption of correctness applies to the class action settlement.

### 3. *Hanlon* Factors

Turning to the *Hanlon* factors, the Court first considers the strength of the plaintiff's case, weighing the likelihood of success on the merits and the range of possible recovery (factor 1). While Gergetz's TCPA claims certainly appear viable on their face, Telenav raised a variety of defenses, including that the equipment used in generating the text messages did not qualify as an automatic telephone dialing system as required under the statute. *See* 47 U.S.C.A. § 227(b)(1)(A). Thus while the TCPA provides for $500 for each violation, which potentially could be trebled, it is not clear that Gergetz would have prevailed had the case proceeded. With respect to the risk, expense, complexity, and duration of litigation (factor 2), Gergetz would have faced significant hurdles, including defense motions to dismiss and motions for summary judgment, and opposition to class certification. Litigation likely would have been protracted, because although the case was filed in 2016, the pleadings have not yet been settled.

Given the common questions of fact and law in this case, it is likely that the subclasses would have been certified had the case progressed (factor 3). However, Gergetz would have been at risk of a decertification motion by Telenav later in the litigation.

The settlement recovery is substantial for a TCPA case (factor 4). In his motion papers, Gergetz estimated that each Award Unit would be worth approximately $900, and at the hearing his counsel revised that amount downward slightly to $810. Thus under the terms of the Agreement, each class member who submits a valid claim will receive at least $810, and some may receive as much as $4,860. Gergetz provides a chart listing the recoveries resulting from other TCPA settlements, which range between $20 and $200. Given those figures, the recovery obtained under this settlement is exceptionally good.

Little formal discovery had been completed at the time of settlement, and the case is in its early stages (factor 5). However, Gergetz's counsel conducted pre-suit investigation and informal discovery, and the case has been pending for two years. Woodrow Decl. ¶¶ 3-6, 8-10. The Court is satisfied that the parties are sufficiently familiar with the issues in the case to have informed opinions regarding its strengths and weaknesses (factor 6). Class Counsel specialize in litigation of consumer class actions, including TCPA cases, and Telenav is represented by a well-respected

1    law firm. Their views that the settlement is a good one is entitled to significant weight. *See In re*

2    *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

3    There is no government participant (factor 7). However, the class reaction to the

4    settlement is favorable (factor 8). There was not a single opt-out or objection. Woodrow Decl. ¶

5    23.

6    Based on the foregoing reasons, and after considering the record as a whole as guided by

7    the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, the

8    settlement is not the result of collusion, and the settlement is fair, adequate and reasonable.

9    Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD

Gergetz seeks an award of attorneys' fees totaling $1,155,000, reimbursement of litigation expenses in the amount of $9,539.28, and an incentive award of $5,000.

### A. Attorneys' Fees and Expenses

#### 1. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Bluetooth*, 654 at 942. Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other

9

relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* "Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Plaintiff seeks an award of attorneys' fees totaling $1,155,000, which represents 33% of the $3.5 million gross Settlement Fund, as well as litigation expenses in the amount of $9,539.28.

Addressing expenses first, the Court has no hesitation in approving an award in the requested amount of $9,539.28. Class Counsel have submitted an itemized list of expenses and a declaration statement that all of the expenses were necessary to prosecution of this litigation. *See* Woodrow Decl. ¶¶ 27-28 and Exh. 1. The Court has reviewed the list and finds the expenses to be reasonable.

However, the Court finds that the request for fees totaling 33% of the gross Settlement Fund is slightly overreaching. Using the percentage-of-recovery method, the Court starts at the 25% benchmark. *See Bluetooth*, 654 at 942. The Court is persuaded that the benchmark should be increased based on the exceptional results achieved, the risk of litigation, the fine quality of Class Counsel's work, and the contingent nature of the fee. *See Tarlecki,* 2009 WL 3720872, at *4. For those reasons, the Court concludes that an increase to 30% of the gross Settlement Fund is warranted, for an award of fees in the amount of $1,050,000.

A lodestar cross-check confirms the reasonableness of an increase in the percentage-of-recovery from the 25% benchmark to 30%. Class Counsel represents that the total lodestar from the inception of the case to the filing of the attorneys' fees motion is $383,102. Woodrow Decl. ¶ 22. However, Class Counsel expected to expend an additional $10,000 to $15,000 in the final approval process. Woodrow Decl. ¶ 24. Moreover, it appears that the hourly rates charged by Class Counsel were below market in this area. Under these circumstances, the Court concludes that the appropriate lodestar is approximately $400,000. Application of a multiplier of 2.625 would result in a fee award of $1,050,000. "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169 BTM NLS, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015). Thus a multiplier of 2.625 is within the range of reasonableness. The Court finds it appropriate to apply a multiplier of 2.625 in light of the facts that Class Counsel accepted this case on a contingency basis, had to forego other work to litigate this case, and achieved a truly excellent result for the class.

Plaintiff's motion for attorneys' fees and expenses is GRANTED IN PART. Plaintiff is awarded expenses in the amount of $9,539.28 and attorneys' fees in the amount of $1,050,000.

### B. Incentive Award

Gergetz requests an incentive award in the amount of $5,000. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Gergetz's participation in the case was essential to obtaining the substantial monetary recovery which will be enjoyed by each class member who presents a valid claim. *See* Woodrow Decl. ¶¶ 3-6. An incentive award in the amount of $5,000 is proportional to the class members' recoveries, which will range between approximately $800 and $4,800. *See Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (district court must "consider the proportionality between the incentive payment and the range of class members' settlement awards.").

The Court concludes that the requested $5,000 incentive award is appropriate in this case.

### IV. ORDER

For the reasons discussed above,

(1) Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED; and

(2) Plaintiff's Motion for Award of Reasonable Attorneys' Fees and Expenses, and Incentive Award is GRANTED IN PART. Plaintiff is awarded attorneys' fees in the amount of $1,050,000, expenses in the amount of $9,539.28, and an incentive award in the amount of $5,000.

Dated: September 27, 2018

BETH LABSON FREEMAN
United States District Judge